# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ALICE MCCABE and CHRISTINE NELSON,<br><br>        Plaintiffs,<br><br>vs.<br><br>W. RALPH BASHAM, TOM RIDGE, KEVIN WALSH, MICHAEL PARKER, JANE DOE SECRET SERVICE AGENT NO. 3, IOWA STATE PATROL, TROY BAILEY, RICK BUSCH and LINN COUNTY,<br><br>        Defendants. | No. 05-CV-0073-LRR<br><br>**ORDER** |

_____

## *TABLE OF CONTENTS*

*I.*     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*    *FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*   *PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

*IV.*   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

      *A.*    *Personal Jurisdiction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
           *1.*   *Legal Standards* . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
           *2.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

      *B.*    *Alternative Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*

*V.*    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*

## I. INTRODUCTION

The matters before the court are the Motion to Dismiss (docket no. 19) and Renewed Motion to Dismiss (docket no. 31) filed by Defendants W. Ralph Basham and Tom Ridge.

## II. FACTUAL BACKGROUND[1]

Plaintiffs Alice McCabe and Christine Nelson are Iowa residents who disagree with President George W. Bush's policies. In particular, they do not support the war in Iraq. On September 3, 2004, McCabe and Nelson protested at a Bush re-election rally at Noelridge Park in Cedar Rapids ("Rally"). McCabe held a "No More War" sign. Nelson wore a Kerry-Edwards button.

Defendant W. Ralph Basham is the Director of the United States Secret Service ("Secret Service"). Defendant Tom Ridge is the former Secretary of the United States Department of Homeland Security ("Department"). The Secret Service is a subdivision of the Department. Basham and Ridge had direct oversight over the Secret Service prior to and during the Rally. Neither Basham nor Ridge is a resident of Iowa.[2]

While the Rally was underway, an unidentified female Secret Service agent ("Jane Doe Secret Service Agent No. 3") noticed McCabe and Nelson. Jane Doe Secret Service Agent No. 3 told Kevin Walsh and Michael Parker, two other Secret Service agents, to confront Plaintiffs. Jane Doe Secret Service Agent No. 3 ordered Walsh and Parker to confront Plaintiffs solely because Plaintiffs were visibly protesting the Bush Administration. Jane Doe Secret Service Agent No. 3, Walsh, Parker, and Iowa State

---

[1] For purposes of this motion, the court views the allegations in the light most favorable to Plaintiffs and affords them all reasonable inferences. *See Romak USA, Inc. v. Rich*, 384 F.3d 979, 981 (8th Cir. 2004) (reviewing motion to dismiss).

[2] The parties do not indicate where Basham and Ridge reside.

Patrol Troopers Troy Bailey and Rick Busch had met before the Rally to determine how to deal with protestors. Along with Basham and Ridge, they had "a policy and/or practice of unlawfully and illegally suppressing dissent expressed by individuals openly disagreeing with the policies of the Bush Administration."

While McCabe and Nelson were standing on a public sidewalk near the park, Walsh and Parker approached McCabe and told her that she was standing on "private property" and had to move. Walsh and Parker told McCabe that the park had been rented for the day and that the Republican Party "owned" it. In fact, no one had rented out the park for the Bush re-election campaign's exclusive use.

McCabe agreed to leave the sidewalk. McCabe moved into a parking area between the sidewalk and an adjacent street. Nelson moved to the parking area, as well. Other people who were not visibly disagreeing with the Bush Administration were using the sidewalk but were not ordered to leave.

Walsh and Parker approached McCabe and Nelson again and ordered them to move out of the parking area. McCabe asked the agents why she had to move; McCabe pointed out that a man collecting money for the Republican Party was standing next to her. Bailey arrested McCabe for criminal trespass.

Walsh, Parker and Busch ordered Nelson to leave the parking area. Nelson complied and walked into the street, where other people were located. None of the other people were visibly protesting President Bush.

Busch approached Nelson again and told her she had to move to the other side of the street because "we own this half of the street." While Nelson was moving to the other side of the street, she asked Busch why others were allowed to stay in the street. Busch arrested Nelson for criminal trespass.

McCabe and Nelson were handcuffed and detained in a holding room. They were

later transported to the Linn County Jail, where they were processed and strip searched. McCabe and Nelson were strip searched even though there was no reason to believe either had a weapon or contraband.

On December 15, 2004, the Linn County Attorney dropped all criminal charges against McCabe and Nelson.

### *III. PRIOR PROCEEDINGS*

On April 20, 2005, Plaintiffs filed a six-count Complaint against the Secret Service, John Doe Secret Service Agent No. 1, John Doe Secret Service Agent No. 2, Jane Doe Secret Service Agent No. 3, the Iowa State Patrol, Troy Bailey, Rick Busch and Linn County ("Defendants"). In the first five counts, Plaintiffs allege Defendants violated five fundamental rights provided to them by the Federal Constitution and the Iowa Constitution. Specifically, Plaintiffs allege Defendants infringed upon their (1) right to freedom of speech, (2) right to freedom of assembly, (3) right against unreasonable searches and seizures, (4) right to equal protection and (5) right to due process. *See* U.S. Const. amends. I (speech and assembly), IV (search and seizure) and XIV (equal protection and due process); Iowa Const. art. I, §§ 6 (equal protection), 7 (speech), 8 (searches and seizures), 9 (due process) and 20 (assembly). In the sixth count, Plaintiffs claim Defendants conspired to violate their constitutional rights, in violation of 42 U.S.C. § 1985(3).

On July 22, 2005, Plaintiffs conceded the Secret Service was not a proper Defendant. Plaintiffs filed an Amended & Substituted Complaint ("First Amended Complaint"). The substance of the First Amended Complaint was the same as the substance of the original Complaint. The only difference was that Plaintiffs removed the Secret Service as a defendant and added Basham and Ridge as defendants.

On October 24, 2005, Defendants Basham and Ridge filed the instant Motion to

4

Dismiss. On November 11, 2005, Plaintiffs filed a Resistance. On November 18, 2005, Basham and Ridge filed a Reply.

On December 22, 2005, Plaintiffs filed a Second Amended & Substituted Complaint ("Second Amended Complaint"). The only change made in the Second Amended Complaint is that the Second Amended Complaint names John Doe Secret Service Agent No. 1 and John Doe Secret Service Agent No. 2 as Kevin Walsh and Michael Parker, respectively.

On January 6, 2006, Basham and Ridge filed the instant Renewed Motion to Dismiss. On January 20, 2006, Plaintiffs filed a Renewed Resistance. In the Renewed Motion to Dismiss and the Renewed Resistance, the parties make the same arguments as they did in the October 24, 2005 Motion to Dismiss and the November 11, 2005 Resistance. The only difference is that the Renewed Motion to Dismiss and the Renewed Resistance reflect the fact that Plaintiffs named Walsh and Parker in the Second Amended Complaint.

## III. ANALYSIS

Basham and Ridge seek dismissal from this case on four grounds.[3] First, Basham and Ridge contend Plaintiffs have not alleged sufficient facts to make a *prima facie* showing of personal jurisdiction over them. *See* Fed. R. Civ. P. 12(b)(2). Second, Basham and Ridge claim they are entitled to qualified immunity, and, therefore, Plaintiffs have failed to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Third, Basham and Ridge maintain that Plaintiffs' claims under the Iowa Constitution should be dismissed because such claims are subject to the Federal Tort Claims Act, 28 U.S.C. § 2679(b)(1), and Plaintiffs have failed to exhaust their

---

[3] Basham and Ridge present these grounds in a different sequence.

administrative remedies. *See* Fed. R. Civ. P. 12(b)(1). Fourth, Basham and Ridge ask the court to dismiss the conspiracy claim because Plaintiffs have failed to allege that Basham and Ridge participated in an agreement to violate Plaintiffs' civil rights. *See* Fed. R. Civ. P. 12(b)(6). To the extent necessary, the court considers these arguments in turn.

### A. *Personal Jurisdiction*

Basham and Ridge contend the court's exercise of personal jurisdiction over them would not comport with due process. They ask the court to dismiss them from the lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(2).

#### 1. *Legal Standards*

"A federal court may assume jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Ferrell v. West Bend Mut. Ins. Co.*, 393 F.3d 786, 790 (8th Cir. 2005) (citing *Dakota Indus. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). Iowa's long-arm statute extends personal jurisdiction over non-residents to the fullest extent permissible under the Due Process Clause. *See* Iowa R. Civ. P. 1.306; *see also Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (recognizing same); *Hammond v. Fla. Asset Fin. Corp.*, 695 N.W.2d 1, 5 (same)*; Roquette Am., Inc. v. Gerber*, 651 N.W.2d 896, 899 (Iowa Ct. App. 2002) ("Under Iowa Rule of Civil Procedure 1.306, Iowa's jurisdiction reaches to the widest due process parameters of the federal constitution."). Therefore, the court shall only examine whether the exercise of personal jurisdiction comports with due process. *Hicklin*, 959 F.2d at 739.

The Supreme Court has distinguished between two types of personal jurisdiction: specific jurisdiction and general jurisdiction. *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn.8-9 (1984). Specific jurisdiction refers to jurisdiction over causes of action "arising out of or related to the defendant's contacts with

the forum." *Id.* at 414 n.8. On the other hand, "[w]hen a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State . . . exercise[s] 'general jurisdiction' over the defendant." *Id.* at 414 n.9. When general personal jurisdiction is asserted, the non-resident defendant must be engaged in "continuous and systematic" contacts within the forum state. *Id.* at 416. Plaintiffs do not dispute that only specific personal jurisdiction is at issue in this case.

Regardless of whether specific or general personal jurisdiction is asserted, "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). "To satisfy due process a defendant must have sufficient minimum contacts with the forum state." *Romak*, 384 F.3d at 984. The contacts with the forum state must be more than "random," "fortuitous" or "attenuated." *Burger King,* 471 U.S. at 475; *accord Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) (requiring contacts to be more than "random," "isolated" or "fortuitous"). "[T]he Defendant's conduct and connection with the forum [s]tate [must be] such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 295, 297 (1980). There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

After establishing that a defendant purposefully established such minimum contacts with the forum state, the court must still consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and

substantial justice.' *Id.* at 476 (quoting *Int'l Shoe*, 326 U.S. at 320); *see also Ferrell*, 393 F.3d at 790-91 (applying same two-step analysis); *Dakota Indus. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389-90 (8th Cir. 1991) (same). Courts may evaluate "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies" and "the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagen*, 444 U.S. at 292).

The Eighth Circuit Court of Appeals instructs courts to consider five factors in assessing whether personal jurisdiction may be lawfully exercised over a defendant. *Land-O-Nod Co. v. Bassett Furniture Indus.*, 708 F.2d 1338, 1340 (8th Cir. 1983). Those factors are:

> (1) the nature and quality of [the defendant's] contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Guinness Import Co. v. Mark VII Distribs., Inc.*, 153 F.3d 607, 614 (8th Cir. 1998); *see, e.g., Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073-74 (8th Cir. 2004) (reiterating same five factors and instructing courts to consider them), *cert. denied*, 125 S. Ct. 1304 (2005). The first three factors are the most important. *Dakota Indus.*, 946 F.2d at 1390; *accord Dever*, 380 F.3d at 1074 ("Significant weight is given to the first three factors."). The factors must not be applied mechanically; they are not a "slide rule by which fundamental fairness can be ascertained with mathematical precision." *Austad Co. v. Pennie & Edmonds*, 823 F.2d 223, 226 (8th Cir. 1987). Few answers to jurisdictional questions "will be written in black and white." *Burger King*, 471 U.S. at 486 n.29

(internal quotation marks omitted).

Plaintiffs bear the burden of proving jurisdiction. *Romak*, 384 F.3d at 983-84. At this stage in the proceedings, however, Plaintiffs do not need to prove by a preponderance of the evidence that the court may exercise personal jurisdiction over Basham and Ridge. *Id.* at 983. Plaintiffs need only make a *prima facie* showing of jurisdiction. *Id.* Plaintiffs may use affidavits, exhibits or other evidence to meet their burden. *Id.* The court must view the evidence in the light most favorable to the Plaintiffs, because they are the nonmoving party. *Id.*

One of the sub-issues in this case concerns the sufficiency of Plaintiffs' pleading. In assessing Plaintiffs' Complaint for purposes of its jurisdictional analysis, the court recognizes the Federal Rules of Civil Procedure contemplate a liberal notice pleading standard. *Leatherman v. Tarrant County Narcs. & Intel. Unit*, 507 U.S. 163, 168 (1993). The Rules do not require a party to set out in detail all the facts upon which it bases its claims. *Id.* Instead, the Rules only require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a short and plain statement must provide fair notice of the claim and the grounds upon which the claim rests. *Leatherman*, 507 U.S. at 168 (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also Wishnatsky v. Rovner*, 433 F.3d 608, 611 (8th Cir. 2006) (holding that plaintiff's complaint met the requirements of Rule 8(a) because it gave the defendants "fair notice of the nature and basis of [the plaintiff's] claim"). The Rules are designed "to give notice to the other party and not to formulate issues or fully summarize the facts involved." *Clausen & Sons, Inc. v. Theo. Hamm Brewing Co.*, 395 F.2d 388, 389-90 (8th Cir. 1968) (citing *Conley*, 355 U.S. at 45-48).

With these principles in mind, the court examines whether it may exercise personal jurisdiction over Basham and Ridge.

*2. Analysis*

The court agrees with Basham and Ridge that this court does not have personal jurisdiction over them. Basham and Ridge have insufficient contacts with Iowa and the court's exercise of jurisdiction would not comport with fair play and substantial justice.

The court first examines the nature, quantity and quality of defendants' contacts with Iowa. Plaintiffs do not allege that either Basham or Ridge ever entered Iowa. Moreover, Plaintiffs do not allege that either Basham or Ridge ever called, wrote, emailed or in any other manner communicated with anyone in Iowa or even about anything regarding Iowa. This lack of physical presence in Iowa and complete lack of contacts with Iowa weighs strongly against a finding of jurisdiction in Iowa. *See, e.g., Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (finding corporation's lack of physical presence in forum state weighed against exercise of jurisdiction); *Soo Line R.R. Co v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 530 (8th Cir. 1991) (holding defendants' lack of contacts with forum state easily overrode any other interests that may have favored a finding of jurisdiction).

The court has searched Plaintiffs' Complaint and can find no allegations of any facts that would connect Basham and Ridge to Iowa. For example, although the Complaint states that Basham and Ridge had "a policy and/or practice of unlawfully and illegally suppressing dissent expressed by individuals openly disagreeing with the policies of the Bush Administration," standing alone this allegation is insufficient to support personal jurisdiction in Iowa. The existence of a policy or practice in the Secret Service or the Department does not indicate any act by which Basham and Ridge, in their individual capacities, purposefully availed themselves of the privilege of conducting activities within Iowa and invoked the benefits and protections of Iowa's laws. Notably, the Complaint does not allege that either Basham or Ridge oversaw the Rally, gave any instructions to

subordinates with respect to the Rally or were even aware that the Rally was occurring. It is also significant that Basham and Ridge are absent from the Complaint's allegation of a meeting in advance of the Rally at which the other defendants in this case determined how to treat protestors.

Plaintiffs have presented the court with exhibits that purportedly show the existence of a nationwide policy to suppress dissent. Plaintiffs' attorney swears that these exhibits are the result of "[r]esearch [that] has been conducted via the [I]nternet regarding arrests and treatment of demonstrators at rallies . . . where President George W. Bush was in attendance or giving a speech." The exhibits include articles and excerpts from *The Washington Post*, *Cannabis News*, *The Bowdoin Orient*, *AusTex Anomalous*, *Veterans for Peace*, *CBS News*, *The Joplin Independent*, *BushFlash*, *CounterBias*, *Patridiot*, *Common Dreams Newscenter*, *The Des Moines Register*, *The First Amendment Center*, *The American Conservative*, *BuzzFlash*, and the American Civil Liberty Union's website. Other exhibits include police reports from the Rally, an article from a medical marijuana discussion board and an anonymous "blog"[4] entry from someone who attended a rally in Pennsylvania and claims that the President gave him the bird. Plaintiffs ask the court to consider these unauthenticated exhibits and, if necessary, incorporate them into their Second Amended Complaint.

The court seriously questions the admissibility of these unauthenticated exhibits. Assuming the exhibits are admissible for purposes of this motion, the court finds they nonetheless do not support a finding of jurisdiction over Basham or Ridge. None of the exhibits mention Basham or Ridge, let alone imply that Basham or Ridge purposefully

---

[4] A "blog" is "an online personal journal with reflections, comments, and often hyperlinks provided by the writer." Merriam-Webster's Collegiate Dictionary (11th ed. 2005).

directed activity at Iowa. Indeed, much of the material in the exhibits, in particular the "blog" entry, are wholly irrelevant to the task at hand.

The closest Plaintiffs come to alleging contact between Basham or Ridge and Iowa is found in the sixth count of their Second Amended Complaint. Plaintiffs state in conclusory fashion that Basham and Ridge "conspired [with the other defendants] to deprive McCabe and Nelson of their [constitutional] rights . . . based upon Nelson and McCabe's status as protestors of the policies of the Bush Administration, particularly the war in Iraq." The court recognizes that a conspiracy on the part of out-of-state defendants to deprive Iowans of their constitutional rights could support a finding of jurisdiction. *See Calder v. Jones*, 465 U.S. 783, 788-91 (1984) ("An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause injury in California."). In this case, however, Plaintiffs have failed to allege any facts in their Complaint to support this conclusory assertion of a conspiracy.

> To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendants can be subjected to jurisdiction within the state. Once jurisdiction has been controverted or denied, the plaintiff has the burden of proving such facts. The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto.

*Dever*, 380 F.3d at 1072-73 (citations, internal quotation marks and alterations omitted). Absent the allegation of such facts, Plaintiffs' conclusory claims of a conspiracy are insufficient to establish jurisdiction over Basham and Ridge.[5] Although the Federal Rules

---

[5] Plaintiffs essentially admit the conclusory nature of this assertion in their brief in
(continued…)

of Civil Procedure embrace a liberal notice pleading standard, *see Leatherman*, 507 U.S. at 168, the law is clear that the court cannot rest a finding of jurisdiction wholly on Plaintiffs' conclusory allegations of a conspiracy. *See, e.g., Second Amend. Found. v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001); *Ecclesiastical Order of the Ism of Am., Inc. v. Chasin*, 845 F.2d 113, 116 (6th Cir. 1988). Absent allegations of specific facts connecting Basham or Ridge to Iowa, the court cannot assert personal jurisdiction over them. Indeed, the specific facts alleged in the Complaint affirmatively show Basham and Ridge were not active participants in the alleged conspiracy. As previously indicated, Basham and Ridge are noticeably absent from Plaintiff's allegation regarding a meeting in advance of the Rally at which the other defendants in this case "determine[d] how to treat protestors."

At bottom, Plaintiffs are premising jurisdiction over Basham and Ridge, two senior-level federal government officials, upon the acts of low-level federal, state and/or local government employees.[6] This is not permissible. Courts across the country have

---

[5](…continued)
support of their Resistance. In their brief, Plaintiffs admit the chain of assumptions upon which they rely: Plaintiffs claim that because there was "a nationwide policy of suppressing dissent at President Bush events," "it is entirely reasonable to conclude that . . . specific, extraordinary instructions came from either Defendant Basham, the politically appointed head of the Secret Service, or Ridge, Basham's politically appointed boss." Plaintiffs thus assume that Basham and Ridge "directed, supervised, and were responsible for individuals that entered [Iowa] for a specific event, obtained permission to use property owned by the City of Cedar Rapids, and then worked with, and directed, local police and the Iowa State patrol law enforcement officials."

Facts supporting the assumptions in Plaintiffs' brief are noticeably absent in their Complaint. The court must confine its analysis to the Complaint and supporting materials.

[6] A comparison of Plaintiffs' original Complaint with their First Amended
(continued…)

recognized that personal jurisdiction cannot be premised solely on a defendant's supervisory status. *See, e.g., Hill v. Pugh*, 75 Fed. Appx. 715, 719 (10th Cir. 2003) ("It is not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state."); *Wag-Aero, Inc. v. United States*, 837 F. Supp. 1479, 1485 (E.D. Wis. 1993) ("When federal agency heads are not alleged to have been directly and actively involved in activities in the forum state, many courts have refused to exercise personal jurisdiction over them."), *aff'd* 35 F.3d 569 (7th Cir. 1994); *Vu v. Meese,* 755 F. Supp. 1375, 1378 (E.D. La. 1991) ("[T]he fact that federal government officials enforce federal laws and policies on a nationwide basis is not sufficient in and of itself to maintain personal jurisdiction in a lawsuit which seeks money damages against those same governmental officials in their individual capacities."); *cf. Ark. Rice Growers Coop Ass'n v. Alchemy Indus., Inc.*, 797 F.2d 565, 574 (8th Cir. 1986) ("The law is clear that a corporate officer or agent who has contact with the forum state only with regard to the performance of corporate duties does not thereby become subject to jurisdiction in his or her official capacity."); *Elmaghraby v. Ashcroft,* No. 04-CV-1409-JG-SMG, 2005 WL 2375202, *9 (E.D.N.Y. 2005) (holding under New York law that "[p]ersonal jurisdiction cannot be based solely on a defendant's supervisory position" but rather plaintiff must show defendant "personally took part in the activities giving rise to the action at issue" (internal quotation marks and citations omitted)). These cases are consistent with the Supreme Court's admonition that "[e]ach defendant's contacts with the forum [s]tate must be

---

⁶(…continued)
Complaint bears out this conclusion. The First Amended Complaint is identical to the Complaint, except for the fact that Plaintiffs, after having admitted that they cannot sue the Secret Service, replaced the Secret Service with Ridge and Basham.

assessed individually." *Calder*, 465 U.S. at 790 (citing *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) ("The requirements of *International Shoe* . . . must be met as to each defendant over whom a state court exercises jurisdiction.")). "If a federal agency head could be sued personally in any district within his or her official authority merely for supervising acts of subordinates . . . , the minimum contacts requirement would be rendered meaningless." *Wag-Aero*, 837 F. Supp. at 1486; *see also Stafford v. Briggs*, 444 U.S. 527, 543-45 (1980) (refusing to construe 28 U.S.C. 1391(e) to allow claims for money damages against federal supervisors in their personal capacity in any jurisdiction in the country); *Claasen v. Brown*, No. Civ. A. 94-1018-GK, 1996 WL 79490, *2 (D.D.C. 1996) (construing *Stafford* to forbid a district court from asserting personal jurisdiction over a federal official "solely by virtue of being employed by the federal government or by virtue of supervising or training personnel on a nationwide basis"). "In order to exercise personal jurisdiction over a federal official in an individual capacity, a court must find minimum contacts other than those arising from federal employment or supervisory roles." *Claasen*, 1996 WL 79490, *2.

In sum, the court finds Plaintiffs have failed to establish the requisite minimum contacts for this court's assertion of personal jurisdiction. The court finds this lack of contacts outweighs all other factors in the jurisdictional analysis; for example, neither the interest of Iowa in providing a forum for its residents or the convenience of the parties outweighs this complete lack of contacts.[7] *See Soo Line R.R.*, 950 F.2d at 529.

---

[7] At first blush, it would appear to be more convenient to try this case in Iowa because the event in question occurred in Iowa, Plaintiffs reside in Iowa, and the other defendants will presumably be tried in Iowa. In reality, however, it is a wash. Basham is a senior-level government official who is responsible for the day-to-day operation of an important federal agency with a nationwide purview. Basham (and, derivatively, the

(continued…)

Even if the requisite minimum contacts were established, the court finds the assertion of jurisdiction over Basham and Ridge would offend notions of fair play and substantial justice. It would not comport with fair play and substantive justice to hale the Secretary of Homeland Security into Iowa anytime one of the Department's employees committed a tort in Iowa. If a nationwide conspiracy truly exists on the scale Plaintiffs allege, Basham and Ridge should be tried where the conspiracy occurred or where it was principally directed.

For the foregoing reasons, the court concludes Plaintiffs have not made a *prima facie* showing of personal jurisdiction. Plaintiffs fail to sufficiently allege that either Basham or Ridge purposefully established minimum contacts with Iowa to satisfy due process. Plaintiffs have not shown that Basham or Ridge purposely availed themselves of Iowa's laws or that they should expect to be haled into court in Iowa. *Cf. Soo Line R.R.*, 950 F.2d at 530 (finding that because company did not design railcars for use in the forum state *per se*, the relationship between the design and the forum state was too remote to qualify as "purposeful availment" even though railcars ended up traveling in forum state). Moreover, the court's assertion of jurisdiction would offend notions of "fair play and substantial justice." *See Dakota Indus.*, 946 F.2d at 1389. Therefore, the court shall dismiss Basham and Ridge from this case without prejudice. *See Mo. Soybean Ass'n v. EPA*, 289 F.3d 509, 513 (8th Cir. 2002) ("Dismissal for lack of jurisdiction is not an adjudication of the merits, thus the case must be dismissed without prejudice" and "is not

---

[7](…continued)
government) would suffer a disproportionate share of inconvenience were this case to be tried in Iowa. Moreover, "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," *see Burger King*, 471 U.S. at 477, would demand that this lawsuit be tried where the broader conspiracy occurred, as opposed to trying it in Iowa where only one incident allegedly occurred.

a bar to a later suit" in the proper forum); *see also* Fed. R. Civ. P. 41(b) (dismissals based upon lack of jurisdiction are not an adjudication on the merits).

### B. *Alternative Arguments*

In light of the court's recognition that it lacks jurisdiction over Basham and Ridge, the court need not and shall not address their alternative arguments for dismissal.

### V. CONCLUSION

In the light of the foregoing, **IT IS HEREBY ORDERED** that:

(1) Defendants W. Ralph Basham and Tom Ridge's Motion to Dismiss (docket no. 19) and Renewed Motion to Dismiss (docket no. 31) are **GRANTED** and

(2) Defendants W. Ralph Basham and Tom Ridge are **DISMISSED** from this action without prejudice.

**IT IS SO ORDERED.**

**DATED** this 16th day of February, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA