**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**


ALICE MCCABE and CHRISTINE
NELSON,

          Plaintiffs,

vs.

BRUCE MACAULAY, MICHAEL
PARKER, HOLLY MICHAEL, THE
IOWA STATE PATROL, TROY
BAILEY, RICK BUSCH and LINN
COUNTY, IOWA,

          Defendants.

No. 05-CV-73-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.    **INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   **RELEVANT PRIOR PROCEEDINGS** . . . . . . . . . . . . . . . . . . . . . . . 2

III.  **LEGAL STANDARD FOR SUMMARY JUDGMENT** . . . . . . . . . . . . . . . 3

IV.  **FACTUAL BACKGROUND** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

V.   **SUMMARY OF THE ISSUES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.  **RULE 56(F) MOTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     A.    *Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

     B.    *Requested Discovery* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     C.    *Qualified Immunity Discovery* . . . . . . . . . . . . . . . . . . . . . . 9

     D.    *Three Exceptions: State Law Claims, Section 1985(3) Equal
            Protection Claim & Substantive Due Process Claim* . . . . . . . . . . . 13
            1.    *State Law Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . 13
            2.    *Section 1985(3) Equal Protection Claim* . . . . . . . . . . . . . . 14

    3.   *Substantive Due Process Claim* . . . . . . . . . . . . . . . . . . **15**

  **E.**   *Disposition* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **16**

**VII.**  **MOTION FOR SUMMARY JUDGMENT** . . . . . . . . . . . . . . . . . . **16**

  **A.**   *State Law Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

    1.   *Westfall Act* . . . . . . . . . . . . . . . . . . . . . . . . . . . **17**

    2.   *Substitution of the United States* . . . . . . . . . . . . . . . . . . . . **20**

    3.   *Dismissal without Prejudice* . . . . . . . . . . . . . . . . . . **24**

    4.   *Disposition* . . . . . . . . . . . . . . . . . . . . . . . . . . . **25**

  **B.**   *Section 1985(3) Equal Protection Claim* . . . . . . . . . . . . . . . . . . . . **25**

  **C.**   *Substantive Due Process Claim* . . . . . . . . . . . . . . . . . . . . . **35**

  **D.**   *Disposition* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **36**

**VIII.**  **MOTION FOR PROTECTIVE ORDER** . . . . . . . . . . . . . . . . . . **37**

**IX.**   **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **37**

## I. INTRODUCTION

There are three motions before the court: (1) the Motion for Summary Judgment (docket no. 67), filed by Defendants Bruce Macaulay, Michael Parker and Holly Michael ("Individual Federal Defendants"); (2) the Renewed Motion for Protective Order to Stay Discovery ("Motion for Protective Order") (docket no. 71), filed by the Individual Federal Defendants; and (3) the Motion to Continue Pursuant to Rule 56(f) ("Rule 56(f) Motion") (docket no. 70), filed by Plaintiffs Alice McCabe and Christine Nelson ("Plaintiffs").

## II. RELEVANT PRIOR PROCEEDINGS

On April 7, 2006, Plaintiffs filed a six-count Third Amended and Substituted Complaint and Jury Demand ("Third Amended Complaint"). In the first five counts of the Third Amended Complaint, Plaintiffs allege that the Individual Federal Defendants violated five fundamental rights provided to them by the United States Constitution and the Iowa Constitution. Specifically, Plaintiffs allege that the Individual Federal Defendants

infringed upon their (1) right to freedom of speech, (2) right to freedom of assembly, (3) right against unreasonable searches and seizures, (4) right to equal protection and (5) right to due process. *See* U.S. Const. amends. I (speech and assembly), IV (search and seizure) and XIV (equal protection and due process); Iowa Const. art. I, §§ 6 (equal protection), 7 (speech), 8 (searches and seizures), 9 (due process) and 20 (assembly). In the sixth count of the Third Amended Complaint, Plaintiffs claim that the Individual Federal Defendants conspired to violate their constitutional rights, in violation of 42 U.S.C. § 1985(3). On June 19, 2006, the Individual Federal Defendants filed an Answer, in which they deny the allegations in the Third Amended Complaint.

On June 19, 2006, the Individual Federal Defendants filed the instant Motion for Summary Judgment. On June 29, 2006, Plaintiffs filed the instant Rule 56(f) Motion. On July 11, 2006, the Individual Federal Defendants filed the instant Motion for Protective Order.

On July 11, 2006, Plaintiffs filed a Resistance to the Individual Federal Defendants' Motion for Summary Judgment. On July 12, 2006, Plaintiffs filed a Resistance to the Motion for Protective Order. On July 17, 2006, the Individual Federal Defendants filed a Resistance to the Rule 56(f) Motion. On July 21, 2006, the Individual Federal Defendants filed a Reply to Plaintiffs' Resistance to the Motion for Summary Judgment.

### III. LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is genuine when 'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is material when it is a fact that "might affect the outcome of the

suit under the governing law." *Anderson,* 477 U.S. at 248. The court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am.*, 450 F.3d 816, 820 (8th Cir. 2006) (citing *Drake ex rel. Cotton v. Koss*, 445 F.3d 1038, 1042 (8th Cir. 2006)).

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see, e.g., Baum v. Helget Gas Prods., Inc.*, 440 F.3d 1019, 1022 (8th Cir. 2006) ("Summary judgment is not appropriate if the non-moving party can set forth specific facts, by affidavit, deposition, or other evidence, showing a genuine issue for trial."). The nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. "'Evidence, not contentions, avoids summary judgment.'" *Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 578 (8th Cir. 2006) (quoting *Mayer v. Nextel W. Corp.*, 318 F.3d 803, 809 (8th Cir. 2003)).

## IV. FACTUAL BACKGROUND

Plaintiffs are Iowa residents who disagree with President George W. Bush's policies. In particular, they do not support the war in Iraq.

On September 3, 2004, Plaintiffs protested at a Bush re-election rally at Noelridge Park in Cedar Rapids, Iowa. McCabe carried a piece of paper inscribed with the phrase "Bad War No More" and a "W" with a slash through it. Nelson wore a Kerry-Edwards

button.

During the rally, various state and federal law enforcement agents, including secret service agents, confronted Plaintiffs. A man who looked like the former professional wrestler Jesse Ventura told Plaintiffs "we own this property and you have to move." Plaintiffs initially moved. When they later hesitated and asked why other people were not asked to move, they were arrested for criminal trespass.

Plaintiffs were handcuffed and detained in a holding room. They were later transported to the Linn County Jail, where they were processed and strip searched. State law enforcement officials at the Linn County Jail also inspected in between Plaintiffs' butt cheeks.

On December 15, 2004, the Linn County Attorney dropped all criminal charges against McCabe and Nelson.

## V. SUMMARY OF THE ISSUES

The parties' motions raise a number of legal issues for the court's consideration.[1] In the Motion for Summary Judgment, the Individual Federal Defendants seek dismissal of the Plaintiffs' federal law claims on grounds of qualified immunity and Plaintiffs' state law claims for lack of subject matter jurisdiction. In the Rule 56(f) Motion, Plaintiffs ask the court to deny or delay ruling on the Motion for Summary Judgment because they have not had an adequate opportunity to conduct essential discovery. In the Motion for Protective Order, the Individual Federal Defendants ask the court to stay all discovery against them until the court determines what, if any, discovery is necessary to resolve their

---

[1] The court notes that, in their motions, the parties repeatedly attempt to incorporate argument made in previously denied motions by cross-reference. In future filings, the parties are directed to make all of their arguments in their motions. The cross-reference procedure is unduly cumbersome and makes the record difficult to compile.

qualified immunity defenses.

The court shall first address Plaintiffs' Rule 56(f) Motion. To the extent necessary, the court shall then address the Individual Federal Defendants' Motion for Summary Judgment and Motion for Protective Order.

## VI. RULE 56(F) MOTION

In their Rule 56(f) Motion, Plaintiffs ask the court to deny or delay ruling on the Individual Federal Defendants' Motion for Summary Judgment. Plaintiffs contend that they have had "no opportunity" to conduct discovery in this case. Plaintiffs point out that the Individual Federal Defendants filed their Motion for Summary Judgment early in this lawsuit—on the same date the Individual Federal Defendants filed their Answer and before the parties exchanged disclosures pursuant to Federal Rule of Civil Procedure 26. Consistent with these representations, Plaintiffs repeatedly state in their Local Rule 56.1(b)(2) Response to Defendants' Statement of Material Facts that they are unable to admit or deny a number of individual statements of material fact because they have not had a chance to conduct discovery.

In their Resistance, the Individual Federal Defendants maintain that no discovery is required. In the alternative, they point out that three aspects of their Motion for Summary Judgment present purely legal questions and can be resolved without discovery. Further, the Individual Federal Defendants ask that, if the court decides to grant Plaintiffs' request for discovery, the court narrowly tailor any discovery to the issue of qualified immunity.

### A. Law

At issue is Federal Rule of Civil Procedure 56(f). Rule 56(f) states:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the

> party's opposition, the court may refuse the application for
> judgment or may order a continuance to permit affidavits to be
> obtained or depositions to be taken or discovery to be had or
> may make such other order as is just.

Fed. R. Civ. P. 56(f). Local Rule 56.1(g) requires that Rule 56(f) motions be made "by separate motion, filed within 10 days after service of the motion for summary judgment, and supported by affidavits . . . ." LR 56.1(g).

The purpose of Rule 56(f) is "to provide an additional safeguard against an improvident or premature grant of summary judgment . . . ." *United States ex rel. Bernard v. Casino Magic Corp.*, 293 F.3d 419, 426 (8th Cir. 2002) (citation and internal quotation marks omitted). "[T]he rule should be applied with a spirit of liberality." *Id.* "Although discovery need not be complete before a case is dismissed, summary judgment is proper only if the nonmovant has had adequate time for discovery." *Robinson v. Terex Corp.*, 439 F.3d 465, 467 (8th Cir. 2006) (citing *Pony Computer, Inc. v. Equus Computer Sys. of Mo., Inc.*, 162 F.3d 991, 996 (8th Cir. 1996)). To this end,

> Rule 56(f) allows a party to request a delay in granting
> summary judgment if the party can make a good faith showing
> that postponement of the ruling would enable it to discover
> additional evidence which might rebut the movant's showing
> of the absence of a genuine issue of material fact.

*Id.* (citing Fed. R. Civ. P. 56(f) and *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1491 (8th Cir. 1997)). The party is required "to show 'what specific facts further discovery might unveil.'" *Casino Magic*, 293 F.3d at 426 (quoting *Stanback v. Best Diversified Prods., Inc.*, 180 F.3d 903, 911 (8th Cir. 1999)). The decision whether to afford the a party relief under Rule 56(f) rests within the sound discretion of the district court. *See id.* at 426-27 (reviewing for abuse of discretion the trial court's decision to refuse to extend discovery under Rule 56(f)).

## B. *Requested Discovery*

In an affidavit attached to Plaintiffs' Rule 56(f) Motion, counsel for Plaintiffs swears to his belief that discovery in this case would lead to specific factual information essential to Plaintiffs' ability to resist the Individual Federal Defendants' Motion for Summary Judgment. This list of potential facts is long and need not be repeated here in its entirety. Among other potential facts, counsel for Plaintiffs believes that the opportunity to conduct discovery might reveal: whether Noelridge Park and all or part of 42nd Street was "rented out" for the exclusive use of the Bush campaign and, if so, the identity of the person or organization that did so; whether Republican Party officials told the Individual Federal Defendants that the park was rented out; whether the area around the pool house at Noelridge Park was unnecessarily restricted to "stymie" a planned demonstration; whether law enforcement officials told a Democratic Party official that demonstrators could gather at the pool house; whether the secure area near the pool house was only enforced against individuals displaying signs of disagreement with President Bush; whether an individual was standing in the vicinity of the pool house and collecting signatures to change the City of Cedar Rapids' form of government; whether law enforcement officials ordered the signature collector to leave; whether a dozen or more people were sitting on the grass near the pool house with their backs supported by the chain link fence around the pool; whether law enforcement officials ordered these people to leave; whether "numerous other people" were "milling around" the vicinity of the pool house; whether law enforcement officials ordered these people to leave; whether vendors selling t-shirts and buttons were in the same general vicinity; whether law enforcement officials ordered vendors to move; whether the Individual Federal Defendants conducted background checks on all of the people in the pool house area; whether a volunteer collecting donations for the Republican Party was allowed to stay in the secure area because Republican Party officials approved

8

of his message; what the volunteer's name is; whether Kevin Walsh knew how long the unidentified individual had volunteered for the Republican Party; what was said at a meeting before the rally to local law enforcement officials, including what was said about the exclusive use of Noelridge Park and 42nd Street; whether local law enforcement officials were told that the Bush re-election campaign "owned" the park and were instructed to confront protesters; whether the President was "wheels down" in Cedar Rapids at the time of Plaintiffs' arrests; whether background checks were conducted on thousands of supporters of President Bush who were allowed to get closer to the President than Plaintiffs; whether the Individual Federal Defendants explained to Plaintiffs why they were asked to move and why the area in which they were standing was designated as a "secure area"; whether the Individual Federal Defendants identified themselves as federal agents when they confronted Plaintiffs; whether Walsh or Parker knew that Plaintiffs would be strip searched at the Linn County Jail; whether hundreds of protesters were arrested or forcefully removed from Bush campaign events during the 2004 election across the country, but no more than one or two were removed from Kerry campaign events; what the identities of any non-law enforcement officials who witnessed Plaintiffs' arrests are; whether an unknown secret service agent was positioned on high ground on the south side of 42nd Street, identifying protesters and radioing their locations to other law enforcement officials so that the protesters could be arrested; and whether one of the Individual Federal Defendants threatened a reporter with arrest as she began filming Plaintiffs' arrests.

### C.  Qualified Immunity Discovery

As a general matter,[2] the threshold issue before the court in the Individual Federal

---

[2] *But see infra* Part VI.D for three important exceptions.

Defendants' Motion for Summary Judgment is whether the Individual Federal Defendants are entitled to qualified immunity. The court must analyze the qualified immunity issue in two steps. *Robinson v. White County, Ark.*, 452 F.3d 706, 710 (8th Cir. 2006) (citing *Wright v. Rolette County*, 417 F.3d 879, 884 (8th Cir. 2005), *cert. denied*, 126 S. Ct. 1338 (2006)). First, the court must determine "whether the facts as asserted by [Plaintiffs] show the officer's conduct violated a constitutional right." *Id.* Second, the court must determine "whether the right was clearly established." *Id.* If the answer to either inquiry is "no," then the Individual Federal Defendants are entitled to qualified immunity. *See id.*

With respect to the second step in the qualified immunity analysis, a right is "clearly established" if "a 'reasonable officer would understand that what he is doing violates that right.'" *Andrews v. City of W. Branch, Iowa*, No. 05-1188, ___ F.3d ___, ___ (8th Cir. July 27, 2006) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "For a right to be considered clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Robinson*, 452 F.3d at 711 (citations and internal quotation marks omitted). This second step in the qualified immunity analysis "is a 'fact-intensive inquiry and must be undertaken in light of the specific context of the case, not as a broad proposition.'" *Janis v. Biesheuvel,* 428 F.3d 795, 799 (8th Cir. 2005) (quoting *Littrell v. Franklin*, 388 F.3d 578, 583 (8th Cir. 2004)).

The court holds that Plaintiffs' Rule 56(f) affidavit establishes that some discovery in this case is necessary for Plaintiffs to have a fair opportunity to resist the Individual Federal Defendants' Motion for Summary Judgment. For example, to establish their claim of First Amendment viewpoint discrimination, Plaintiffs are entitled to conduct discovery to find out who was in the vicinity of the pool house and 42nd Street when Plaintiffs were arrested, whether those persons were visibly protesting the President and whether they too

were asked to move or were arrested. *See, e.g., Wishnatsky v. Rovner*, 433 F.3d 608, 611 (8th Cir. 2006) (recognizing that viewpoint discrimination is presumed to be unconstitutional and is "'an egregious form of content discrimination'" (quoting *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 828-29 (1995))). Similarly, Plaintiffs are also entitled to find out whether the Individual Federal Defendants worked with an unknown secret service agent, who was positioned on high ground on the south side of 42nd Street, to identify, confront and remove protesters simply because they were protesting at the rally. *See id.* In sum, for the court to make a determination as to whether the Individual Federal Defendants are entitled to qualified immunity, Plaintiffs are entitled to know what facts the Individual Federal Defendants were presented with at the time of Plaintiffs' arrests. *See Andrews*, 2006 WL 2069442, at *3 (analyzing whether officer was entitled to qualified immunity and considering "the information [the officer] possessed at the time of the [incident]"). The mere fact that the Individual Federal Defendants have asserted a qualified immunity defense does not completely eviscerate the Plaintiffs' right to conduct discovery. *See, e.g., Smook v. Minnehaha County*, No. 05-1363, ___ F.3d ___, ___, 2006 WL 2265558 at *2 (8th Cir. Aug. 9, 2006) (holding that county officials were qualifiedly immune for requiring juveniles to strip down to their underwear, but noting that district court permitted discovery on the issue of qualified immunity); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (noting that, even if the plaintiff's complaint alleges a violation of clearly established law, summary judgment is appropriate "if discovery fails to uncover evidence sufficient to create a genuine issue as to whether the defendant in fact committed [the] acts [alleged]").

For the defense of qualified immunity to have meaning, however, discovery in this case must be narrowly tailored to only those facts essential to deciding whether the Individual Federal Defendants are entitled to that defense. *See Crawford-El v. Britton*, 523

U.S. 574, 597 (1998) (remarking that a district court must "exercise its discretion in a way that protects the substance of the qualified immunity defense"). The court "must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery." *Id.* In other words, the court "should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that the official actually took, since that defense should be resolved as early as possible." *Id.* at 600.

For example, in granting Plaintiffs' Rule 56(f) Motion, the court does not grant Plaintiffs the right to conduct far-reaching discovery to pursue their theory that a nationwide conspiracy existed within the highest levels of the Secret Service to suppress dissent at President Bush's re-election rallies. Whether or not such a conspiracy existed is immaterial to the qualified immunity defense presently before the court. *See Andrews*, 2006 WL 2069442, at *3 (analyzing whether officer was entitled to qualified immunity); *see also Wilson v. Northcutt*, 441 F.3d 586, 590 (8th Cir. 2006) ("Qualified immunity protects government officials from the costs of trial *and the burdens of broad discovery* unless their discretionary acts violated clearly established statutory or constitutional rights." (Emphasis added.)) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)). "'Rule 56(f) does not condone a fishing expedition' where a plaintiff merely hopes to uncover some possible evidence of a constitutional violation." *Duffy v. Wolle*, 123 F.3d 1026, 1041 (8th Cir. 1997) (quoting *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997)).

Accordingly, the court shall grant in part Plaintiffs' Rule 56(f) Motion. Plaintiffs are entitled to limited discovery, that is, to know the circumstances surrounding their arrests, insofar as those facts might reveal what information the Individual Federal Defendants possessed at the time each acted. Fed. R. Civ. P. 56(f); *see Andrews*, 2006

WL 2069442, at *3 (analyzing whether officer was entitled to qualified immunity).[3] In other words, only discovery that is "essential" to resolve the Individual Federal Defendants' qualified immunity defenses shall be permitted. Fed. R. Civ. P. 56(f).

## D. Three Exceptions: State Law Claims, Section 1985(3) Equal Protection Claim & Substantive Due Process Claim

There are three exceptions to the foregoing analysis. Some of Plaintiffs' claims raise purely legal issues on which additional discovery will have no bearing. With respect to these issues, the court shall deny the Rule 56(f) Motion and proceed to rule on the merits of the Motion for Summary Judgment.

### 1. State Law Claims

With respect to Plaintiffs' state law claims, the threshold issue before the court is not qualified immunity, but whether the court has subject-matter jurisdiction. The Individual Federal Defendants assert that they were acting within the scope of their employment as federal employees when they allegedly committed the acts giving rise to the Third Amended Complaint. They ask the court to substitute the United States as the nominal defendant on these claims, find that the claims are subject to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, and then dismiss the claims for lack of subject-matter jurisdiction. The Individual Federal Defendants argue that Plaintiffs have failed to exhaust their administrative remedies.

Plaintiffs do not deny that the Individual Federal Defendants were acting within the scope of their employment, and Plaintiffs concede that they have not exhausted their administrative remedies under the FTCA. The parties' dispute is purely a legal one:

---

[3] Given the sheer volume of Plaintiffs' requests, the court declines to specifically rule in advance on each and every discovery request in Plaintiffs' Rule 56(f) Motion. The parties are expected to read the instant order, confer in good faith and come to an agreement regarding the details of discovery.

whether state constitutional claims are subject to the FTCA.

The court finds that the parties' dispute is purely legal with respect to the state law claims and additional discovery will have no bearing on the outcome. Plaintiffs have not "ma[d]e a good faith showing that postponement of the ruling would enable it to discover additional evidence which might rebut the movant's showing of the absence of a genuine issue of material fact." *Robinson*, 439 F.3d at 467 (citing, in part, Fed. R. Civ. P. 56(f)).

Accordingly, the court shall deny Plaintiffs' Rule 56(f) Motion with respect to Plaintiffs' state law claims. Fed. R. Civ. P. 56(f); *see, e.g., Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 798 (8th Cir. 1996) (affirming denial of Rule 56(f) motion because plaintiff "failed . . . to demonstrate how any of this discovery would be relevant in helping him establish [the claim at issue]").

### 2. Section 1985(3) Equal Protection Claim

In Count 6 of the Third Amended Complaint, Plaintiffs claim that the Individual Federal Defendants conspired to deprive them of their rights to freedom of speech, freedom of assembly, freedom from unreasonable search and seizure, equal protection of the laws and substantive due process, in violation of 42 U.S.C. § 1985(3). Third Amended Complaint, at ¶¶ 58-60. Plaintiffs claim that they were targeted "based upon [their] status as protestors of the policies of the Bush Administration, particularly the war in Iraq." *Id.* at ¶ 59. The parties agree that Count 6 arguably contains claims against the Individual Federal Defendants under two distinct clauses of Section 1985(3): an "equal protection claim" and a "support and advocacy" claim. *See generally Federer v. Gephardt*, 363 F.3d 754 (8th Cir. 2004) (discussing two provisions of 42 U.S.C. § 1985(3)).

In their Motion for Summary Judgment, the Individual Federal Defendants seek dismissal of Plaintiffs' Section 1985(3) equal protection claim. The fighting issue is

whether Plaintiffs can prove the sort of "class-based animus" the statute requires. *See id.* (requiring proof of "class-based animus") (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). Quoting from *United Brotherhood of Carpenters v. Scott*, 463 U.S. 825, 836-37 (1983), the Individual Federal Defendants contend that the equal protection provision "does not reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans." Plaintiffs contend that the plain language of the statute and binding Eighth Circuit Court of Appeals precedent shows that the statute applies to animus against Bush and Iraq War protestors. *See Means v. Wilson*, 522 F.2d 833, 839-41 (8th Cir. 1976) (holding supporters of a candidate for tribal council president and opponents of sitting tribal council president constituted a class for purposes of the equal protection provision of Section 1985(3)).

The court finds that the parties' dispute is purely legal with respect to Plaintiffs' Section 1985(3) equal protection claim and that discovery will have no bearing on the outcome. Plaintiffs have not "ma[d]e a good faith showing that postponement of the ruling would enable it to discover additional evidence which might rebut the movant's showing of the absence of a genuine issue of material fact." *Robinson*, 439 F.3d at 467 (citing, in part, Fed. R. Civ. P. 56(f)).

Accordingly, the court shall deny Plaintiffs' Rule 56(f) Motion with respect to Plaintiffs' Section 1985(3) equal protection claim. Fed. R. Civ. P. 56(f); *see, e.g., Allen*, 81 F.3d at 798 (affirming denial of Rule 56(f) motion because plaintiff "failed . . . to demonstrate how any of this discovery would be relevant in helping him establish [the claim at issue]").

### 3. *Substantive Due Process Claim*

In Count 5 of the Third Amended Complaint, Plaintiffs claim that the Individual Federal Defendants violated their substantive due process rights under the Fourteenth

Amendment. In their Motion for Summary Judgment, the Individual Federal Defendants seek dismissal of Plaintiffs' Fourteenth Amendment claim. In essence, the Individual Federal Defendants contend that their claim is duplicitous, because it is covered more specifically by the Fourth Amendment.

The court finds that the parties' dispute is purely legal with respect to Plaintiffs' Fourteenth Amendment claim and that discovery will have no bearing on the outcome. Plaintiffs have not "ma[d]e a good faith showing that postponement of the ruling would enable it to discover additional evidence which might rebut the movant's showing of the absence of a genuine issue of material fact." *Robinson*, 439 F.3d at 467 (citing, in part, Fed. R. Civ. P. 56(f)).

Accordingly, the court shall deny Plaintiffs' Rule 56(f) Motion with respect to Plaintiffs' Fourteenth Amendment claim. Fed. R. Civ. P. 56(f); *see, e.g., Allen*, 81 F.3d at 798 (affirming denial of Rule 56(f) motion because plaintiff "failed . . . to demonstrate how any of this discovery would be relevant in helping him establish [the claim at issue]").

### E. Disposition

The court shall grant in part and deny in part Plaintiffs' Rule 56(f) Motion. Plaintiffs are entitled to discovery on the limited issue of qualified immunity. With the three exceptions set forth above, the court shall deny the Individual Federal Defendants' Motion for Summary Judgment with leave to refile after the completion of such discovery. *See* Fed. R. Civ. P. 56(f) (granting district court discretion to "refuse" motion for summary judgment). The Individual Federal Defendants may refile their Motion for Summary Judgment after December 1, 2006.

### VII. MOTION FOR SUMMARY JUDGMENT

The court now turns to examine the merits of those three portions of the Individual Federal Defendants' Motion for Summary Judgment that are ripe for the court's review.

The court considers (1) whether it has subject-matter jurisdiction over Plaintiffs' state law claims; (2) whether Plaintiffs can prove the "class-based animus" required for their Section 1985(3) equal protection claim; and (3) whether Plaintiffs' Fourteenth Amendment substantive due process claim should be dismissed.

### A. State Law Claims

In the Motion for Summary Judgment, the Individual Federal Defendants seek dismissal of Plaintiffs' state law claims for lack of subject-matter jurisdiction. The Individual Federal Defendants' argument is premised upon the Federal Employees Liability Reform and Tort Compensation Act of 1988, 28 U.S.C. § 2679(d)(1), commonly known as the Westfall Act. *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 419-20 (1995) (discussing the Westfall Act and its origins).

#### 1. Westfall Act

When a federal employee is sued for a wrongful act, the Westfall Act empowers the United States Attorney General to certify that the employee "was acting within the scope of his office or employment at the time of the incident out of which the claim arose. . . ." 28 U.S.C. § 2679(d)(1). This procedure is frequently called "Westfall certification." *Heuten v. Anderson*, 75 F.3d 357, 359 (8th Cir. 1996). Upon proper Westfall certification, "any civil action or proceeding shall be deemed an action against the United States . . . and the United States shall be substituted as the party defendant." 28 U.S.C. § 2679(d)(1). "[T]he [federal] employee is dismissed from the action [. . . , and the] case then falls under the governance of the [FTCA]." *Gutierrez de Martinez*, 515 U.S. at 420.

The remedy under the FTCA against the United States is generally "exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee . . . ." 28 U.S.C. § 2679(b)(1). The exclusiveness of the remedy of the FTCA does not extend to claims brought against federal employees for

violations of the federal constitution or a federal statute. 28 U.S.C. § 2679(b)(2). Therefore, the Individual Federal Defendants concede that the Westfall Act does not contemplate dismissal of Plaintiffs' federal law claims.

"[T]he fact that [a] case raises both state law and federal constitutional claims does not render inapplicable the Westfall Act's requirement for the substitution of the United States for the defendants with respect to the state law claims." *Velez-Diaz v. Vega-Irizarry*, 421 F.3d 71, 76 (1st Cir. 2005). "[C]ourts routinely order Westfall Act substitution of the United States as the defendant for state law claims when both state law and federal constitutional damage claims are asserted against federal employees." *Id.* (citations omitted); *see, e.g., Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002) (noting that plaintiff alleged four constitutional tort claims brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against individual federal employees, but asserted state law claims against the United States for the same actions of the federal employees); *Hartje v. FTC,* 106 F.3d 1406, 1407-08 (8th Cir. 1997) (similar); *Anderson v. Gov't of the V.I.*, 199 F. Supp. 2d 269, 279 (D. V.I. 2002) (substituting United States as to state law claims but not federal law claims).

Plaintiffs contend that state *constitutional* law claims—as opposed to state common law claims and state statutory law claims—are not subject to the exclusivity requirements of the FTCA. Plaintiffs thus contend that their state constitutional law claims "are properly brought against [the Individual Federal Defendants]." In support of their argument, they point out that the Iowa Supreme Court sometimes interprets provisions of the Iowa Constitution in accordance with the Supreme Court's interpretation of the federal constitution. *See, e.g., State v. Davis*, 304 N.W.2d 432, 434 (Iowa 1981) ("[S]imilar provisions of the state and federal constitutions are usually deemed to be identical in scope, import, and purpose.").

The court is bound by the plain language of the FTCA, not any decision by the Iowa Supreme Court that interprets the Iowa Constitution in accordance with the Supreme Court's interpretations of the United States Constitution.[4] By its terms, § 2679(b)(2) only excepts federal constitutional and statutory claims from the exclusivity requirement of § 2679(b)(1). 28 U.S.C. § 2679(b)(2). The court cannot judicially create a third exception. *See United States v. Smith*, 499 U.S. 160, 167 (1991) (holding that the Ninth Circuit Court of Appeals "erred in inferring a third exception that would preserve tort liability for Government employees"). "'Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent.'" *Id.* (quoting *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616-17 (1980)). There is no contrary legislative intent here. The court thus finds that the Westfall certification procedure outlined in 28 U.S.C. § 2679(d)(1) applies to Plaintiffs' state constitutional law claims. 28 U.S.C. § 2679(d)(1).

---

[4] In any event, the court notes that more recent Iowa Supreme Court decisions have explicitly and implicitly undermined the validity of the *Davis* principle. *See, e.g., In re S.A.J.B.*, 679 N.W.2d 645, 648 (Iowa 2004) (stating that the court's view of the state equal protection clause was "not dependent upon a view of the reach of the federal constitution" (citation and internal quotation marks omitted)); *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 4-16 (Iowa 2004) (rejecting federal equal protection analysis set forth in *Fitzgerald v. Racing Ass'n of Cent. Iowa*, 539 U.S. 103 (2003)); *State v. Daly*, 623 N.W.2d 799, 800-01 (Iowa 2001) (rejecting preservation of error principles set forth in *Ohler v. United States*, 529 U.S. 753 (2000)); *State v. Cline*, 617 N.W.2d 277, 283-93 (Iowa 2000) (rejecting so-called "good faith" exception to the warrant requirement set forth in *United States v. Leon*, 468 U.S. 897 (1984)), *overruled on other grounds in State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001); *Callender v. Skiles*, 591 N.W.2d 182, 186-92 (1999) (adopting Justice Brennan's dissenting view of the scope of due process and rejecting the plurality opinion in *Michael H. v. Gerald D.*, 491 U.S. 110 (1989)); *Iowa Freedom of Info. Council v. Wifvat*, 328 N.W.2d 920, 925 (Iowa 1983) (adopting three-prong test espoused by the dissent in *Gannett v. DePasquale*, 443 U.S. 368, 441-42 (1979)).

## 2. *Substitution of the United States*

Having determined that the Westfall certification procedure outlined in 28 U.S.C. § 2679(d)(1) applies to Plaintiffs' state constitutional claims, the court turns to examine whether Westfall substitution is appropriate in this case.

In support of their Motion for Summary Judgment, the Individual Federal Defendants have included a Westfall certification. In the Westfall certification, Mr. Timothy P. Garren, Director of the Civil Division of the Torts Branch of the United States Department of Justice, states that the Individual Federal Defendants "were acting within the scope of their employment as employees of the United States at the time of the conduct alleged in the complaint." (docket no. 67-5). Director Garren states that he signed the Westfall certification pursuant to the authority vested in him by 28 U.S.C. § 2679(d)(1) (2000) and 28 C.F.R. § 15.4 (2004). *Id.*

Plaintiffs do not challenge the validity of Director Garren's certification. Nor do they dispute Director Garren's assertion that the Individual Federal Defendants were acting within the scope of their employment at the time of the conduct alleged in the Third Amended Complaint.[5]

A Westfall certification constitutes "*prima facie* evidence that the defendants were acting within the scope of their employment . . . ." *Anthony v. Runyon*, 76 F.3d 210, 213 (8th Cir. 1996). "[A]fter defendants file a Westfall certificate and move to substitute the United States, plaintiffs have the burden of coming forward with any evidence contradicting the government's scope-of-employment certification." *Id.* at 215 (citing *Brown v. Armstrong*, 949 F.2d 1007, 1012 (8th Cir. 1991) and *Forrest City Mach. Works.*,

---

[5] Ordinarily, Westfall certification is not contested. *Gutierrez de Martinez*, 515 U.S. at 422; *see also id.* ("While the certification relieves the employee of responsibility, plaintiffs will confront instead a financially reliable defendant.").

*Inc. v. United States*, 953 F.2d 1086, 1088 (8th Cir. 1992)). Because Plaintiffs have not come forward with any evidence (or argument) that contradicts Director Garren's Westfall certification, the court need not independently review the case and determine whether the Individual Federal Defendants were acting within the scope of their employment. *See id.* at 213 (requiring an independent review "[i]f the plaintiff challenges the certification"); *see also id.* at 215 (affirming substitution order where the plaintiffs "failed to rebut the presumption" that the Westfall certificate was valid). Accordingly, the court shall order the United States to be substituted as the defendant in this action; the United States shall replace the Individual Federal Defendants on Plaintiffs' state law claims. 28 U.S.C. § 2679(d)(1); *cf. Beran v. United States*, 759 F. Supp. 886, 890-93 (D.D.C. 1991) (holding that substitution of United States as the defendant in place of secret service agents was proper, where the Attorney General's designee certified that the agents were acting within the scope of their employment).

In the alternative, in the event that Plaintiffs' arguments regarding the FTCA and exhaustion-of-remedies could somehow be understood as a challenge to Director Garren's assertion that the Individual Federal Defendants were acting within the scope of their employment, the court nonetheless finds that substitution is proper in this case. The court has independently reviewed the case and finds substitution is still proper. Director Garren's Westfall certification is valid on its face. The United States Attorney General has validly conferred authority upon Director Garren to state that the Individual Federal Defendants were acting within the scope of their employment. The Code of Federal Regulations states:

> [A]ny Director of the Torts Branch, Civil Division, Department of Justice, is authorized to make the statutory certification that the Federal employee was acting within the scope of his . . . employment with the Federal Government at

the time of the incident out of which the suit arose.

28 C.F.R. § 15.4. Director Garren is Director of the Torts Branch, Civil Division, Department of Justice, and therefore is qualified to issue a Westfall certification. *Id.*

Moreover, the undisputed facts make clear that the Individual Federal Defendants were acting within the scope of their employment. "[T]he law of the place of the alleged tort governs the scope-of-employment question." *Brown*, 949 F.2d at 1012 n.7; *see also McAdams v. Reno*, 64 F.3d 1137, 1145 (8th Cir. 1995) ("State law governs a scope of employment determination.") (citing *Forrest City Mach. Works*, 953 F.2d at 1098 n.4). The alleged torts occurred in Cedar Rapids, Iowa, and thus Iowa law applies. Under Iowa law,

> [F]or an act to be within the scope of employment the conduct complained of must be of the same general nature as that authorized or incidental to the conduct authorized. Thus, an act is deemed to be within the scope of one's employment where such act is necessary to accomplish the purpose of the employment and is intended for such purpose. The question, therefore, is whether the employee's conduct is so unlike that authorized that it is substantially different.

*Godar v. Edwards*, 588 N.W.2d 701, 705-06 (Iowa 1999) (citations and internal quotation marks omitted). The Iowa Supreme Court considers ten factors in assessing whether an act was committed in the scope of employment: (1) whether the act is one commonly done by employees; (2) the time, place and purpose of the act; (3) the previous relations between the employer and the employee; (4) the extent to which the business of the employer is apportioned between different employees; (5) whether the act is outside the enterprise of the employer or, if within the enterprise, has not been entrusted to any employee; (6) whether the employer has reason to expect that such an act will be done; (7) the similarity in quality of the act done to the act authorized; (8) whether or not the

instrumentality by which the harm is done has been furnished by the employer to the employee; (9) the extent of departure from the normal method of accomplishing an authorized result; and (10) whether or not the act is seriously criminal. *Id.* at 706 (citing Restatement (Second) of Agency § 229(2) (1957)). The "ultimate question" is whether or not it is fair that "the loss resulting from the [employee's] acts should be considered as one of the normal risks to be borne by the business in which the servant is employed." *Id.* (citing Restatement (Second) of Agency § 229 cmt. a).

It is undisputed that the Individual Federal Defendants are secret service agents whose supervisors ordered them to work at the re-election campaign event. They were sent to protect the President. They effectuated the allegedly unlawful and tortious arrests and detentions of Plaintiffs at or in the vicinity of the rally. The arrests—rightly or wrongly—were accomplished using normal methods.[6] Based on these circumstances, the court finds that any loss resulting from the Individual Federal Defendants' acts should be considered as one of the normal risks to be born by the United States. The court thus finds the Individual Federal Defendants were acting in the scope of their employment. Indeed, Plaintiffs admit in their Third Amended Complaint that the Individual Federal Defendants acted within the scope of their employment. In the Third Amended Complaint, Plaintiffs sue the Individual Federal Defendants personally for acts committed "in their official capacities" as federal employees.[7] *Cf. RMI Titatnium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996) ("Where . . . a plaintiff in his complaint pleads conduct within an individual's scope of employment and merely alleges bad or personal

---

[6] Plaintiffs do not allege that the Individual Federal Defendants personally strip-searched them at the rally.

[7] The court also notes that, in a previous complaint, Plaintiffs named the Secret Service as a defendant.

motive, summary dismissal is warranted.").

Given its independent review of the case, the court finds substitution is proper. *See Anthony*, 76 F.3d at 213 ("If the court agrees with the certification, then the case proceeds against the United States under the FTCA."). Accordingly, the court shall order the United States to be substituted as a defendant in this case; the United States shall replace the Individual Federal Defendants on Plaintiffs' claims under the Iowa Constitution. *See, e.g.*, *Council on Am. Islamic Relations v. Ballenger*, 444 F.3d 659, 662 (D.C. Cir. 2006) (citing, in part, 28 U.S.C. §§ 1346(b) and 2671-2680) ("Once a court determines that the federal employee acted within the scope of his employment, the case is . . . restyled as an action against the United States that is governed by the [FTCA].");  *Beran*, 758 F. Supp. at 886 (holding that substitution of United States as the defendant in place of secret service agents was proper, where the Attorney General's designee certified that the agents were acting within the scope of employment).

### 3. *Dismissal without Prejudice*

Once it is determined that Plaintiffs' state law claims are governed by the FTCA and that the United States should be substituted as the proper defendant, it is apparent that the court lacks subject-matter jurisdiction over such claims. An action against the United States under the FTCA cannot lie "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency." 28 U.S.C. § 2675(a). Plaintiffs concede that they have not exhausted their administrative remedies. Therefore, the court shall dismiss those claims without prejudice. *See id.* Dismissal without prejudice is warranted in this case because, when a plaintiff's claims are dismissed following Westfall certification, the plaintiff is generally permitted sixty days to present those claims to the appropriate federal agency. 28 U.S.C. § 2679(5); *see, e.g., Mittleman v. United States*, 104 F.3d 410, 413-15 (D.C. Cir. 1997) (discussing

24

60-day grace period "for claims originally filed against an individual employee and then dismissed for want of presentation"); *Chin v. Wilhelm*, 291 F. Supp. 2d 400, 404 & 404 n.3 (D. Md. 2003) (dismissing non-exhausted claims without prejudice in light of so-called "savings clause" in 28 U.S.C. § 2679(5)); *Anderson*, 199 F. Supp. 2d at 278-79 & n.12 (same).

### 4. Disposition

Accordingly, the court shall grant in part the Individual Federal Defendants' Motion for Summary Judgment. The court shall substitute the United States as the defendant on all of Plaintiffs' state law claims and dismiss the United States as a defendant from the state law claims without prejudice because the court lacks subject-matter jurisdiction over Plaintiffs' state law claims.

### B. Section 1985(3) Equal Protection Claim

The equal protection provision of § 1985(3) states:

> If two or more persons in any State . . . conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3). To state a claim under this provision, Plaintiffs must allege:

> (1) a conspiracy; (2) for the purpose of depriving another of the "equal protection of the laws, or of equal privileges and immunities under the laws"; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or the deprivation of a legal right.

*Federer*, 363 F.3d at 757-58. The second, "purpose" element of the conspiracy requires that Plaintiffs prove "a class-based invidiously discriminatory animus." *Larson ex rel*

*Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir. 1996) (en banc) (citations and internal quotation marks omitted); *accord Federer*, 363 F.3d at 758 ("A claim under [the equal protection provision of § 1985(3)] . . . requires proof of a class-based animus.") (citing *Griffin*, 403 U.S. at 102). Plaintiffs claim that they were targeted "based upon [their] status as protestors of the policies of the Bush Administration, particularly the war in Iraq." Third Amended Complaint at ¶ 59.

The fighting issue is whether a wholly non-racial discriminatory animus against Bush Administration and Iraq War protestors is the sort of class-based invidiously discriminatory animus the equal protection provision of § 1985(3) forbids. In other words, the court must determine whether § 1985(3) was intended to provide a remedy against a discriminatory animus directed at a class based on a wholly non-racial political affiliation.

Plaintiffs contend that § 1985(3) was intended to provide a remedy against discriminatory animus directed at a class based on a wholly non-racial political affiliation. Plaintiffs rely on *Means v. Wilson*, 522 F.2d 833 (8th Cir. 1975). In *Means*, the Eighth Circuit Court of Appeals held that supporters of a candidate for tribal council president and opponents of a sitting tribal council president constituted a class for purposes of the equal protection provision of § 1985(3). 522 F.2d at 840-41.

The Individual Federal Defendants contend that *Means* is no longer good law. After *Means* was decided, the Supreme Court discussed whether § 1985(3) provides a remedy against discriminatory animus directed at a class based on a wholly non-racial political affiliation. The Supreme Court wrote:

> [I]t is a close question whether § 1985(3) was intended to reach any class-based animus other than animus against Negroes and those who championed their cause, most notably Republicans. The central theme of the bill's proponents was that the Klan and others were forcibly resisting efforts to emancipate Negroes and give them equal access to political

power. The predominate purpose of § 1985(3) was to combat the prevalent animus against Negroes and their supporters. The latter included Republicans generally, as well as others, such as Northerners who came South with sympathetic views towards the Negro. Although we have examined with some care the legislative history that has been marshalled in support of the position that Congress meant to forbid wholly non-racial, but politically motivated conspiracies, we find difficult the question whether § 1985(3) provided a remedy for every concerted effort by one political group to nullify the influence of or do other injury to a competing group by use of otherwise unlawful means. To accede to that view would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume. If respondents' submission were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of its rival's speakers and the disruption of the rival's meetings.

We realize that there is some legislative history to support the view that § 1985(3) has a broader reach. Senator Edmunds's statement on the floor of the Senate is the clearest expression of this view. He said that if a conspiracy were formed against a man "because he was a Democrat, if you please, or because he was a Catholic, or because he was a Methodist, or because he was a Vermonter, . . . then this section could reach it." Cong. Globe, 42d Cong., 1st Sess. 567. The provision that is now § 1985(3), however, originated in the House. The narrowing amendment, which changed § 1985(3) to its present form, was proposed, debated, and adopted there, and the Senate made only technical changes to the bill. Senator Edmunds's views, since he managed the bill on the floor of the Senate, are not without weight. But we were aware of his views in *Griffin*, 403 U.S., at 102 n. 9, 91 S.Ct., at 1798 n. 9, and still withheld judgment on the question whether

> § 1985(3), as enacted, went any farther than its central
> concern—combating the violent and other efforts of the Klan
> and its allies to resist and to frustrate the intended affects of
> the Thirteenth, Fourteenth, and Fifteenth Amendments.
> Lacking other evidence of congressional intention, we follow
> the same course here.

*United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 836-37 (1983). Although it is clear that the quoted passage is technically dicta—the court expressly withheld judgment on whether wholly non-racial politically based animus fell within the purview of the statute[8]—the Individual Federal Defendants contend it calls into question the continuing validity of *Means*.

The court concludes that the validity of *Means* is an open question in the Eighth Circuit. The Eighth Circuit Court of Appeals has repeatedly recognized that the validity of *Means* after *Scott* is an open question. *See, e.g., Runs After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985) ("We need not consider whether the *Means v. Wilson* holding that 42 U.S.C. § 1985(3) prohibits political discrimination has been implicitly limited by [*Scott*] . . . ."); *see also Federer*, 363 F.3d at 759 (recognizing implicitly that the validity of *Means* is an open question and "[p]assing on the question of whether or not a political party is a 'class' under the statute").

Two particular developments in the Eighth Circuit shed considerable doubt on the validity of *Means*. First, in *Lewis v. Pearson Foundation, Inc.*, 908 F.2d 318 (8th Cir.

---

[8] The Supreme Court's holding in *Scott* was limited to the conclusion that § 1985(3) does not "reach conspiracies motivated by economic or commercial animus." *Scott*, 463 U.S. at 838; *see also Griffin*, 403 U.S. at 102 & 102 n.9 (determining that a § 1985(3) plaintiff must show that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action" and specifically declining to determine whether § 1985(3)'s protection extends to non-racially-motivated conspiracies."

1990), a panel of the Eighth Circuit Court of Appeals was asked to decide whether it was appropriate to follow *Scott*, or pre-*Scott* cases in the Eighth Circuit such as *Means* that had taken an expansive scope of the animus required in § 1985(3) equal protection clause cases. Relying on pre-*Scott* precedent, a divided panel adopted a broad view of the requisite animus; the panel held that animus against women was "sufficiently invidious so as to merit statutory protection." *Lewis*, 908 F.2d at 324 (citing *Conroy v. Conroy*, 575 F.2d 175, 177 (8th Cir. 1978)). The panel cited *Means* with approval, *id.*, and wrote:

> Most courts have extended protection to other suspect-like classes, such as those based on religion, *or those defined by ideology* or the exercise of a fundamental right. The ultimate test . . . is whether the classification is sufficiently 'invidious' so as to fall within the statute's ambit.

*Id.* (emphasis added) (citing *Shortbull v. Looking Elk*, 677 F.2d 645, 649 (8th Cir. 1982)). The panel reversed the district court, which had apparently followed the dicta in *Scott* and held that § 1985(3) was limited to race-based animus. *See id.* at 320 (stating that the district court had held that the plaintiff's "complaint failed to establish the class-based discriminatory animus against which section 1985(3) was intended to protect"). However, the Eighth Circuit Court of Appeals granted the appellee's petition for rehearing and reheard the case en banc. The en banc court vacated the panel's decision and affirmed the district court by operation of law. *Lewis v. Pearson Found., Inc.*, 917 F.2d 1077, 1077 (8th Cir. 1990).

Second, in *Larson ex rel. Larson v. Miller*, 55 F.3d 1343 (8th Cir. 1995), a divided panel of the Eighth Circuit Court of Appeals appeared to follow the same course as the panel in *Lewis* and adopted a broad view of § 1985(3)'s animus requirement. The *Larson* panel stated that "§ 1985(3)'s reach extends beyond racial animus," 55 F.3d at 1351, and "the statute's legislative history . . . reveals a broader congressional intent to extend

§ 1985(3)'s sweep to diverse classifications beyond race . . . ," *id.* at 1351-52.  The panel held that the required animus included animus against women and animus against the disabled.  *Id.* at 1352-53.  Sitting en banc, however, the Eighth Circuit Court of Appeals granted rehearing and vacated the panel's decision.  *Larson*, 67 F.3d at 148.  The en banc Eighth Circuit Court of Appeals did not reach the issue of the scope of animus contemplated in § 1985(3).  *See generally Larson ex rel. Larson v. Miller*, 76 F.3d 1446 (8th Cir. 1996) (Hansen, J.) (affirming district court because plaintiffs had not proven a conspiracy); *cf. Larson*, 55 F.3d at 1358 (Hansen, J., dissenting) ("[B]ecause the evidence is wholly insufficient . . . to support the jury's verdicts . . .  I would affirm . . . without deciding whether or not the reach of § 1985(3) is as broad as the court today determines.").

The fate of the panel decisions in *Lewis* and *Larson* is further evidence that the validity of *Means* is an open question in the Eighth Circuit.  Every time a panel of the Eighth Circuit Court of Appeals has attempted to resort to pre-*Scott* law and expand Section 1985(3)'s ambit beyond racial animus, the panel's decision has been vacated.

The court predicts that, if the Supreme Court and the Eighth Circuit Court of Appeals were faced with the issue today, they would overturn *Means* and hold that § 1985(3) does not provide a remedy against discriminatory animus directed at a class based on a wholly non-racial political affiliation.  After *Scott*, an overwhelming majority of the circuit courts of appeal that have taken a position on the issue[9] have held that a

----

[9] The question is an open one in the First, Second, Eleventh and District of Columbia Circuits.  *See, e.g., Aulson v. Blanchard*, 83 F.3d 1, 4-5 (1st Cir. 2000) ("The Supreme Court has not decided whether political differences are invidious criteria that qualify the classes that they define for the protection of § 1985(3).  Although other federal courts are divided on this question . . . we have not yet had occasion to lend our (continued...)

wholly non-racial discriminatory animus does not satisfy the animus requirement of the equal protection provision of § 1985(3). *See, e.g., Farber v. City of Paterson*, 440 F.3d 131, 143 (3d Cir. 2006) ("We hold that § 1985(3) does not provide a cause of action for individuals allegedly injured by conspiracies motivated by discriminatory animus directed toward their political affiliation."); *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536-37 (9th Cir. 1992) ("Generally, our rule is that section 1985(3) is extended beyond race only when the class in question can show that there has been a governmental determination that its members require and warrant special federal assistance in protecting their civil rights. More specifically, we require either that the courts have designated the class in question a suspect or quasi-suspect classification requiring more exacting scrutiny or that Congress has indicated through legislation that the class required special protection.");[10] *Brown v.*

---

[9] (...continued)
institutional voice to the rising cacophony that surrounds it. Nor need we do so today."); *Gleason v. McBride*, 869 F.2d 688, 695 (2d Cir. 1989) (holding that a plaintiff was not a member of a cognizable class where he only alleged that he "was a political opponent of the defendants and extremely vocal in his opposition" but reserving ruling on whether *Scott* overruled *Keating v. Carey*, 706 F.2d 377, 386-87 (2d. Cir. 1983), in which it held that political parties were protected groups under § 1985(3)); *Bois v. Marsh*, 801 F.2d 462, 470 n.14 (D.C. Cir. 1986) ("[W]e need not reach the unsettled question whether § 1985(3) applies to conspiracies other than those that are racially motivated."); *cf. Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1336-40 (11th Cir. 1999) (en banc) (applying a test similar to that in the Ninth Circuit and holding that women were a protected class under § 1985(3), but not addressing wholly non-racial political conspiracies).

[10] The Ninth Circuit's suspect classification scheme is a harmonization of its pre-*Scott* law with *Scott*. *See Schultz v. Sundberg*, 759 F.2d 714, 718 (9th Cir. 1985). *But see Gibson v. United States*, 781 F.2d 1334, 1341 (9th Cir. 1986) (interpreting *Scott* as "explicitly restrict[ing] the statutory coverage to conspiracies motivated by racial basis"). Although the Ninth Circuit's interpretation of § 1985(3) is broader than other circuits, it still does not apply to wholly non-racial political conspiracies. In *Schultz*, the Ninth
(continued...)

*Reardon,* 770 F.2d 896, 905-07 (10th Cir. 1985) (rejecting appellants' argument that § 1985(3) applies to "those discriminated against due to their political beliefs or the expression of the same, as allowed under the First Amendment" and holding that § 1985(3) "was intended, perhaps more than anything else, to provide redress for victims of conspiracies impelled by a commingling of racial and political motives" (citations and internal quotation marks omitted); *Grimes v. Smith*, 776 F.2d 1359, 1366-67 (7th Cir. 1985) ("*Means* . . . was decided prior to *Scott* . . . . *Scott* calls for reconsideration of the status of purely political conspiracies under § 1985(3) . . . . [*Scott*] is a powerful indication that, when squarely confronted with the question, the Court would not include such conspiracies within the scope of the provision . . . . [T]he considered dictum cannot be ignored . . . . [Therefore, we hold] § 1985(3) does not reach nonracial political conspiracies."); *Rayborn v. Miss. State Bd. of Dental Exam'rs,* 776 F.2d 530, 532 (5th Cir. 1985) ("The conspiracy must be race-based to state a cause of action for violation of § 1985." (citing *Scott*, 463 U.S. at 825));[11] *Harrison v. KVAT Food Mgt., Inc.*, 766 F.2d

---

[10](…continued)
Circuit conceded that *Scott* "indicated that section 1985(3) probably did not extend to wholly political, non-racial conspiracies." *Id.* Applying the suspect classification test, the Ninth Circuit held § 1985(3) did not extend to a wholly political, non-racial conspiracy, "[b]ecause there has not been any governmental determination that such a class merits special protection." *Id.*

[11] *Galloway v. Louisiana*, 817 F.2d 1154, 1159 (5th Cir. 1987) is often cited as evidence to the contrary. *See, e.g., Farber*, 440 F.3d at 139 n.7. However, *Galloway* does not address or even cite *Scott*. Instead, *Galloway* relies solely on a pre-*Scott* case. *Galloway*, 817 F.2d at 1159 (citing *Kimble v. D.J. McDuffy, Inc.*, 623 F.2d 1060, 1066 (5th Cir. 1980)). Subsquent cases in the Fifth Circuit vindicate *Rayborn* and show *Galloway* is no longer good law. *See, e.g., Norris v. Fairbanks Capital Corp.*, Nos. 04-30932, 04-31023, 2006 WL 1169849, at *1 (5th Cir. May 3, 2006) (per curiam) (holding
(continued…)

155, 159-163 (4th Cir. 1985) ("[S]ince the time [*Means* and other cases] were decided, . . . the Supreme Court decided [*Scott*]. We find the language of *Scott* to be instructive. . . . In sum, we are of the opinion that [a political group is] not protected by § 1985(3)."). Only the Sixth Circuit Court of Appeals has squarely held after *Scott* that a wholly non-racial discriminatory animus satisfies the animus requirement of the equal protection provision of § 1985(3). *Conklin v. Lovely*, 834 F.2d 543, 549-550 (6th Cir. 1987) (citing *Cameron v. Brock*, 473 F.2d 608, 610 (6th Cir. 1975)). Its decision was hardly enthusiastic; the panel stated:

> We recognize other circuits post-[*Scott*] have restricted § 1985(3) to conspiracies directed at racial classes. We, however, are not writing on a clean slate . . . . As [*Scott*] leaves open the question, we are bound by *Cameron*.

*Id.*; *see also id.* at 554 (Norris, J., concurring) ("I concur only because we are bound to follow . . . [*Cameron*], even though adherence to the reasoning relied upon a majority of the members of the Supreme Court in its intervening opinion in [*Scott*] would appear to compel a different result.").[12]

Accordingly, the court holds that § 1985(3) was not intended to provide a remedy

---

[11](...continued)

plaintiff's § 1985(3) claim failed because she "fail[ed] to show . . . that a conspiracy to violate her rights was premised on a racial animus"); *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 124 (5th Cir. 1996) ("Essential to the claim . . . is that the conspiracy be motivated by racial animus.").

[12] The court recognizes that its assessment of the state of the circuit-split differs from the lineup recently set forth in *Farber*. *See Farber*, 440 F.3d at 139 n.7 (concluding that the Second, Fifth, Sixth and Eighth Circuits hold that wholly non-racial animus directed at a political class qualifies under section 1985(3) and that the Fourth and Seventh Circuits hold it does not).

against a discriminatory animus directed at a class based on a wholly non-racial political affiliation. *Scott*, 463 U.S. at 836-37; *Farber*, 440 F.3d at 143; *Sever*, 978 F.2d at 1536-37; *Brown,* 770 F.2d at 905-07; *Grimes*, 776 F.2d at 1366-67; *Rayborn,* 776 F.2d at 532; *Harrison*, 766 F.2d at 159-163. Plaintiffs allege that the Individual Federal Defendants acted with a wholly non-racial discriminatory animus, namely, an animus against the Bush Administration and Iraq War protestors. This not the sort of class-based invidious discriminatory animus the equal protection provision of § 1985(3) forbids. Accordingly, the court shall dismiss Count 6 of the Third Amended Complaint, insofar as it alleges a violation of the equal protection provision of § 1985(3) against the Individual Federal Defendants.

Even if the court is wrong about the import of *Scott* and the continuing validity of *Means*, Plaintiffs' § 1985(3) equal protection claim must still fail on summary judgment. As the foregoing discussion illustrates, the question is left open by the Supreme Court and the Eighth Circuit Court of Appeals, and the other circuit courts of appeal are divided on the scope of the animus element of § 1985(3), that is, whether wholly non-racial political animus qualifies under § 1985(3). When the Supreme Court and Eighth Circuit Court of Appeals have not decided a particular legal issue and the other circuit courts of appeals are split, qualified immunity attaches because it cannot be said that the defendant has violated a "clearly established" right. *See, e.g., Murphy v. Dowd*, 975 F.2d 435, 436-37 (8th Cir. 1992) (finding official was qualifiedly immune); *see also Wilson v. Layne*, 526 U.S. 603, 617-18 (1999) ("If judges . . . disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy."). Open legal questions are not "clearly established law." *Shepard v. Ripperger*, 57 Fed. Appx. 270, 272 (8th Cir. 2003). Accordingly, the Individual Federal Defendants are immune from a § 1985(3) equal protection lawsuit and, insofar as Count 6 alleges one, it shall be

dismissed.

### C. *Substantive Due Process Claim*

In Count 5 of the Third Amended Complaint, Plaintiffs allege that the Individual Federal Defendants violated the rights of Plaintiffs to "substantive due process as guaranteed by the Fourteenth Amendment to the Constitution." In their pleadings, Plaintiffs claim that the Individual Federal Defendants violated their substantive due process rights "by putting into motion an unreasonable strip search and visual cavity inspection of Plaintiffs' most private and delicate of areas—something wholly unwarranted by the circumstances—and thereby intruding on Plaintiffs' bodily integrity."

The Individual Federal Defendants ask the court to dismiss Plaintiffs' substantive due process claim "because the Fourth Amendment, not substantive due process, provides the doctrinal framework for assessing the reasonableness of searches." In essence, the Individual Federal Defendants claim that Count 5 is duplicative of Count 3, and it should be dismissed. Plaintiffs do not respond to the Individual Federal Defendants' argument; instead, Plaintiffs argue generally that they can satisfy the elements of their substantive due process claim.

"'The Due Process Clause of the Fourteenth Amendment was intended to prevent the government from abusing its power, or employing it as an instrument of oppression.'" *Bonebrake v. Cox*, 417 F.3d 938, 944 (8th Cir. 2005) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 126 (1992)). "The Fourteenth Amendment guarantees substantive due process, which prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Sheets v. Butera*, 389 F.3d 772, 778 (8th Cir. 2004) (citations, alterations and internal quotation marks omitted)).

It is settled, however, that "'[w]here a particular Amendment provides an explicit

textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion of Rehnquist, C.J.)). The Fourth Amendment protects against "unreasonable searches," U.S. Const. amend. IV, including unreasonable strip searches, *Smook*, 2006 WL 2265558, at *1 (analyzing reasonableness of strip search under the Fourth Amendment), and cavity inspections, *Franklin v. Lockhart*, 883 F.2d 654, 656-57 (8th Cir. 1989) (analyzing reasonableness of visual body cavity searches under the Fourth Amendment). The Fourth Amendment provides an explicit textual source of constitutional protection under which the court may address Plaintiffs' complaints about the strip searches and visual cavity inspections which were conducted at the Linn County Jail. Therefore, Plaintiffs' complaints are properly analyzed under the Fourth Amendment, not the Fourteenth Amendment. *Lewis*, 523 U.S. at 842.

Accordingly, the court shall dismiss Count 5 of the Third Amended Complaint as to the Individual Federal Defendants.

### D.  Disposition

The court shall grant in part and deny in part the Individual Federal Defendants' Motion for Summary Judgment. The court shall grant the Motion for Summary Judgment as to Plaintiffs' state law claims against the Individual Federal Defendants and dismiss those claims without prejudice because the court lacks subject-matter jurisdiction over them. The court shall dismiss the portion of Count 6 in the Third Amended Complaint that alleges a violation of the equal protection provision of § 1983(5) against the Individual Federal Defendants. The court shall dismiss Count 5 of the Third Amended Complaint as to the Individual Federal Defendants. The court shall deny the remainder of the Motion

for Summary Judgment for the reasons stated in the court's ruling on Plaintiffs' Rule 56(f) Motion.

## VIII.  MOTION FOR PROTECTIVE ORDER

In the Motion for Protective Order, the Individual Federal Defendants ask the court to stay all discovery against them until the court determines what discovery is necessary to resolve their qualified immunity defenses.  Given the court's rulings on Plaintiffs' Rule 56(f) Motion and the Individual Federal Defendants' Motion for Summary Judgment, the court shall deny as moot the Motion for Protective Order.

## IX.  CONCLUSION

**IT IS THEREFORE ORDERED THAT:**

(1)  The Motion for Summary Judgment (docket no. 67) filed by Defendants Bruce Macaulay, Michael Parker and Holly Michael, is **GRANTED IN PART AND DENIED IN PART WITH LEAVE TO REFILE ON DECEMBER 1, 2006**;

(2)  The Motion to Continue Pursuant to Rule 56(f), filed by Plaintiffs Alice McCabe and Christine Nelson (docket no. 70) is **GRANTED IN PART AND DENIED IN PART**;

(3)  The Renewed Motion for Protective Order to Stay Discovery (docket no. 71), filed by Defendants Bruce Macaulay, Michael Parker and Holly Michael, is **DENIED AS MOOT**;

(4)  The United States is substituted as the defendant in place of Bruce Macaulay, Michael Parker and Holly Michael as to Plaintiffs' state law claims, which comprise parts of Counts 1 through 6 of the Third Amended Complaint;

(5)  Plaintiffs' state law claims against the United States are dismissed without prejudice;

(6)     Count 5 of the Third Amended Complaint is dismissed with prejudice as to Bruce Macaulay, Michael Parker and Holly Michael; and

(7)     The portion of Count 6 in the Third Amended Complaint that alleges a violation of the equal protection provision of § 1985(3) against Bruce Macaulay, Michael Parker and Holly Michael is dismissed.

**IT IS SO ORDERED.**

**DATED** this 1st day of September, 2006.

LINDA R. READE
JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA