IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

---

| | | |
|---|---|---|
| ALICE McCABE and CHRISTINE NELSON, | ) | Case No. 1:05-cv-73 |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| BRUCE MACAULAY, MICHAEL PARKER, HOLLY MICHAEL, IOWA STATE PATROL, TROY BAILEY, RICK BUSCH, LINN COUNTY AND MICHELLE MAIS, | ) ) ) ) ) ) | **STATEMENT OF MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON BEHALF OF DEFENDANTS IOWA STATE PATROL, TROY BAILEY AND RICK BUSH** |
| Defendants. | ) ) | |

---

COME NOW Defendants Troy Bailey and Rick Busch and pursuant to LR 56.1 set forth the following statement of material facts which these defendants contend there is no genuine issue to be tried:

1. Troy Bailey is employed by the Iowa Department of Public Safety, Iowa State Patrol and has been so employed since 1995. Troy Bailey is a Trooper with the Iowa State Patrol. (State Defendants' App. 62-63).

2. Rick Busch is employed by the Iowa Department of Public Safety, Iowa State Patrol and has been so employed since 1992. Rick Busch is a Trooper with the Iowa State Patrol. (State Defendants' App. 103-104).

3. During Rick Busch's military career he had experience providing security for Secretaries of Defense Cohen and Rumsfeld, as well as foreign secretaries of defense when they visited the United States. (State Defendants' App. 132-134).

4. Both Bailey and Busch were assigned to provide dignitary protection and security at a rally for President Bush which was held in Cedar Rapids on September 3, 2004. (State Defendants' App. 242; 246).

5. Bailey and Busch were assigned to patrol on the south side of Noelridge Park which is bordered by 42nd Street. (State Defendants' App. at id).

6. Prior to traveling to Noelridge Park Bailey and Busch received a short briefing at Iowa State Patrol Post – located in Cedar Rapids. (State Defendants' App. 109A; 246).

7. Upon arriving at the park they attended another briefing put on by local law enforcement as well as the Secret Service. (State Defendants' App. 109A-112; 246).

8. Bailey and Busch were informed at this briefing that Noelridge Park had been rented for the day and was to be treated as private property. (State Defendants' App. 65A-68; 110-112; 246).

9. Bailey and Busch were also notified of the security perimeter around the park which included the sidewalk area on the southernmost part of the park bordering the north side of 42nd Street. (State Defendants' App. 69-70; 90-91; 110-112).

10. Pedestrian traffic on 42nd Street, as well as the sidewalk on the north and sides of 42nd Street, were subject to restrictions. These restrictions included that pedestrians keep moving on the sidewalk, not stand still or congregate on the north sidewalk, not impede traffic on 42nd Street, and not impede the entry of buses or pedestrians to the entrance of the event. (State Defendants' App. 18; 23; 28; 34-35).

11. It is important, from a security standpoint, to keep people moving so as not to provide cover for persons intending harm. (State Defendants' App. 29-30; 35; 39-40; 43-44; 47-48; 70-71; 111).

12. Both Bailey and Busch told numerous persons to keep moving and directed numerous persons to the south side of 42nd Street to protest. Everyone except for Plaintiffs complied with their request to keep moving and/or move to the south side of 42nd Street to protest. (State Defendants' App. 71; 80; 94; 118; 124; 128).

13. Bailey and Busch were also notified at the briefing that the area on the south side of 42nd Street had been designated for protesters. (State Defendants' App. 69-70; 110-111; 115; 119)

14. 42nd Street, which forms the southern boundary of the park, runs in a generally east-west direction. (State Defendants' App. 252).

15. 42nd Street was open to vehicular traffic for local residents until just prior to the President's arrival. (State Defendants' App. 65B-68; 112).

16. People were arriving at the event both by foot and by bus. (State Defendants' App. 32-33; 96).

17. The controlled access point to the rally was a driveway to the pool area of the park off of 42nd Street. (State Defendants' App. 32-33; 93).

18. There were physical barriers around the park such as snow fences and heavy construction equipment. (State Defendants' App. 33-34; 67).

19. It was imperative from a security standpoint to keep people moving in the area around the controlled access point. (State Defendants' App. 35; 39-40; 43-44; 47-48).

20. McCabe and Nelson arrived at the area of the rally in the early afternoon. (State Defendants' App. 165).

21. As they approached the area of Noelridge Park they walked along the south sidewalk of 42nd Street, crossed to the north side of 42nd Street and walked along the north sidewalk to the area of the controlled entrance to the event. (State Defendants' App. 146-148; 160-164; 203; 206-207).

22. Neither McCabe nor Nelson were confronted in any way by law enforcement officers as they were walking. (State Defendants' App. 180; 229-230).

23. On September 3, 2004, at approximately 3:50 p.m., Bailey and Busch, while patrolling their assigned area, observed a Secret Service agent engaged in conversation

4

with two females. There were others standing near the two women. (State Defendants' App. 242; 246)

24. The Secret Service agent and the two women were standing immediately adjacent to the controlled entry point of the park on the North side of 42nd Street. As they approached, Bailey heard the Secret Service agent tell the women that needed to keep moving and also heard the agent direct the two women to the south side of 42nd Street. The two women did not comply with the Secret Service agent's request to move. (State Defendants' App. 14; 19; 75-77; 119; 171-172; 215-216; 231).

25. Bailey approached one of the women who has been identified as Plaintiff Alice McCabe. Bailey told McCabe that she needed to move and specifically that she need to move to the south side of 42nd Street. (State Defendants' App. at id).

26. McCabe understood from Bailey's statements that she was not allowed to stand at this location. (State Defendants' App. 175).

27. Bailey believed the area on the north side of 42nd street including the public right of way was part of the area rented for the day and part of the secure area. (State Defendants' App. 65A-66; 69-70).

28. McCabe questioned Bailey's request to move, stated she had a right to stand there, asked why others were allowed to stand in the area, and did not move as requested. McCabe was asked more than once to move. (State Defendants' App. 36-37; 120; 172; 216; 242; 246).

29. Bailey could not continue to debate the matter without affecting his role in fulfilling his duties. (State Defendants' App. 80)

30. Bailey believed McCabe wasn't complying with a police officer's lawful order and was trespassing. (State Defendants' App. 82-83).

31. Bailey then told McCabe he was placing her under arrest for criminal trespassing. McCabe's hands were handcuffed behind her back. (State Defendants' App. 77; 242).

32. At this same time Busch confronted one of the other women standing in this same area. This woman, now identified as Christine Nelson was told by Busch that she needed to move and that she could move to the south side of 42nd street to protest if she wished to do so. (State Defendants' App. 119-121; 232; 246).

33. Nelson did not move as requested but rather engaged in a debate with Busch over the request to move. After being asked to move 2-3 times, and refusing to do so, Busch placed Nelson under arrest for criminal trespass. (State Defendants' App. 119-121).

34. Prior to placing Nelson under arrest Busch consulted with his supervisor who ordered Busch to place Nelson under arrest. (State Defendants' App. 1120-121; 126-127; 246).

6

35. At around the time of the arrests, Plaintiffs' companion, Barb Hannon, approached, was told to move to the south side of 42nd Street, complied and was not arrested. (State Defendants' App. 144; 146-149; 150-152).

36. After Nelson and McCabe were arrested they were taken to the Noelridge Park pool house for processing. (State Defendants' App. 77; 122; 185; 217-218; 242; 246).

37. Neither McCabe nor Nelson were searched, at any time, by Bailey or Busch. (State Defendants' App. 186; 233-234).

38. After getting to the pool house the metal cuffs they were wearing were replaced with plastic cuffs. (State Defendants' App. 186; 219; 235).

39. After being processed ,McCabe and Nelson were transported by a Cedar Rapids Police officer to the Linn County Jail. (State Defendants' App. 96-97; 130-131; 187; 236).

40. Neither Busch nor Bailey had any contact whatsoever with McCabe or Nelson after they were transported from the pool house. (State Defendants' App. 187; 235).

41. Neither Busch nor Bailey had anything to do with the booking process or activities at the Linn County Jail. (State Defendants' App. 98; 139).

Respectfully submitted,

THOMAS J. MILLER
IOWA ATTORNEY GENERAL


 /s/   Jeffrey C. Peterzalek
JEFFREY C. PETERZALEK
Deputy Attorney General
1305 E. Walnut, Second Floor
Des Moines, Iowa 50319
Ph:  (515) 281-4213
Fax: (515) 281-7551
jpeterz@ag.state.ia.us
ATTORNEYS FOR DEFENDANTS
IOWA STATE PATROL, TROY BAILEY
and RICK BUSCH

Copy to:

David A. O'Brien
3519 Center Point Road NE
Cedar Rapids, IA 52406-2008

Zachary C. Richter
U.S. Department of Justice
Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044

Todd D. Tripp
Assistant County Attorney
51 Third Avenue Bridge
Cedar Rapids, IA 52401

**Proof of Service**

The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on March 30, 2007

- 9 U.S. Mail
- 9 FAX
- 9 Hand Delivery
- 9 Overnight Courier
- 9 Federal Express
- 9 Other
- X Electronically

Signature:  /s/ Jeff Peterzalek