IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

_____

ALICE McCABE and CHRISTINE )    Case No.   1:05-cv-73
NELSON, )
   )
       Plaintiffs, )
   )
    vs. )
   )
BRUCE MACAULAY, MICHAEL )
PARKER, HOLLY MICHAEL, )    **BRIEF IN SUPPORT OF**
IOWA STATE PATROL, TROY )    **MOTION FOR SUMMARY**
BAILEY, RICK BUSCH, LINN )    **JUDGMENT ON BEHALF OF**
COUNTY AND MICHELLE MAIS, )    **DEFENDANTS IOWA STATE**
   )    **PATROL, TROY BAILEY AND**
       Defendants. )    **RICK BUSCH**

_____

## TABLE OF CONTENTS

                                                                    **Page**

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      PLAINTIFFS' CLAIMS SET FORTH IN COUNTS V
        AND VI OF THEIR COMPLAINT MUST BE
        DISMISSED AS TO THESE DEFENDANTS FOR THE
        SAME REASONS THOSE CLAIMS WERE
        DISMISSED AGAINST THE FEDERAL
        DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II      ANY CLAIMS BROUGHT UNDER 42 U.S.C. SECTION
        1983 AGAINST THE IOWA STATE PATROL MUST
        BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III     PLAINTIFF'S CLAIMS UNDER SECTION 1983
        AGAINST TROY BAILEY AND RICK BUSCH ARE
        ALSO PRECLUDED BY THE ELEVENTH
        AMENDMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV      PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS
MUST BE DISMISSED ON THE BASIS OF THE
ELEVENTH AMENDMENT, AS WELL AS ON THE
BASIS THAT THERE IS NO DIRECT CAUSE OF
ACTION AVAILABLE TO THE PLAINTIFFS FOR
SUCH ALLEGED VIOLATIONS AND EVEN IF THIS
COURT COULD CONSIDER SUCH CLAIMS THE
PLAINTIFFS HAVE FAILED TO EXHAUST THEIR
REMEDIES UNDER IOWA CODE CHAPTER 669,
THUS DEPRIVING ANY COURT OF SUBJECT
MATTER JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

V.      QUALIFIED IMMUNITY BARS PLAINTIFFS' FIRST
AMENDMENT CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    There was no constitutional violation . . . . . . . . . . . . . . . . . . . . . . 9

VI      EVEN IF PLAINTIFFS COULD SHOW A
CONSTITUTIONAL VIOLATION, THEIR CLAIMS
MUST STILL BE DISMISSED AS A REASONABLE
OFFICER WOULD NOT HAVE BEEN PUT ON
NOTICE THAT THEIR CONDUCT WAS CLEARLY
UNLAWFUL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VII     TROOPERS BAILEY AND BUSCH ARE ALSO
ENTITLED TO QUALIFIED IMMUNITY WITH
RESPECT TO PLAINTIFFS' FOURTH AMENDMENT
CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      A.    There was arguable probable cause for Troopers Bailey
And Busch to arrest Plaintiffs . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

VIII   QUALIFIED IMMUNITY BARS THE
PLAINTIFFS' SEARCH-RELATED FOURTH
AMENDMENT CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

IX      QUALIFIED IMMUNITY BARS THE
PLAINTIFFS' EQUAL PROTECTION CLAIMS . . . . . . . . . . . . . . . . . 23

X       QUALIFIED IMMUNITY BARS THE
PLAINTIFFS' CLAIMS UNDER 42 U.S.C.
§ 1983(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# BACKGROUND

The events in this case revolve around a campaign rally held at Noelridge Park in Cedar Rapids by a private political organization on September 3, 2004. President George W. Bush appeared at the rally, and over ten thousand ticket holders attended.

Iowa State Patrol Troopers Troy Bailey and Rick Busch were assigned by the Iowa Department of Public Safety to provide dignitary protection at this event. Before the rally, Bailey and Busch were briefed on the security measures that had been designed to ensure the safety of the President and the general public. This briefing was presented by the United States Secret Service and local law enforcement. At the briefing Bailey and Busch were informed that the park had been rented for the day and was to be treated as private property. Other security issues were discussed including the parameters of the secure area in and around the park. Of significant relevance to this lawsuit were the security measures applicable to the sidewalks and grassy areas surrounding an entrance to the rally designated for both bus and pedestrian traffic (the "bus entrance"). Bailey and Busch were briefed that members of the general public in and around the bus entrance were to keep moving and to refrain from stopping and standing in one place. The reasons for this restriction were several. First, the proximity and position of the bus entrance relative to the rally stage necessitated close monitoring of the entrance, and close monitoring would have been complicated had members of the general public been allowed to stand and gather there. Second, allowing members of the general public to

1

stand and gather in or around the bus entrance would have hindered the flow of pedestrian and bus traffic into the park. Third, allowing members of the general public to stand and gather in or around the bus entrance would have frustrated the effort to ensure clear paths for emergency vehicles to enter and exit the rally area. Bailey and Busch were also informed at the briefing that the south side of 42nd Street had been designated for protesters.

The Plaintiffs in this case are two individuals who stopped and stood immediately adjacent to the bus entrance on the day of the rally. Plaintiff Nelson was wearing a small Kerry-Edwards campaign button and Plaintiff McCabe was carrying an 8½ by 11- inch sign mounted on a wooden stake. Prior to stopping and standing by the entrance to the event which is located on the north side of 42nd Street , Plaintiffs walked along the north side of 42nd Street and were not stopped or otherwise interfered with. It was not until Plaintiffs stopped near the entrance to the event that they were approached by law enforcement officers including Secret Service Agent MaCauley, as well as Troy Bailey and Rick Busch.

The only material details of this interaction are undisputed. First, law enforcement officers, including Bailey, Busch and Secret Service Agency MaCauley, gave the Plaintiffs multiple orders to move away from the bus entrance. Next, Plaintiffs did not comply with the orders to move. Finally, Bailey and Busch arrested the Plaintiffs, handcuffed them, and escorted them to the pool house for additional processing. After

some additional information was gathered and paperwork completed, the Plaintiffs were transported by a Cedar Rapids Police officer to the Linn County Jail to be booked.

The Plaintiffs subsequently asserted various claims against federal, state, and local Defendants, including Bailey and Busch. This Court granted the individual federal Defendants summary judgment on the plaintiffs' state constitutional claims, the Plaintiffs' substantive due process claim, and a portion of the Plaintiffs' claim under § 1985(3).

I. **PLAINTIFFS' CLAIMS SET FORTH IN COUNTS V AND VI OF THEIR COMPLAINT MUST BE DISMISSED AS TO THESE DEFENDANTS FOR THE SAME REASONS THOSE CLAIMS WERE DISMISSED AGAINST THE FEDERAL DEFENDANTS.**

Plaintiffs' claims alleging violation of substantive due process rights under the Fourteenth Amendment (Count V of the Complaint) and Section 1985 claims of conspiracy to violate constitutional rights under the equal protection component of section 1985(3) (Count VI of the Complaint), must be dismissed as to these Defendants, for the reasons set forth in this Court's prior decision relating to the Federal Defendants. See McCabe v. MaCaulay, 450 F. Supp. 2d 928 (N.D. Iowa 2006).

3

**II      ANY CLAIMS BROUGHT UNDER 42 U.S.C. SECTION
1983 AGAINST THE IOWA STATE PATROL MUST
BE DISMISSED.**

42 U.S.C. section 1983 only provides a legal remedy against individuals or entities

meeting the definition of the term "person" as used in the statute.  Will v. Michigan Dept.

of State Police, 491 U.S. 58 (1989).  The Court in Will determined that Congress did not

intend to include a state within the definition of "person".  Will, 491 U.S. at 66.  The

decision in Will also precludes a suit against a state agency.  Will, 491 U.S. at 71;

Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997); Burke v. Beene, 948

F.2d 489, 493 (8th Cir. 1991).  Pursuant to the afore-noted authority, the Iowa State Patrol

must be dismissed from this action.[1]


**III.      PLAINTIFF'S CLAIMS UNDER SECTION 1983 AGAINST
TROY BAILEY AND RICK BUSCH ARE ALSO
PRECLUDED BY THE ELEVENTH AMENDMENT.**

The only mention in Plaintiff's Fourth Amended and Substituted Complaint

(Complaint) that these individual Defendants are being sued in their individual capacities

are paragraphs eleven and twelve wherein it is stated that these Defendants are "...sued

both individually and in his official capacity."  Even where a suit names a state official in

---

[1]While all section 1983 claims against the Iowa State Patrol(ISP) must be
dismissed for the reasons set forth above it should also be noted that Plaintiffs' claims
against ISP under the doctrine of respondeat superior is not available in the context of a
section 1983 action. Crawford v. Davis, 109 F.3d 1281, 1284 (8th Cir. 1997)(other
citations omitted).

4

the official's individual capacity, the "Eleventh Amendment bars a suit against state officials when the state is the real party in interest." Alden v. Maine, 527 U.S. 706, 757 (1999)(internal citations and quotations omitted). Of significance to the present action is that the Court is required to look beyond "the elementary mechanics and captions and pleading" in order to determine whether the suit is properly against the individual or against the state. U.S. ex rel. Gaurdineer & Comito, L.L.P. v. Iowa, 269 F.3d 932, 937 (8th Cir. 2001). To determine whether there is a valid claim against either Bailey or Busch in their individual capacity the Court must determine whether the alleged conduct was outside their official duties. *Id.* This determination is made, in this case, simply by reading Plaintiffs' Complaint. The only allegations relating to whether the conduct of Bailey and Busch was in their official or individual capacity assert that they are acting in their official capacities. See Complaint paragraphs 40, 41, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59. Bailey and Busch must be dismissed from this lawsuit because, "a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office... it is no different than a suit against the state itself." Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

5

**IV    PLAINTIFFS' STATE CONSTITUTIONAL CLAIMS MUST BE DISMISSED ON THE BASIS OF THE ELEVENTH AMENDMENT, AS WELL AS ON THE BASIS THAT THERE IS NO DIRECT CAUSE OF ACTION AVAILABLE TO THE PLAINTIFFS FOR SUCH ALLEGED VIOLATIONS AND EVEN IF THIS COURT COULD CONSIDER SUCH CLAIMS THE PLAINTIFFS HAVE FAILED TO EXHAUST THEIR REMEDIES UNDER IOWA CODE CHAPTER 669, THUS DEPRIVING ANY COURT OF SUBJECT MATTER JURISDICTION.**

Plaintiffs' claims that are based on alleged violations of the Iowa Constitution fail for a multitude of reasons. First, a state actor's Eleventh Amendment Immunity can only be forfeited as to conduct that is violative of the United States Constitution; not a state's constitution. See Alliance of Insurers v. Cuomo, 854 F.2d 591, 604 (2nd Cir. 1988). As the Second Circuit noted in the afore-cited Alliance case, "Federal court adjudication of a claim challenging a state official's conduct under state law is therefore not permissible as it would fly squarely in the face of the Eleventh Amendment and the limited nature of the exception for constitutional claims." Id.

Even if this Court were to be able to consider such claims, Plaintiffs would be unable to clear the threshold problem of there being no direct cause of action for alleged violations of the Iowa Constitution. The Iowa Supreme Court has never created or endorsed the Iowa equivalent of a Bivens action which would permit litigants to raise damage claims against state employees directly under the Iowa Constitution. Likewise there is no state equivalent to 42 U.S.C. section 1983. In fact, the Iowa Supreme Court

6

has rejected such direct damage claims based upon the Iowa Constitution. See Cunha v. City of Algona, 334 N.W.2d 591, 594-95 (Iowa 1983). In the Cunha case, the Iowa Supreme Court upheld the Defendant's Motion to Dismiss, refusing to permit Cunha to pursue direct damage claims under either the Iowa or United States Constitutions. Cunha, 334 N.W.2d at 595.

Further yet, even if there were some direct cause of action available to the Plaintiffs, such would clearly fall under the definition of a "claim" pursuant to Iowa Code Chapter 669 (Iowa Tort Claims Act). See Iowa Code § 669.2(3). The allegations, contained in the Complaint, against Bailey and Busch would clearly fall within the definition of "claim" under Iowa Code section 669.2(3). Indeed it would be impossible to envision a situation where it is alleged, as in this case, that a state employee could mistreat a person to the extent that their constitutional rights were violated without the state employee committing a "... negligent or wrongful act or omission..." under section 669.2(3). Neither this Court nor a State court would have subject matter jurisdiction over such a "claim" as Plaintiffs have not exhausted their administrative remedies under Chapter 669 nor even alleged that they have done so. See Bloomquist v. Wapello County, 500 N.W.2d 1, 8 (Iowa 1993)(failure to exhaust the claims process deprives district court of subject matter jurisdiction); Lindaman v. Bode, 478 N.W.2d 312, 315-16 (Iowa App. 1991)(district court lacks subject matter jurisdiction where petition fails to allege exhaustion of Tort Claims Act remedies).

7

Thus, Plaintiffs' State constitutional claims must be dismissed.


## V.     QUALIFIED IMMUNITY BARS PLAINTIFFS' FIRST AMENDMENT CLAIMS

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation."  Saucier v. Katz, 533 U.S. 194, 200-201 (2001)(internal citations omitted). The privilege is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Id. at 202.  A defendant is clearly also allowed to make reasonable mistakes and still enjoy the shroud of qualified immunity.  Id. at 205-06.  When a defendant properly asserts a claim of qualified immunity, the plaintiff  has the burden to show that a material fact or question precludes summary judgment.  Yellow v. Pennington County, 225 F. 3d 923, 927 (8th Cir. 2000); Radloff v. City of Oelwein, 284 F. Supp. 2d 1145, 1150 (N.D. Iowa 2003).

The initial inquiry into a qualified immunity claim is whether, "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right.  Id. at 201.  If no constitutional right would have been violated were the allegations established, there is no need for further inquiry.  Id.  If a violation could be made out upon a favorable view of the parties' submissions, the next sequential step is to ask whether the right was clearly established.  Id.  If the right was not

8

clearly established, qualified immunity attaches. The Plaintiffs' claims fail when analyzed in the context of either of the steps determining the availability of qualified immunity, and Plaintiffs' claims must, therefore, be dismissed.

### A. There was no constitutional violation.

A fairly recent decision by the Eighth Circuit Court of Appeals addressing an analogous situation provides substantial guidance in this case. See Frye v. Kansas City Missouri Police Dept., 375 F.3d 785 (8th Cir. 2004). As noted in Frye, "...the Supreme Court has regularly rejected the assertion that people who wish to propagandize protests or views have a constitutional right to do so whenever or however they please." Id. at 790. The "principal inquiry in determining content neutrality, in speech cases in general and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." Id.

The restrictions complained of by Plaintiffs in this case were in no way related to the content of any message they were trying to convey. Any restrictions at issue in this case related only to members of the general public not standing in a secure area that, in this case, also happened to be the entrance to the event. In fact, Plaintiffs and other witnesses clearly state that they were able to walk in these restricted areas, with their signs of protest, and it was not until they stood still in this restricted area that they were approached by law enforcement. The restrictions with respect to standing still in this area

9

were clearly related to security issues as well as maintaining the flow of persons into the event.  The fact that persons authorized to be in the secure area to collect signatures or solicit donations for the Republican Party or to take tickets from those persons entering the event has nothing to do with whether any of the complained of restrictions violated Plaintiffs' First Amendment rights.  Whether or not these other persons agreed or disagreed with the President's policies adds little or nothing to the analysis of this case.  As the Eighth Circuit has previously noted, "a regulation that serves purposes unrelated to the content of expressions is deemed neutral even if it has the incidental effect on some speakers or messages but not others."  Fraternal Order of Police, N.D. State Lodge v. Stenehjem, 431 F.3d 591, 596 (8th Cir. 2005).  There simply is no support for Plaintiffs' assertions that they should have the same rights to stand in a restricted, secure, area as persons assisting with the event or persons specifically authorized to be in that area.

Although it does not appear that Plaintiffs are alleging that they were the only persons told to keep moving, it is significant to note that the record clearly reflects that numerous persons were told by Bailey and Busch to keep moving while in the secure area around the park.  Stated another way, there is no evidence in the record that shows only protesters or people who disagreed with the President's policies were told to keep moving.  In fact, even Ms. Nelson acknowledged that she heard people being told to keep the entranceway to the park open for rally attendees.  Additionally, both Plaintiffs' companion Barb Hannon and Linn County Democratic Chairman Joel Miller stated that

10

they were displaying no outward sign of protest or disagreement and were told to keep moving when they came to a stop in the same general area as Plaintiffs. Both of these persons moved as requested and were not arrested or otherwise interfered with in any way by law enforcement officers.

Further yet, any restrictions or regulations that affected Plaintiffs or others similarly situated need not be the least restrictive or even least intrusive means of doing so. See Ward v. Rock Against Racism, 491 U.S. 781, 798-99 (1989). The restrictions placed on the area surrounding Noelridge Park served several substantial interests. First, securing the area around the park in general and more specifically not allowing persons to stand still in that area served the vital function of protecting the President. See Watts V. United States, 394 U.S. 705, 707 (1969). Additionally, keeping people moving on 42nd Street as well as the entrance to the park off of 42nd Street served the important interest of protecting the public safety. On the day of the rally, 42nd Street was open to neighborhood vehicular traffic and keeping persons moving across the traveled portions of the roadway protected pedestrians and vehicular traffic alike. The same safety rational would apply to the entrance to the park where bus loads of attendees were entering. Finally, keeping people moving avoided congestion and a possible logjam of people in the area of the entryway to the rally. A logjam of people would have made it very difficult to spot people setting up to cause harm to others and also would have made it impossible to quickly evacuate people in the event of an emergency.

11

Numerous persons, including Plaintiffs' friends and acquaintances, moved as requested and had no problems. Indeed, Plaintiffs moved uneventfully throughout the secure area for quite some time with no problems whatsoever until they stopped and refused to keep moving. It is at least a bit ironic that Plaintiffs now complain about restrictions that allowed nearly unfettered access to thousands of people in the secure area around the park subject only to the requirement that you keep moving; a requirement the Plaintiffs were admittedly unwilling to comply with.

It is also significant that there was a designated area for protesters literally directly across the street from where Plaintiffs were standing and ultimately arrested. Both Plaintiffs were aware of the crowds of protesters that had gathered on the south side of 42nd Street. The availability of such a nearby location to freely demonstrate is an acceptable means of providing an avenue for Plaintiffs speech and/or expression. In the afore-cited Frye case, officers were entitled to qualified immunity because, among several reasons, they offered protesters the option of moving a short distance down the road. See Frye, 375 F. 3d at 790.

## VI. EVEN IF PLAINTIFFS COULD SHOW A CONSTITUTIONAL VIOLATION, THEIR CLAIMS MUST STILL BE DISMISSED AS A REASONABLE OFFICER WOULD NOT HAVE BEEN PUT ON NOTICE THAT THEIR CONDUCT WAS CLEARLY UNLAWFUL.

Even if it were assumed, for the sake of argument, that a constitutional violation occurred, Plaintiffs' claims are still subject to summary dismissal. If a constitutional violation were established, the next step in the qualified immunity analysis would be to determine whether any such right was clearly established at the time. Saucier, 533 U.S. at 201. In order to avoid the entry of summary judgment, the Court must find that it would have been clear to a reasonable officer that their conduct was unlawful in the situation that confronted them. Id.; Kuha v. City of Minnetonka, 328 F.3d 427, 437 (8th Cir. 2003).

The Supreme Court has further stated that, "[if] the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier, 533 U.S. at 202; citing Malley v. Briggs, 475 U.S. 335, 341 (1986)(qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

There is no requirement that law enforcement officers engage in complete and complicated constitutional analysis prior to taking action. Even if there were some mistake in the officers' interpretation of federal or state law, the qualified immunity doctrine allows officers to make reasonable errors so that they do not always have to "err

13

on the side of caution." Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996).

Especially with respect to constitutional issues, the Eighth Circuit has noted,

> Law enforcement officers should not, on pain of having to pay damages out of their own pockets, be required to anticipate how appellate judges will apply maxims of constitutional adjudication about which even those judges sometimes disagree [-] it would be unworkable for the officers to await interpretations from federal appellate judges rendered long after the orders were executed to learn whether they will be civilly liable for performing an assigned duty.

Id. at 296, citing McCurry v. Tesch, 824 F.2d 638, 642 (8th Cir. 1987).

A reasonable officer in the situation faced by Troopers Bailey and Busch would have easily concluded that the park had been rented and that restrictions relating to the secure area around the park were in no way discriminatory or involved any disagreement with any message by any particular person or group of persons. In fact, as noted previously, people who were clearly protesting President Bush and/or his administration's policies were allowed to, and in fact were, protesting literally across the street from where Plaintiffs were standing. The actions of Troopers Busch and Bailey were not violative of any First Amendment issues nor were their actions unreasonable thereby allowing the protection of qualified immunity.

14

## VII. TROOPERS BAILEY AND BUSCH ARE ALSO ENTITLED TO QUALIFIED IMMUNITY WITH RESPECT TO PLAINTIFFS' FOURTH AMENDMENT CLAIMS.

For the same legal reasons Plaintiffs First Amendment claims fail, so do their claims based on alleged violations of the Fourth Amendment.

### A. There was arguable probable cause for Troopers Bailey and Busch to arrest Plaintiffs.

With respect to Plaintiffs' Fourth Amendment claims, "the issue for [qualified] immunity purposes is not probable cause in fact but arguable probable cause." Frye, 375 F.3d at 792. In this case, Troopers had probable cause in fact but even if we were to again assume, for the sake of argument, they did not, they clearly had arguable probable cause to believe Plaintiffs had violated the law. The law enforcement people involved in this event all attended a briefing prior to the event getting underway. At that briefing the area of the park and surrounding area that would constitute the secure area was discussed. Further, law enforcement officers, including Bailey and Busch, were informed that the park had been "rented" for the day and was to be considered private property. The officers were further aware, from the briefing as well as their prior training, of the importance of keeping people moving with the secure area around the entrance to the event. Bailey and Busch were also aware that at least part of 42nd Street would remain accessible to residents of the area and that the area of 42nd Street closer to the event

15

entrance was lined with heavy trucks and construction equipment to provide a barrier in the immediate vicinity of the entranceway.

Being in possession of this and other information, Bailey and Busch then encountered Plaintiffs.  Despite being directed to keep moving, both Plaintiffs refused to do so and instead attempted to debate the issue with Bailey and Busch as well as the Secret Service and other security personnel in the area.  McCabe's response to orders to move was to step off of the sidewalk just a few feet to the grassy parking area between 42nd Street  and then refuse to move further.  Nelson's response was to, at most, step off of the curb onto 42nd Street and refuse to move further.  The Plaintiffs were arrested for criminal trespass.  There was probable cause to arrest them for this offense as well as several other offenses.

Whether probable cause exists depends upon the reasonable conclusions to be drawn from the facts known to the arresting officer at the time of the arrest.  Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  There is probable cause, and the arrest is lawful, "if there was probable cause to believe [the arrestee] had violated any applicable statute, even one not contemplated by the officers at the moment of arrest."  Lawyer v. City of Council Bluffs, 361 F.3d 1099, 1106 (8th Cir. 2004).  Further, a law enforcement officer is protected by qualified immunity even if there is no actual probable cause, "if, in light of clearly established law and the information known to the officers, a reasonable officer could have believed that the arrests were supported by probable cause."  Peterson v. Citu

16

of Plymouth, 60 F.3d 469, 473-74 (8th Cir. 1995).  It is well settled, "...that law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity."  Johnson v. Schneiderheinz, 102 F.3d 340, 341 (8th Cir. 1996).  Troopers Bailey and Busch had actual and/or arguable probable cause to arrest the Plaintiffs under, at the very least, the following statutes.

Criminal Trespass - Iowa Code section 719.7 states, "The term 'property' shall include any land, dwelling, building, conveyance, vehicle, or other temporary or permanent structure whether *publicly* or privately owned." (Emphasis added).  Section 716.7(b) provides:

> 2.  The term "*trespass*" shall mean one or more of the following acts: ...
>
> b.  Entering or remaining upon or in property without justification after being notified or requested to abstain from entering or to remove or vacate therefrom by the owner, lessee, or person in lawful possession, or the agent or employee of the owner, lessee, or person in lawful possession, or by any peace officer, magistrate, or public employee whose duty it is to supervise the use or maintenance of the property.

Bailey and Busch were told, at a pre-event briefing, that the park was rented and was to be treated as private property.  Further yet, they were clearly a "peace officer" whose duty it was to "supervise the use" of the park and surrounding area.  Under the language of the afore-cited statute, Bailey and Busch had actual and/or arguable probable cause to believe the Plaintiffs had committed the offense of criminal trespass.

17

Plaintiffs attempt to refute the existence of probable cause by citing to Iowa Code section 716.7(4) which provides, "The term "trespass" does not mean the entering upon the right-of-way of a public road or highway." The Plaintiffs have claimed that because they were on the area between the sidewalk and the street commonly referred to as the "parking" or were in 42nd street itself that they could not have committed the act of criminal trespass. First, while the application of that Code section may ultimately have an effect on the final outcome of the charges, it has little to do with whether the officers on the scene who were in charge of securing the area for the President's visit on property they were informed was to be treated as private property had arguable probable cause to believe a criminal offense had been committed. As noted previously, even if there were some mistake in the officers' interpretation of the law, the qualified immunity doctrine allows officers to make reasonable errors so that they do not always have to "err on the side of caution." Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir. 1996). Because the Plaintiffs' refusal to comply with requests to move were not followed and that behavior was interfering with the duties the officers were immediately responsible for, they would not be required to engage in specific statutory interpretation of the exceptions to the statute prior to placing Plaintiffs under arrest. Even if that were not the case, Plaintiff's behavior gave rise to actual and/or arguable probable cause to arrest them for another criminal offense to wit, Disorderly Conduct.

18

*Disorderly Conduct*- Iowa Code section 723.4 provides, in relevant part:

> A person commits a simple misdemeanor when the person
> does any of the following: . . .

> 7.  Without authority or justification, the person obstructs any
> street, sidewalk, highway, or other public way, with the intent
> to prevent or hinder its lawful use by others.

Plaintiff Nelson has testified that she heard people being told to keep the entranceway clear for rally attendees.  Plaintiff Nelson also alleges she was standing in 42nd Street when she was arrested.  Plaintiff McCabe has testified that she was standing on the sidewalk adjacent to the park when she was first asked to move. Neither Plaintiff has presented evidence that they were authorized to stand in this secure area.  Both Plaintiffs, as well as other witnesses, acknowledge that Plaintiffs were asked to move several times. Plaintiffs' refusal to comply with those orders to move from the sidewalk, park entrance way or 42nd Street support at least arguable probable cause to believe a violation of Iowa Code section 723.4(7) had occurred.

*Interference with Official Acts*- Section 719.1(1) of the Iowa Code provides that "[a] person who knowingly resists or obstructs anyone known by the person to be a peace officer ... in the performance of any act which is within the scope of the lawful duty or authority of that officer ... commits a simple misdemeanor."  The purpose of this statute is "to enable officers to execute their peace-keeping duties calmly, efficiently, and without hindrance."  State v. Buchanan, 549 N.W.2d 291, 294 (Iowa 1996).  The "key

19

question" under section 719.1 is "whether the officer's actions were hindered." Lawyer, 361 F.3d 1099, 1107 (8th Cir. 2004).  A person can "resist" an officer without using any physical force, and the broader term "obstruct" encompasses any action that "put[s] obstacles in

the paths of officers completing their duties." (quoting State v. Hauan, 361 N.W.2d 336, 339 (Iowa Ct. App. 1984)).

The Plaintiffs' conduct established probable cause to arrest them under section 719.1.  Both Plaintiffs were approached by law enforcement officers, including Bailey and Busch, and directed multiple times to move along.  Instead of turning and walking away, the Plaintiffs questioned and disputed these instructions.  Every law enforcement officer who has testified about the Plaintiffs' conduct during this interaction has uniformly concluded that the Plaintiffs were not complying with law enforcement instructions.  And even if the Plaintiffs had begun backing away, they concede they did so only as they were continuing to debate and question the officers' instructions.  The Plaintiffs' failure to comply promptly and completely was by itself sufficient to establish probable cause, for an arrestee's cessation of criminal activity does not vitiate probable cause to arrest for a crime she had already been observed committing, see Devenpeck, 543 U.S. at 152 (explaining that an arrest is reasonable if an officer has "probable cause to believe that a criminal offense has been or is being committed")  Moreover, the Plaintiffs failure to comply immediately with the officers' simple and repeated

instructions hindered those officers' performance of their duty to enforce lawful security restrictions and unnecessarily distracted them from their other protective functions. Therefore, probable cause supported the Plaintiffs' arrests for interference with official acts.

Even if no actual probable cause supported the arrest, a reasonable officer in the individual Defendants' shoes could have concluded that probable cause did exist. First, given the explicitly recognized "lack of judicial guidance" on section 719.1, Lawyer, 361 F.3d at 1108, Bailey and Busch could readily have concluded that a wide range of behavior, including the Plaintiffs' conduct, fell within that statute. Because Bailey and Busch could reasonably have believed that probable cause supported the Plaintiffs' arrests, they are entitled to qualified immunity.

*Obedience to peace officers*- To the extent either Plaintiff were to claim that they remained on the traveled portion of 42nd Street and that this would have been lawful ignores Iowa Code section 321.229. This Code section provides, "No person shall willfully fail or refuse to comply with any lawful order or direction of any peace officer invested by law with authority to direct, control or regulate traffic." There is no question that Bailey and Busch, as well as other law enforcement personnel, were responsible for, among other things, assuring the safe flow of pedestrian and vehicular traffic in and around the rally event. Plaintiffs standing around the entranceway to the event or

21

standing in 42nd Street itself provides actual and arguable probable cause for a violation of section 321.229.

## VIII. QUALIFIED IMMUNITY BARS THE PLAINTIFFS' SEARCH-RELATED FOURTH AMENDMENT CLAIMS.

Bailey and Busch are entitled to qualified immunity from the Plaintiffs' claim that they were improperly searched because neither Bailey nor Busch searched the Plaintiffs nor caused the Plaintiffs to be searched. See Mayorga 442 F.3d 1128; Wilson, 441 F.3d at 591-92. The record is undisputed that neither Bailey or Busch participated in or authorized any search of the Plaintiffs. The record is equally clear that any strip search that occurred would not have been foreseeable to Bailey or Busch. Neither Busch or Bailey have any involvement with the Linn County Jail or knowledge of jail practices. Moreover, the policy of the Linn County Jail was to strip search only those inmates arrested for serious misdemeanors or higher-level offenses and those inmates suspected of hiding weapons or contraband. The Plaintiffs were arrested for simple misdemeanor trespass and it is undisputed that there was no evidence that they were carrying weapons or contraband. It is further undisputed that neither Bailey or Busch indicated in any way to any person that they believed Plaintiffs to be carrying weapons or contraband. In fact, documents from Linn County Jail staff indicate that if any strip search of the Plaintiffs occurred, such a search resulted from a misinterpretation of the charges against the

22

Plaintiffs.  App. at 248-49.  Because the undisputed record establishes that neither Bailey

nor Busch could have caused or have been directly responsible for any strip search that

occurred, the individual federal defendants are entitled to qualified immunity from suit on

the Plaintiffs' search-related Fourth Amendment claims.  The Court is also referred to the

Brief filed with the State Defendants' Resistance to Plaintiffs' Motion for Judgment brief

where the issue of the requisite causal connection is more fully developed in response to

Plaintiffs' motion for summary judgment.


## IX.    QUALIFIED IMMUNITY BARS THE PLAINTIFFS' EQUAL PROTECTION CLAIMS.

Bailey and Busch also did not violate the Plaintiffs' clearly established right to

equal protection because they did not treat the Plaintiffs differently from others similarly

situated.  The "threshold" hurdle in bringing any equal protection claim is the Plaintiff's

burden of "establish[ing] that some government action caused her to be treated

differently from others similarly situated."  Gilmore v. County of Douglas, 406 F.3d 935,

937 (8th Cir. 2005).  "[D]ifferent treatment of dissimilarly situated persons does not

violate the equal protection clause."  Anderson v. Cass County, Mo., 367 F.3d 741, 747-

48 (8th Cir. 2004).

Although the Plaintiffs claim they were treated differently from other people near

the rally entrance, the Plaintiffs were not similarly situated to those people.  Cf. Hyland v.

Metro. Airport Comm'n, 884 F. Supp. 334, 338 (D. Minn. 1995) (granting defendants

23

summary judgment where plaintiffs' "bald assertion that they ...[were] similarly-situated" to other carriers serving airport was "simply not accurate"). As discussed in connection with the Plaintiffs' First Amendment claims, the Plaintiffs were in an area subject to security restrictions and were therefore eventually arrested and removed from the area. By contrast, others near the bus entrance were assisting with the event itself or otherwise complying with security restrictions. In short, the Plaintiffs were not similarly situated to other individuals in and around the bus entrance, and they therefore cannot show a violation of their equal protection rights, much less their clearly established equal protection rights. See Murphy v. Mo. Dep't of Corr., 372 F.3d 979, 984-85 (8th Cir. 2004)(affirming summary judgment because plaintiff inmate failed to show he was similarly situated to other inmates whose religious practices did not raise comparable security concerns); *Prince v. Endell*, 78 F.3d 397 (8th Cir. 1996)(affirming qualified immunity for prison officials against equal protection claim by male inmates because security concerns at male and female institutions differed). Because the Plaintiffs were not treated differently from others similarly situated, Bailey and Busch are entitled to summary judgment on the Plaintiffs' Equal Protection claims as well.

X.     QUALIFIED IMMUNITY BARS THE
        PLAINTIFFS' CLAIMS UNDER 42 U.S.C.
        § 1985(3).

Finally, the Plaintiffs assert a claim under § 1985(3) based on an alleged conspiracy to deprive the Plaintiffs of their constitutional rights because of their status as war protesters. *See* 4th Am. Compl. ¶¶ 60-61. Only the support and advocacy clause of § 1985(3) is now relevant to this suit. See McCabe v. Macaulay, 450 F. Supp. 2d at 937, 943-48 (dismissing claim under equal protection component of § 1985(3)) and section I of this brief. That clause forbids:

> Two or more persons conspir[ing] to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President ... or to injure any citizen in person or property on account of such support or advocacy.

§ 1985(3); see Federer, v. Gephardt, 363 F.3d 754, 760 n. 5 (8th Cir. 2004). Even assuming that a purported conspiracy directed at war protesters could be characterized as a conspiracy directed at the "support of advocacy" of presidential electors, Bailey and Busch would still be entitled to qualified immunity. The support and advocacy clause protects only the right "to case a ballot and [to] have it honestly counted" and those rights already protected by the First Amendment. Gill v. Farm Bureau Life Ins. Co. of Mo., 906 F.3d 1265, 1270-71 (8th Cir. 1990). In this case, the Plaintiffs have never contended that either Bailey or Busch interfered with the Plaintiffs' casting of a ballot. Moreover, as demonstrated above, the Plaintiffs have no viable First Amendment claim. This Court

25

should, therefore, grant Bailey and Busch summary judgment on the Plaintiffs' claim under the support and advocacy clause of § 1985(3).

Case 1:05-cv-00073-LRR-JSS    Document 136-4    Filed 03/30/07    Page 28 of 30

Respectfully submitted,

THOMAS J. MILLER
IOWA ATTORNEY GENERAL


 /s/   Jeffrey C. Peterzalek
JEFFREY C. PETERZALEK
Deputy Attorney General
Hoover Building, 2nd Floor
1305 E. Walnut
Des Moines, Iowa 50319
Ph:  (515) 281-4213
Fax:  (515) 281-7551
jpeterz@ag.state.ia.us
ATTORNEYS FOR DEFENDANTS
IOWA STATE PATROL, TROY BAILEY
and RICK BUSCH

Copy to:

David A. O'Brien                           Todd D. Tripp
3519 Center Point Road NE                  Assistant County Attorney
Cedar Rapids, IA 52406-2008                51 Third Avenue Bridge
                                           Cedar Rapids, IA 52401

Zachary C. Richter
U.S. Department of Justice
Civil Division
P.O. Box 7146
Ben Franklin Station
Washington, D.C. 20044

| Proof of Service |
| --- |
| The undersigned certifies that the foregoing instrument was served upon each of the persons identified as receiving a copy by delivery in the following manner on March 30, 2007 |

9 U.S. Mail            9 FAX
9 Hand Delivery        9 Overnight Courier
9 Federal Express      9 Other
X Electronically
Signature:  /s/ Jeff Peterzalek

27

28