**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

| | |
|---|---|
| ALICE MCCABE and CHRISTINE NELSON, <br><br> Plaintiffs, <br><br> vs. <br><br> BRUCE MACAULAY, <br><br> Defendant. | No. 05-CV-73-LRR <br><br> **ORDER** |

_____

*TABLE OF CONTENTS*

*I.    INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

*II.   RELEVANT PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *A.    Complaint: Original Federal Defendants* . . . . . . . . . . . . . . . . . . . . *2*
    *B.    First Amended Complaint: Basham & Ridge* . . . . . . . . . . . . . . . . . *4*
    *C.    Second Amended Complaint: Special Agents Walsh and Parker* . . . . *5*
    *D.    Third Amended Complaint: Individual Federal Defendants* . . . . . . . *6*
    *E.    Trial Management Order* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
    *F.    Special Agent Macaulay's Second Motion for Summary Judgment* . *10*
    *G.    Special Agent Macaulay's Third Motion for Summary Judgment* . . *12*

*III.  FAILURE TO COMPLY WITH TRIAL MANAGEMENT ORDER* . . . . . . . *13*
    *A.    Trial Management Order* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
    *B.    Failure to Attempt to Make a Showing*
        *of Extraordinary Circumstances* . . . . . . . . . . . . . . . . . . . . . . . *13*
    *C.    Alternative Holding: No Extraordinary Circumstances Present* . . . *16*

*IV.   CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *18*

*I. INTRODUCTION*

The matter before the court is Defendant Bruce Macaulay's Motion for Summary Judgment ("Special Agent Macaulay's Third Motion for Summary Judgment") (docket no. 195).

## II. RELEVANT PROCEDURAL HISTORY

### A. *Complaint: Original Federal Defendants*

On April 20, 2005, Plaintiffs Alice McCabe and Christine Nelson filed a six-count Complaint & Jury Demand ("Complaint") (docket no. 2) against the United States Secret Service ("Secret Service"), John Doe Secret Service Agent No. 1 ("Doe No. 1"), John Doe Secret Service Agent No. 2 ("Doe No. 2"), Jane Doe Secret Service Agent No. 3 ("Doe No. 3") (collectively, "Original Federal Defendants").[1] In the Complaint, Plaintiffs alleged numerous violations of their federal constitutional and statutory rights.[2] Plaintiffs brought their federal constitutional claims under a *Bivens*[3] theory of recovery.

In Count 1, Plaintiffs alleged that the Original Federal Defendants "den[ied] them their freedom of speech guaranteed by the First Amendment to the United States Constitution." Complaint at ¶ 41. Specifically, Plaintiffs alleged that the Original Federal Defendants "had a policy and/or practice of unlawfully and illegally suppressing dissent expressed by individuals openly disagreeing with the policies of the Bush Administration." *Id.* at ¶ 42.

In Count 2, Plaintiffs alleged that the Original Federal Defendants "violated the rights of [Plaintiffs] by prohibiting them from peaceably assembling as guaranteed by the First Amendment to the United States Constitution." *Id.* at ¶ 43. Specifically, Plaintiffs

---

[1] Plaintiffs also sued state and local officials and agencies. The court omits all discussion of state and local defendants in the instant Order.

[2] Plaintiffs have also asserted various state constitutional claims in this action. In a series of orders, the court dismissed all of these claims and, therefore, omits all reference to them in the instant Order.

[3] In *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 395 (1971), the Supreme Court recognized a right under federal common law to recover damages against federal officials for violating certain federal constitutional rights. *Turner v. Holbrook*, 278 F.3d 754, 757 (8th Cir. 2002).

alleged that the Original Federal Defendants "had a policy and/or practice of unlawfully and illegally prohibiting individuals openly disagreeing with the policies of the Bush Administration from peaceably assembling." *Id.* at ¶ 44.

In Count 3, Plaintiffs alleged that the Original Federal Defendants "violated the rights of [Plaintiffs] to be free from unreasonable search and seizure as guaranteed by the Sixth [sic] Amendment to the United States Constitution." *Id.* at ¶ 47. Specifically, Plaintiffs alleged that the Original Federal Defendants "had a policy and/or practice of unlawfully and illegally searching and seizing, without probable cause, individuals expressing dissent with the policies of the Bush Administration." *Id.* at ¶ 48.

In Count 4, Plaintiffs alleged that the Original Federal Defendants "violated the rights of [Plaintiffs] to equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution . . . , by treating them differently than individuals who supported the policies of the Bush Administration." *Id.* at ¶ 51. Specifically, Plaintiffs alleged that the Original Federal Defendants "had a policy and/or practice of unlawfully and illegally targeting those individuals expressing dissent with the policies of the Bush Administration for arrest, imprisonment and strip search." *Id.* at ¶ 52.

In Count 5, Plaintiffs alleged that the Original Federal Defendants "violated the rights of [Plaintiffs] to substantive due process as guaranteed by the Fourteenth Amendment to the United States Constitution." *Id.* at ¶ 55. Specifically, Plaintiffs alleged that the Original Federal Defendants "had a policy and/or practice of unlawfully and illegally denying substantive due process to individuals expressing dissent with the policies of the Bush Administration." *Id.* at ¶ 56.

In Count 6, Plaintiffs alleged that the Original Federal Defendants "conspired to deprive [Plaintiffs] of their civil rights and Constitutional Rights in violation of 42 U.S.C. § 1985(3)." *Id.* at ¶ 59. Specifically, Plaintiffs alleged that the Original Federal Defendants "conspired to deprive [Plaintiffs] of their rights to freedom of speech, freedom

of assembly, freedom from unreasonable search and seizure, equal protection of the laws and substantive due process, based upon [Plaintiffs'] status as protestors of the policies of the Bush Administration, particularly the war in Iraq." *Id.* at ¶ 60.

### B. First Amended Complaint: Basham & Ridge

On July 22, 2005, Plaintiffs conceded the Secret Service was not a proper defendant. Plaintiffs filed an Amended & Substituted Complaint & Jury Demand ("First Amended Complaint") (docket no. 12). The substance of the First Amended Complaint was the same as the substance of the Complaint. The only difference was that Plaintiffs named W. Ralph Basham, former Director of the Secret Service, and Tom Ridge, former Secretary of the Department of Homeland Security, as defendants in lieu of the Secret Service.

On October 24, 2005 and January 6, 2006, respectively, Basham and Ridge filed a Motion to Dismiss (docket no. 19) and a Renewed Motion to Dismiss (docket no. 31) ("Motions to Dismiss").[4] Basham and Ridge argued, *inter alia*, that the court did not have personal jurisdiction over them and, in any event, they were entitled to qualified immunity. Plaintiffs resisted the Motions to Dismiss.

On December 15, 2005, Basham and Ridge filed a Motion to Stay Discovery ("First Motion to Stay Discovery") (docket no. 26) pending resolution of their qualified immunity arguments. Basham and Ridge argued that "[b]ecause [they] ha[d] raised qualified immunity, discovery bearing on them should not proceed until the threshold question of immunity is resolved." First Motion to Stay Discovery (docket no. 26), at 1. Plaintiffs apparently opposed the First Motion to Stay Discovery, *see id.*, but did not file a resistance or pursue any discovery.

---

[4] In the Renewed Motion to Dismiss, Basham and Ridge made the same arguments that they made in the Motion to Dismiss. The only difference was that the Renewed Motion to Dismiss reflected the fact that Plaintiffs filed the Second Amended Complaint. *See infra* Part II.C.

4

On February 16, 2006, the court granted the Motions to Dismiss. The court held that it lacked personal jurisdiction over Basham and Ridge and dismissed them from the instant civil action without prejudice. Order (docket no. 35), at 17. On the same date, the court denied the First Motion to Stay Discovery as moot.

### C. *Second Amended Complaint: Special Agents Walsh and Parker*

On December 22, 2005, Plaintiffs filed a Second Amended & Substituted Complaint & Jury Demand ("Second Amended Complaint") (docket no. 23) with leave of court. The Second Amended Complaint named Secret Service Special Agents Kevin Walsh ("Special Agent Walsh") and Michael Parker ("Special Agent Parker") as defendants in lieu of Doe No. 1 and Doe No. 2.

On February 27, 2006, Special Agents Walsh and Parker filed an Answer (docket no. 38) to the Second Amended Complaint. Special Agents Walsh and Parker denied the substance of Plaintiffs' allegations.

On the same date, Special Agents Walsh and Parker filed a Motion for Summary Judgment ("Walsh-Parker Motion for Summary Judgment") (docket no. 39). Special Agents Walsh and Parker argued that they were entitled to qualified immunity on all of Plaintiffs' federal claims and that Plaintiffs were not entitled to any discovery.

On March 17, 2006, Plaintiffs filed a "Rule 56(f) Affidavit" ("First Rule 56(f) Motion") (docket no. 43). In the First Rule 56(f) Motion, Plaintiffs requested that the court refuse the Walsh-Parker Motion for Summary Judgment, "because the Plaintiffs have not had an opportunity to conduct any discovery in this case . . ." First Rule 56(f) Motion at 1. On March 22, 2006 and April 7, 2006, Plaintiffs resisted the Walsh-Parker Motion for Summary Judgment.

On March 23, 2006, Walsh and Parker filed a Motion to Stay Discovery ("Second Motion to Stay Discovery") (docket no. 48). Special Agents Walsh and Parker reiterated their claim that Plaintiffs were not entitled to any discovery, because they had asserted a

5

qualified immunity defense. On March 27, 2006, Plaintiffs resisted the Second Motion to Stay Discovery. On April 3, 2006, Walsh and Parker resisted the First Rule 56(f) Motion.

On July 17, 2006, the court denied the Walsh-Parker Motion for Summary Judgment, the Second Motion to Stay Discovery and the First Rule 56(f) Motion. Such motions were moot. While such motions were pending before the court, Plaintiffs had obtained leave of court to file a new amended complaint that did not name Walsh as a defendant.[5] *See infra* Part II.D.

### D. Third Amended Complaint: Individual Federal Defendants

On April 7, 2006, Plaintiffs filed a Third Amended & Substituted Complaint & Jury Demand ("Third Amended Complaint") (docket no. 57) with leave of court. The sole purposes of the Third Amended Complaint were to substitute (1) Secret Service Special Agent Bruce Macaulay ("Special Agent Macaulay") as a defendant in lieu of Special Agent Walsh and (2) Secret Service Special Agent Holly Michael ("Special Agent Michael") in lieu of Doe No. 3.

On June 19, 2006, Macaulay, Parker and Michael (collectively, "Individual Federal Defendants") filed an Answer (docket no. 66) to the Third Amended Complaint. On the same date, the Individual Federal Defendants also filed a Motion for Summary Judgment (docket no. 67) ("Special Agent Macaulay's First Motion for Summary Judgment"). The Individual Federal Defendants argued that they were entitled to qualified immunity as to all of Plaintiffs' federal claims.

On June 29, 2006, Plaintiffs filed a Motion to Continue Pursuant to Rule 56(f) ("Second Rule 56(f) Motion") (docket no. 70). Plaintiffs asked the court to refuse Special Agent Macaulay's First Motion for Summary Judgment as premature. Plaintiffs asked the

---

[5] The court did not expressly deny the First Rule 56(f) Motion, because Plaintiffs incorrectly filed it as an affidavit. Clearly, however, denial of the Walsh-Parker Motion for Summary Judgment mooted the First Rule 56(f) Motion.

court for permission to conduct discovery so that they could adequately resist Special Agent Macaulay's First Motion for Summary Judgment. Plaintiffs contended that they had "no opportunity" to conduct discovery in the case. Plaintiffs argued that Special Agent Macaulay's First Motion for Summary Judgment was filed prematurely, *i.e.*, on the same date the Individual Federal Defendants filed their Answer and before the parties exchanged disclosures pursuant to Federal Rule of Civil Procedure 26.

On July 11, 2006, the Individual Federal Defendants filed a Renewed Motion to Stay Discovery (docket no. 71) ("Third Motion to Stay Discovery"), in which they pointed out that Special Agent Macaulay's First Motion for Summary Judgment presented a qualified immunity defense and opined that "[c]ourts must resolve threshold qualified immunity motions before permitting discovery." Third Motion to Stay Discovery (docket no. 71-1), at 2. On the same date, Plaintiffs resisted Special Agent Macaulay's First Motion for Summary Judgment. On July 12, 2006, Plaintiffs resisted the Third Motion to Stay Discovery. On July 17, 2006, the Individual Federal Defendants resisted the Second Rule 56(f) Motion and contended that "no discovery [was] necessary" to resolve their claim of qualified immunity. Resistance . . . to Plaintiffs' [Second] Rule 56(f) Motion (docket no. 76-1), at 1. In the alternative, the Individual Federal Defendants argued that, if [the court] orders that discovery must proceed, it should limit that discovery to those issues necessary to resolve [the] . . . entitlement . . . to qualified immunity." *Id.* at 2.

On September 1, 2006, the court granted in part and denied in part Special Agent Macaulay's First Motion for Summary Judgment, granted in part and denied in part the Second Rule 56(f) Motion and denied as moot the Third Motion to Stay Discovery.

The court first considered the Second Rule 56(f) Motion. With respect to the Second Rule 56(f) Motion, the court held that Plaintiffs had established that some discovery was necessary for them to have a fair opportunity to resist Special Agent

Macaulay's First Motion for Summary Judgment and the mere fact that the Individual Federal Defendants had asserted a qualified immunity defense did not completely eviscerate the Plaintiffs' right to conduct discovery. That said, the court recognized that, "[f]or the defense of qualified immunity to have meaning . . . discovery . . . must be narrowly tailored to only those facts essential to deciding whether the Individual Federal Defendants are entitled to that defense." Order (docket no. 82), at 11 (citing *Crawford-El v. Britton*, 523 U.S. 574, 597 (1998)). The court stated that it "'must exercise its discretion so that officials are not subjected to unnecessary and burdensome discovery.'" *Id.* at 12. "In other words, the court 'should give priority to discovery concerning issues upon the qualified immunity defense, such as the actions that the official[s] actually took, since that defense should be resolved as early as possible.'" *Id.* The court held that Plaintiffs were not entitled to "conduct far-reaching discovery to pursue their theory that a nationwide conspiracy existed within the highest levels of the Secret Service to suppress dissent at President Bush's re-election rallies." *Id.* Rather, the court held that Plaintiffs were "entitled to limited discovery, that is, to know the circumstances surrounding their arrests, insofar as those facts might reveal what information the Individual Federal Defendants possessed at the time each acted." *Id.* (citations omitted). "In other words, only discovery that is 'essential' to resolve [their] qualified immunity defenses [was] permitted." *Id.* at 13 (quoting Fed. R. Civ. P. 56(f)). Accordingly, the court granted the Second Rule 56(f) Motion in part and refused those portions of Special Agent Macaulay's First Motion for Summary Judgment upon which further discovery might have some bearing. The court denied the Second Rule 56(f) Motion as to those "purely legal issues" in Special Agent Macaulay's First Motion for Summary Judgment on which discovery could have no bearing. *Id.* at 13.

The court next considered the merits of those portions of Special Agent Macaulay's First Motion for Summary Judgment that concerned "purely legal issues." Turning to such

"purely legal issues," the court granted in part Special Agent Macaulay's First Motion for Summary Judgment. In relevant part, the court (1) dismissed Count 5, Plaintiffs' substantive due process claims, with prejudice as to the Individual Federal Defendants, because those claims were subsumed as a matter of law within Count 3, Plaintiffs' Fourth Amendment claims and (2) dismissed the portion of Plaintiffs' § 1985(3) claims that alleged that the Individual Federal Defendants violated the equal protection provision of such statute, because § 1985(3) does not provide a remedy against a discriminatory animus directed at a class based on a wholly non-racial political affiliation. With respect to the latter ruling, the court alternatively observed that the Individual Federal Defendants were entitled to qualified immunity, because the law on the issue of such animus was subject to a circuit-split and thus not clearly established.[6] The court denied the remainder of Special Agent Macaulay's First Motion for Summary Judgment with leave to refile on December 1, 2006—after the parties had an opportunity to conduct qualified-immunity discovery.

Finally, the court considered the Third Motion to Stay Discovery. The court denied the Third Motion to Stay Discovery as moot. Plaintiffs had not conducted any discovery while the Third Motion to Stay Discovery was pending and, in any event, were now entitled to limited discovery on the threshold issue of qualified immunity.

### E. Trial Management Order

On September 27, 2006, the court held a Scheduling Conference (docket nos. 90 and 91). Around the same time period, qualified-immunity discovery in this matter began in earnest.[7] Plaintiffs issued written discovery requests and deposed certain state

---

[6] Two Judges of the Eighth Circuit Court of Appeals later cited this decision with approval. *See Kenyon v. Edwards*, 503 F.3d 722, 726 (8th Cir. 2007) (Beam and Riley, JJ., dissenting from denial of petition for rehearing en banc), *cert. denied*, 128 S. Ct. 648 (2007).

[7] *See generally* Joint Motion to Continue Trial and for Extension of Pretrial
(continued…)

defendants, a county defendant and a county official. The Individual Federal Defendants issued written discovery requests and deposed Plaintiffs and two individuals who had submitted affidavits on behalf of Plaintiffs. Although Plaintiffs were entitled to depose Special Agents Macaulay, Parker, Michael and Walsh, Plaintiffs apparently chose not to do so.[8]

On October 6, 2006, the court entered a Scheduling Order and Discovery Plan ("Plan") (docket no. 99). In the Plan, the court set the deadline for the completion of all discovery (i.e., not just qualified immunity discovery) to June 11, 2007. The court set the deadline for dispositive motions to July 13, 2007.

On October 20, 2006, the court entered a Trial Management Order (docket no. 100). In the Trial Management Order, the court ordered: "Each party may file only **one** summary judgment motion. Absent a showing of extraordinary circumstances, the court will only consider the first summary judgment motion filed." Trial Management Order (docket no. 100), at 13. By separate order, the court set trial for the two-week period beginning on December 10, 2007. Order (docket no. 102), at 1.

### F. *Special Agent Macaulay's Second Motion for Summary Judgment*

On January 10, 2007, the Individual Federal Defendants filed a Renewed Motion for Summary Judgment (docket no. 103) ("Special Agent Macaulay's Second Motion for Summary Judgment"). The Individual Federal Defendants asserted that they were entitled to qualified immunity as to all of Plaintiffs' remaining claims based upon the qualified-immunity discovery that the parties had conducted.

On January 22, 2007, the Individual Federal Defendants filed a Motion to Stay

---

[7](…continued)
Deadlines (docket no. 159), at 2.

[8] Consistent with *Crawford-El*, the court had anticipated that Plaintiffs would take a "focused deposition" of these officials. 523 U.S. at 599.

Expert Disclosure Deadlines ("Fourth Motion to Stay Discovery") (docket no. 106). In the Fourth Motion to Stay Discovery, the Individual Federal Defendants asked the court to stay their deadline to disclose expert witnesses. They argued that disclosure of such witnesses was not essential to resolution of the qualified immunity issue. On January 25, 2007, Plaintiffs resisted the Fourth Motion to Stay Discovery. On the same date, the court granted the Fourth Motion to Stay Discovery. The court held that, "as to the Individual Federal Defendants only, the deadline for expert disclosures is stayed pending a ruling on [Special Agent Macaulay's Second Motion for Summary Judgment]." *See* Order (docket no. 108), at 2. The court held that the Individual Federal Defendants "should be protected from the burden, and possibly the expenditure of time and expense, of retaining expert witnesses and preparing expert disclosures prior to the court's ruling on [Special Agent Macaulay's Second Motion for Summary Judgment]." *Id.*

On September 4, 2007, the court granted in part and denied in part Special Agent Macaulay's Second Motion for Summary Judgment. The court (1) dismissed Special Agents Parker and Michael from the lawsuit; (2) held that Special Agent Macaulay was not entitled to qualified immunity as to Plaintiffs' First Amendment claims and their seizure-related Fourth Amendment claims; (3) held that Special Agent Macaulay was entitled to qualified immunity as to Plaintiffs' search-related Fourth Amendment claims and dismissed such claims as to Macaulay; (4) dismissed Plaintiffs' Equal Protection claims as to Special Agent Macaulay; and (5) declined to dismiss Plaintiffs' § 1985(3) "support or advocacy" claims as to Special Agent Macaulay. *See* Order (docket no. 152), at 45-46.

On September 20, 2007, Plaintiffs and Special Agent Macaulay filed a Joint Motion to Continue Trial and for Extension of Pretrial Deadlines ("Joint Motion") (docket no. 159). The parties pointed out that, although they were now free to conduct wide-ranging discovery not limited to the issue of qualified immunity, the discovery and dispositive motions deadlines had passed. In addition, the expert witness discovery was stayed. The

parties asked the court to continue these deadlines, as well as the impending December of 2007 trial date. The parties alerted the court that "Special Agent Macaulay may submit a dispositive motion at the close of all discovery . . . " Joint Motion (docket no. 159), at 3.

On September 27, 2007, a United States Magistrate Judge (1) continued the trial to the two-week period beginning May 19, 2008; (2) lifted the stay on expert witness discovery; (3) ordered that all discovery should be completed no later than January 18, 2008; and (5) ordered that "[a]dditional dispositive motions, if any, shall be filed not later than February 19, 2008." Order (docket no. 160), at 2. Further, the United States Magistrate Judge ordered: "Except as expressly modified by this Order, the parties shall strictly comply with the Trial Management Order (docket number 100) filed by Chief Judge Linda R. Reade on October 20, 2006." *Id*.

### G. *Special Agent Macaulay's Third Motion for Summary Judgment*

On February 19, 2008, Special Agent Macaulay filed his Third Motion for Summary Judgment. Once again, Special Agent Macaulay seeks dismissal of the remaining claims against him in this case on grounds of qualified immunity. On March 13, 2008, Plaintiffs filed a Resistance. On March 25, 2008, Special Agent Macaulay filed a Reply.

On April 1, 2008, the court held a hearing on Special Agent Macaulay's Third Motion for Summary Judgment. Attorney David A. O'Brien represented Plaintiffs. Attorneys Zachary C. Richter and Megan L. Rose represented Macaulay. The Motion is fully submitted and ready for decision.

## III. FAILURE TO COMPLY WITH TRIAL MANAGEMENT ORDER

### A. *Trial Management Order*

As indicated in Part II.E *supra*, the court's Trial Management Order limited each party to one summary judgment motion "[a]bsent a showing of extraordinary

12

circumstances." This one-summary-judgment-motion-per-party provision is designed to conserve scarce judicial resources, prevent repetitive motions and forestall potential abuse of Federal Rule of Civil Procedure 56. *See, e.g.*, *Knox v. Sw. Airlines*, 124 F.3d 1103, 1106 (9th Cir. 1997) ("Courts can prevent potential abuse from defendant officials by establishing summary procedures to weed out frivolous or simply repetitive motions."). District courts are afforded wide discretion to permit or restrict successive motions for summary judgment. *See, e.g., Mason v. Univ. & Cmty. Coll. Sys. of Nev.*, No. 06-17238, 2008 WL 215395, *2 (9th Cir. Jan. 25, 2008) ("A district court generally has discretion to entertain successive motions for summary judgment."); *Sira v. Morton*, 380 F.3d 57, 68 (2d Cir. 2004) ("[D]istrict courts enjoy considerable discretion in entertaining successive dispositive motions."); *Enlow v. Tishomongo County, Miss.*, 962 F.2d 501, 507 (5th Cir. 1992) (same).

### B. *Failure to Attempt to Make a Showing of Extraordinary Circumstances*

Special Agent Macaulay's Second Motion for Summary Judgment counted against the one-summary-judgment-motion-per-party provision of the Trial Management Order.[9] In order to comply with the Trial Management Order, therefore, Special Agent Macaulay was required to make "a showing of extraordinary circumstances" when filing any further motions for summary judgment.

Nowhere in Special Agent Macaulay's Third Motion for Summary Judgment does Special Agent Macaulay attempt to make "a showing of extraordinary circumstances" permitting him to file another motion for summary judgment. At most, Special Agent Macaulay asserts in a footnote that Supreme Court precedent permits him to "move for summary judgment after the close of limited qualified immunity discovery and after all discovery is complete." Brief in Support of Special Agent Macaulay's Third Motion for

---

[9] Special Agent Macaulay's First Motion for Summary Judgment preceded the filing of the Trial Management Order.

Summary Judgment (docket no. 196-2), at 6 n.5 (citing *Crawford-El v. Britton*, 523 U.S. 574, 599-600 (1998) and *Behrens v. Pelletier*, 516 U.S. 299, 306-07 (1996)). Even assuming Special Agent Macaulay is correct that a defendant-official may repeatedly move for summary judgment on the issue of qualified immunity as discovery progresses in a case,[10] it is settled that motions seeking summary judgment on qualified immunity grounds are not exempt from a district court's trial management orders. While law enforcement officers are permitted to raise the defense of qualified immunity repeatedly throughout a litigation, they are not permitted to ignore a court's trial management orders. *See, e.g., Torres v. Puerto Rico*, 485 F.3d 5, 10 (1st Cir. 2007) (holding that the district court did not abuse its discretion in denying defendants' dispositive motion, which asserted a qualified immunity defense, where such defendants ignored the court's trial management order). Just like the defendants in *Torres*, Special Agent Macaulay "did not deign to seek leave of court before filing a motion that clearly violated [the Trial Management Order]."

---

[10] The cited Supreme Court cases do not directly bear out Special Agent Macaulay's assertion. In the cited pages from *Crawford-El*, the Supreme Court reiterated the familiar principle, which the court followed in this case, that a district court judge "should give priority to discovery concerning issues that bear upon the qualified immunity defense, such as the actions that the official actually took, since that defense should be resolved as early as possible." 523 U.S. at 600. By its terms, however, *Crawford-El* appeared to assume that issue of qualified immunity would be *resolved* for purposes of the summary judgment stage after the court ruled on a motion for partial summary judgment. *Id*. at 599.

In the cited pages from *Behrens*, the Supreme Court simply held that defendants are entitled to raise the defense of qualified immunity at multiple stages of a case and that a second appeal under the collateral order doctrine may be permissible when a district court denies the defendant-official qualified immunity at the motion-to-dismiss and summary-judgment stages of the case. *Behrens* rested upon the principle that "an order rejecting the defense of qualified immunity at *either* the dismissal stage *or* the summary judgment stage is a 'final' judgment . . . " *Id*. at 307 (emphasis in original). The Supreme Court stressed the conceptually distinct procedural postures of a case at the two stages. *See id*. at 311 (referencing the two "stages" and stating that jurisdiction on appeal depends on "the category of order appealed from").

*Id.* Special Agent Macaulay is not entitled to a second bite of the summary judgment apple as a matter of course, simply because he has invoked a qualified-immunity defense.

> Although state entities and public officials enjoy special protection from the vagaries of civil litigation, this protection is not unlimited. Because immunity defenses may be raised at several different stages of a case, the potential for abuse is substantial. For that reason, the right to assert an immunity defense must be balanced with the district court's obligation to ensure the "just, speedy, and inexpensive" resolution of cases. Fed. R. Civ. P. 1. With these considerations in mind, we have recognized that district courts may be justified in rebuffing pretrial attempts to assert immunity defenses if those attempts are not undertaken with a reasonable degree of diligence. *See Guzmán-Rivera*[ *v. Rivera-Cruz*], 98 F.3d [664,] 668 [(1st Cir. 1996)]; *see also Ungar v. PLO*, 402 F. 3d 274, 293 (1st Cir. 2005).
>
> * * *
>
> Although we recognize the importance of defendants' rights to assert immunity defenses before trial, those rights are not sacrosanct. District courts have wide discretion to set reasonable deadlines for asserting such defenses, and they may impose condign sanctions on parties who do not comply. The sanction imposed here—effectively, disregard of a belated motion—was not an abuse of discretion. We therefore uphold the district court's order. The defendants, of course, remain free to assert their immunity defenses at trial.

*Torres*, 485 F.3d at 10, 11.

The court recognizes that a United States Magistrate Judge continued the dispositive motion deadline after the court filed its Order (docket no. 162). Further, Special Agent Macaulay alerted the court to the possibility that he might submit a dispositive motion at the close of all discovery. At no time, however, did the court alter its Trial Management Order. Indeed, the Magistrate Judge specifically reminded the parties that they were required to "strictly comply with the Trial Management Order (docket number 100) filed

15

by Chief Judge Linda R. Reade on October 20, 2006." Order (docket no. 160), at 2. The directive of the Trial Management Order to make a showing of extraordinary circumstances remained crystal clear.

Accordingly, Special Agent Macaulay's Third Motion for Summary Judgment directly contravenes this court's Trial Management Order and shall be denied on that basis. As a consequence, the court does not rule on the merits of Special Agent Macaulay's Third Motion for Summary Judgment.

### C. *Alternative Holding: No Extraordinary Circumstances Present*

Even if Special Agent Macaulay had attempted to comply with the Trial Management Order, the court would nonetheless find that "extraordinary circumstances" did not exist for the filing of Special Agent Macaulay's Third Motion for Summary Judgment. The particular circumstances of the Third Motion for Summary Judgment and the lengthy docket for this case do not reveal such "extraordinary circumstances."

In Special Agent Macaulay's Second Motion for Summary Judgment, he asserted that he was entitled to qualified immunity as to all of Plaintiffs' remaining claims based upon the qualified immunity discovery record. On September 4, 2007, the court issued a forty-nine-page Order ("Order") (docket no. 162). In the Order, the court examined Special Agent Macaulay's claims of qualified immunity at considerable length and granted in part and denied in part Special Agent Macaulay's Second Motion for Summary Judgment. The court held that there were genuine issues of material fact that required a trial. Specifically, the particular factual circumstances surrounding Plaintiffs' arrests are hotly disputed and subject to different interpretations depending on whose testimony the jury believes. The fighting issue at trial—scheduled to begin next month—will be whether Plaintiffs or law enforcement officers are more credible witnesses. Special Agent Macaulay's Third Motion for Summary Judgment is replete with citations to the Order

16

(docket no. 152) and largely reads as if it were a belated motion to reconsider the same.[11]

Special Agent Macaulay's Third Motion for Summary Judgment appears to suffer from many of the same defects as Special Agent Macaulay's Second Motion for Summary Judgment.[12] To the extent Special Agent Macaulay's Third Motion for Summary Judgment materially differs from Special Agent Macaulay's Second Motion for Summary Judgment, it largely rests on evidence and arguments that were available to him long ago and not simply now on the eve of trial. For example, Defendants rely heavily on the deposition testimony of various persons who were present in the area of Noelridge Park around the time of the Rally.[13] Although the court carefully limited discovery in this

---

[11] Special Agent Macaulay did not file an interlocutory appeal of the Order under the collateral order doctrine. The court notes that, after the court denied certain state officials' motion for summary judgment, *see* Order (docket no. 162), they also refrained from filing an interlocutory appeal. Presumably, these state officials and Special Agent Macaulay recognized that the adverse rulings in the Order were entirely fact-based rulings that were not subject to immediate appeal. *See, e.g.*, *Krein v. Norris*, 309 F.3d 487, 493 (8th Cir. 2002); *Moore v. Duffy*, 255 F3d 543, 545 (8th Cir. 2001).

[12] Again, Special Agent Macaulay implicitly asks the court to disregard Plaintiffs' testimony and draws reasonable inferences in his favor. This the court may not do; the court must view the record in the light most favorable to the nonmoving party and afford it all reasonable inferences. *Baer Gallery, Inc. v. Citizen's Scholarship Found. of Am.*, 450 F.3d 816, 820 (8th Cir. 2006) (citation omitted). For example, Special Agent Macaulay concludes that a court must find that, when he arrived at the Bus Entrance, he believed that Plaintiffs had already disobeyed Special Agent Parker's order to leave the area. The court is not required to draw such a conclusion from the mere facts that Special Agent Parker (1) called for assistance and (2) Special Agent Macaulay responded to the call and saw Plaintiffs standing in a secure zone in front of Special Agent Parker.

[13] Special Agent Macaulay now argues that the court must disregard the testimony of those non-party witnesses who claim they saw Secret Service Special Agents harassing protestors outside the Rally, because such witnesses were unable to testify that they saw *Special Agent Macaulay* harassing *Plaintiffs*. Of course, evidence that unidentified Secret Service Agents were harassing Bush-protesters outside the Rally is circumstantial evidence
(continued...)

17

matter to qualified-immunity discovery to protect Special Agent Macaulay from the burdens of wide-ranging discovery, Special Agent Macaulay was free to conduct such depositions before filing his Second Motion for Summary Judgment. Special Agent Macaulay's Third Motion for Summary Judgment is in effect simply a motion to reconsider the Order (docket no. 152). Special Agent Macaulay's first bite at the summary judgment apple on the issue of qualified immunity was a full, fair and juicy one.[14]

Accordingly, even if Special Agent Macaulay had attempted to comply with the Trial Management Order, the court would nonetheless find that "extraordinary circumstances" did not exist. Again, the court does not rule on the merits of Special Agent Macaulay's Third Motion for Summary Judgment.

## IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Special Agent Macaulay's Third Motion for Summary Judgment (docket no. 195) is **DENIED**. Special Agent Macaulay should

---

[13](…continued)
that Special Agent Macaulay was harassing and discriminating against Plaintiffs outside the Rally. Contrary to Special Agent Macaulay's argument, such evidence does not amount to an improper attempt to "tar" Macaulay with the alleged misconduct of his fellow Secret Service Special Agents. At trial, the court shall instruct the jury that Special Agent Macaulay is only liable for his own conduct. *See, e.g., Grayson v. Ross*, 454 F.3d 802, 809-10 (8th Cir. 2006).

[14] The court does not hold that a defendant-official (even one who, like Special Agent Macaulay, has repeatedly insisted that *no* discovery was necessary) asserting qualified immunity could never make a showing of extraordinary circumstances. A defendant-official may assert qualified immunity throughout a litigation, and qualified immunity cases often present such extraordinary circumstances, as the defendant-official will be entitled to litigate qualified immunity on a limited discovery record and then litigate any other issues after the completion of full discovery. For example, Special Agent Macaulay could have moved for summary judgment on Plaintiffs' § 1985(3) claim outside of the qualified immunity context, because the evidence of a conspiracy in the summary judgment record is nearly non-existent.

continue to prepare for trial next month. When discussing appellate jurisdiction under similar circumstances, the Seventh Circuit Court of Appeals recently held as follows:

> Once the [district court] judge has conclusively denied a motion to dismiss the complaint or grant summary judgment, the time for appeal begins to run. . . . [A] public official may appeal from an order conclusively denying a motion (based on qualified immunity) seeking summary judgment, whether or not the official has appealed from an order denying a motion to dismiss the complaint, and whether or not the motion for summary judgment rests on new legal or factual arguments. *But once a conclusive resolution has been reached at either stage, a renewed motion for the same relief, or a belated request for reconsideration, does not reopen the time for appeal. Accord, Robbins v. Wilkie*, 433 F.3d 755, 762-63 (10th Cir. 2006); *Vega v. Miller*, 273 F.3d 460, 465-66 (2d Cir. 2001); *Grant v. Pittsburgh*, 98 F.3d 116, 120 (3d Cir. 1996).

*Fairley v. Fermaint*, 482 F.3d 897, 901-02 (7th Cir. 2007) (Easterbrook, J.).

**IT IS SO ORDERED.**

**DATED** this 11th day of April, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA