# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| ALICE MCCABE and CHRISTINE NELSON, | |
| Plaintiffs, | No. 05-CV-73-LRR |
| vs. | **ORDER** |
| W. RALPH BASHAM, TOM RIDGE, UNITED STATES SECRET SERVICE, KEVIN WALSH, MICHAEL PARKER, HOLLY MICHAEL, BRUCE MACAULAY, MICHELLE MAIS and THE UNITED STATES OF AMERICA, | |
| Defendants. | |

_____

## *I. INTRODUCTION*

The matter before the court is Plaintiffs' Motion for Recusal ("Motion") (docket no. 342).

## *II. RELEVANT PRIOR PROCEEDINGS*

On October 16, 2008, Plaintiffs Alice McCabe and Christine Nelson filed the Motion. On October 21, 2008, Defendant Michelle Mais filed a Resistance ("Def. Mais's Resis.") (docket no. 353). On the same date, Defendants W. Ralph Basham, Tom Ridge, United States Secret Service, Kevin Walsh, Michael Parker, Holly Michael, Bruce Macaulay and the United States of America ("the Federal Defendants") filed a Resistance ("Fed. Def.'s Resis.") (docket no. 357). None of the parties requested oral argument, and the court finds that a hearing is unnecessary. The Motion is fully submitted and ready for decision.

## *III. LEGAL STANDARD*

Plaintiffs ask the undersigned to recuse from this case, pursuant to 28 U.S.C.

§ 455(a). In relevant part, § 455(a) states:

> Any . . . judge . . . of the United States shall disqualify [her]self in any proceeding in which [her] impartiality might reasonably be questioned.

28 U.S.C. § 455(a). In other words, "[a] judge must recuse if '[her] impartiality might reasonably be questioned' because of bias or prejudice." *United States v. Burnette*, 518 F.3d 942, 945 (8th Cir. 2008) (quoting 28 U.S.C. § 455)), *cert. denied*, 2008 WL 2364260 (U.S. Oct. 6, 2008) (No. 07-11317).

"Section 455(a) provides an objective standard of reasonableness." *United States v. Martinez*, 446 F.3d 878, 883 (8th Cir. 2006). "The issue is 'whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case.'" *Id.* (quoting *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002) (en banc)). "Because a judge is presumed to be impartial, a party seeking recusal bears the substantial burden of proving otherwise." *Id.* (citing *United States v. Denton*, 434 F.3d 1104, 1111 (8th Cir. 2006)).

### IV. ANALYSIS

#### A. Summary of Argument

##### 1. *Plaintiffs' argument*

Plaintiffs allege that the average person on the street who knows all the relevant facts of this case would question the undersigned's impartiality in the upcoming retrial against Defendant Mais. Plaintiffs' allegation is based entirely upon the undersigned's prior rulings in this case.

Plaintiffs concede, as they must, that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Plaintiffs allege, however, that this is one of those very rare cases in which the district court judge has "display[ed] a deep-seated favoritism or antagonism that would make fair judgment impossible" in the upcoming retrial. *Id.*

2

In support of their allegation of deep-seated favoritism or antagonism, Plaintiffs assert that the undersigned has issued many erroneous rulings in favor of the various defendants. These alleged errors are detailed in the Motion and need not be repeated here. For present purposes, it is sufficient to point out that Plaintiffs stress that the Order ("New Trial Order") (docket no. 318) is particularly misguided. Plaintiffs closely scrutinize the undersigned's reasoning therein. Plaintiffs also criticize the undersigned's (1) speed in ruling on some of the motions in this case;[1] (2) delay in ruling on the Motion for New Trial ("New Trial Motion") (docket no. 284);[2] and (3) decision to schedule the retrial next week and deny Plaintiffs' Motion to Continue (docket no. 335).

Plaintiffs also urge the court to carve out an exception to the *Liteky* standard under the "very limited and unusual circumstance" of this case. Brief in Support of Motion ("Pl.'s Brief") (docket no. 342-2), at 5. "Plaintiffs argue that the rule excluding opinions formed in the course of proceedings as a basis for recusal should not apply where the [c]ourt has thrown out a jury verdict and substituted its own judgment." *Id*. In the New Trial Order, the undersigned granted Defendant Mais's New Trial Motion and conditionally remitted the jury's combined verdicts of $750,000 in favor of Plaintiffs to $75,000. Plaintiffs rejected the remittitur and opted for the upcoming partial retrial on the issue of damages. Plaintiffs appear to argue that a district court judge's decision to order

---

[1] Plaintiffs contend that the court's speed in ruling on motions in this litigation is evidence of bias, insofar as it seems to Plaintiffs as if the court ruled on some of their motions without fully considering them. The truth is that the undersigned read and fully considered Plaintiffs' motions. The advent of electronic filing and email gives the undersigned near-instantaneous access to filings. The undersigned rules on motions as promptly as possible—especially in cases such as this one, which have spawned hundreds upon hundreds of filings and can easily spiral out of control if not closely managed.

[2] Plaintiffs contend that the court purposely "sat" on the New Trial Motion for four months. Brief in Support of Motion (docket no. 342-2), at 11. The truth is that much of the delay in filing the New Trial Order was due to the preparation of the complete trial transcript.

3

such a conditional remittitur requires the judge's recusal under 28 U.S.C. § 455(a).

Plaintiffs contend that a judge's decision to order a remittitur requires recusal, because such decision shows that the judge is biased against the plaintiff, confers upon the judge a personal stake in the outcome of the retrial and predetermines the its outcome. Plaintiffs write:

> The headline in the October 15, 2008, *Cedar Rapids Gazette* says all you need to know about why recusal in this case is necessary—"FORMER TEACHERS FIGHT JUDGE'S RULING."[3] The average person on the street with full knowledge of the case now sees the case, not as Plaintiffs versus Defendant, but as Plaintiffs versus the Judge. The Court now has a stake in the outcome of the case. If the second jury awards damages in excess of the maximum amount allowed by the [New Trial Order], $75,000, the Court's prior decision to throw out the first verdict because no reasonable jury could award such an amount is going to look very suspect. The average person on the street might believe that the Court's evidentiary and other rulings in the re-trial will reflect the Court's desire to have a second jury confirm her analysis of the value of the case. The [court], by virtue of the New Trial Order has "predetermined" the outcome of the re-trial.

Pl.'s Brief at 3 (emphasis in original).

### 2. *Defendant Mais's argument*

Defendant Mais resists the Motion. Defendant Mais baldly concludes that "Plaintiffs offer conclusions, but no evidence, that an average person who knows all the

---

[3] Plaintiffs did not provide the court with an authenticated copy of the newspaper article. In any event, "'a judge considering whether to disqualify [herself] must ignore rumors, innuendoes, and erroneous information published as fact . . . .'" *United States v. Greenough*, 782 F.2d 1556, 1558 (11th Cir. 1986) (per curiam) (quoting *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981)); *accord United States v. Bayless*, 201 F.3d 116, 129 (2d Cir. 2000) ("This circuit has expressly urged caution in allowing media accounts to become the focus of a recusal inquiry[.]"). The truth is that Plaintiffs' "fight" is with Defendant Mais and Linn County's unconstitutional policies, not the undersigned.

relevant facts of this case would consider the [c]ourt biased." Def. Mais's Resis. at 2.

### 3. *Federal Defendants' argument*

The Federal Defendants also resist the Motion. As a threshold matter, the Federal Defendants allege that Plaintiffs filed the Motion in an untimely manner and "for tactical and strategic reasons as opposed to any genuine concern about the impartiality of the Court." Fed. Def.'s Resis. at 4. The Federal Defendants contend that the Motion is an improper attempt to force the court to revisit its prior decisions in this case.

With respect to the merits of the Motion, the Federal Defendants argue that the court must apply the *Liteky* standard. The Federal Defendants contend that Plaintiffs have not presented sufficient evidence to support their argument for recusal under such standard. The Federal Defendants aver that a fully informed, impartial observer would know that the undersigned was far from biased against Plaintiffs in this case. The Federal Defendants point out that, earlier in the case, the undersigned repeatedly ruled against Defendant Macaulay.

## B. Motion

Assuming without deciding that the Motion is timely,[4] the court shall deny the Motion on its merits. The court's prior rulings in this case are not grounds for recusal. As the Supreme Court has recognized, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. The court's rulings

---

[4] The Eighth Circuit Court of Appeals disapproves when a litigant waits for an unfavorable ruling to file a motion to recuse. *Neal v. Wilson*, 112 F.3d 351, 357 n.6 (8th Cir. 1997). "[C]laims under § 455 will not be considered unless timely made." *In re Kan. Pub. Employees Retirement Sys.*, 85 F.3d 1353, 1360 (8th Cir. 1996). Untimely recusal motions that are filed for tactical or other suspect reasons "can and should be denied" on the basis of untimeliness alone. *Id.* Here, Plaintiffs did not file the Motion until after the court (1) granted the New Trial Motion, (2) denied Plaintiffs' Motion to Continue (docket no. 334) and (3) denied Plaintiffs' Motion for Certification for Interlocutory Appeal (docket no. 337).

largely stand for themselves.[5] They find support in both the record and legal authority and, in any event, do not "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id*. Plaintiffs' proper recourse for the undersigned's alleged errors is appeal, not recusal. *Id*.

The New Trial Order is not grounds for recusal, and the court declines to carve out an exception to *Liteky* for cases in which a judgment is remitted and a new trial ordered. An order for conditional remittitur is simply one of the judicial rulings to which the Supreme Court generally referred in *Liteky*. Judges routinely preside over new trials, even when the new trial follows a rejected remittitur. *See, e.g., Dossett v. First State Bank*, 399 F.3d 940 (8th Cir. 2005) (affirming district court's decision not to recuse after grant of new trial, because adverse judicial rulings "'almost never'" are a ground for recusal

---

[5] One matter requires elaboration. Plaintiffs argue that a reasonable observer reading the New Trial Order would find that the undersigned "suggested objections" to Defendant Mais in the retrial. Specifically, Plaintiffs criticize the court for finding (1) Dr. John Banks's testimony at the first trial did not prove causation and (2) Plaintiffs' closing argument was objectionable. With respect to the latter finding, Plaintiffs criticize the court's decision to "t[ake] Defendant Mais's counsel to task for 'inexplicably' not objecting" when counsel for the Federal Defendants did not object to the very same argument. Pl.'s Brief at 12 (quoting New Trial Order at 29).

Plaintiffs' argument fails because these findings were rendered in the ordinary course of ruling on the New Trial Motion and do not "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Defendant Mais has consistently maintained that Dr. Banks' testimony was inadequate evidence of causation. Although Defendant Mais did not object to counsel's closing argument, Defendant Mais asserted generally in the New Trial Motion that the jury's verdict was the product of passion and prejudice; by its very nature, the New Trial Motion required the undersigned to determine whether a miscarriage of justice had occurred. While we all work within the confines of an adversary system, attorneys must try cases within the rules. The court could not ignore counsel's closing argument in light of the arguments presented. Defendant Macaulay's failure to object was a "strategic decision." Fed. Def's Resis. at 4 n.1. Counsel for Defendant Macaulay pitched themselves for battle on the issue of liability.

(quoting *Liteky*, 510 U.S. at 555)); *Lightfoot v. Union Carbide Corp.*, No. 98-7166, 1999 WL 110424, *3 (2d Cir. Mar. 1, 1999) (affirming district court's decision to deny motion to recuse following remittitur), *aff'g* 1997 WL 543076, *1-*3 (S.D.N.Y. Sept. 4, 1997); *Rivera v. Rivera*, 216 F.R.D. 655, 657-58 (D. Kan. 2003) (denying motion to recuse after grant of new trial).

*Lightfoot* is instructive. In *Lightfoot*, as here, a district court judge conditionally remitted a $750,000 jury verdict to $75,000.[6] 1997 WL 543076, *1. The plaintiff rejected the remittitur, exercised his constitutional right to a new trial and filed a motion to recuse. *Id.* The plaintiff argued that the judge's view that the evidence presented in the first trial was insufficient to sustain a $750,000 verdict (or any verdict greater than $75,000) showed an inherent bias against him in any retrial. *Id.* at *2.[7]

The district court judge denied the motion to recuse. *Id.* at *3. The judge cited the familiar principle from *Liteky* that "'opinions formed by the judge on the basis of facts introduced . . . in the course of the current proceedings, or of *prior proceedings*, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Id.* at *2 (quoting and adding

---

[6] The district court originally remitted the award "outright" without affording the plaintiff his constitutional right to reject the remittitur and accept a new trial. *See Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 914-15 (2d Cir. 1997). The Second Circuit Court of Appeals reversed with directions to afford the Plaintiff the option of a new trial, *id.* at 915, and the district court complied, *see Lightfoot*, 1997 WL 543076, *1, *3 (acknowledging the mandate of the Second Circuit Court of Appeals and placing matter on trial calendar). The Second Circuit Court of Appeals did not, however, reverse the severity of the remittitur. *See Lightfoot*, 1999 WL 110424, at *1 ("We did not find any other error, and we did not grant Lightfoot's request for reinstatement of the judgment.").

[7] Unlike the case at bar, the judge in *Lightfoot* spoke with the plaintiff at a pre-trial conference and also "reiterated [his] view (as expressed in the remittitur order) that, based on the evidence presented at plaintiff's first trial, the damages were insufficient to sustain a $750,000 verdict (or any verdict in excess of $75,000)." *Id.* at *2.

7

emphasis to *Liteky*, 510 U.S. at 555). The judge added that "'it is clear that the following . . . will not support a recusal motion: judicial rulings based on evidence presented at trial; judicial comments based on evidence presented at trial; [or] the court's observation regarding the legal sufficiency of evidence presented at trial.'" *Id.* (quoting *Bin-Wahad v. Coughlin*, 853 F. Supp. 680, 686 (S.D.N.Y. 1994)).

The judge then directly addressed the plaintiff's argument his order for remittitur was evidence of an inherent bias against the plaintiff in any retrial. *Id.* The judge wrote:

> [I]t is likely that plaintiff's damages evidence at any retrial will differ from the evidence offered at the first trial. This is almost inevitable, even if the same witnesses are called. While I believe the evidence presented at the first trial did not establish damages of $750,000, such a conclusion does not foreclose the possibility that the damages presented at a retrial will in fact support a jury verdict in excess of $75,000. Such an assessment simply cannot be made at this time and my comments were not intended to convey any prejudgment as to the sufficiency of the evidence plaintiff may present at the retrial. Furthermore, I do not believe that a reasonable person would construe my comments as indicating any such prejudgment on my part.

*Id.* The Second Circuit Court of Appeals later affirmed the district court judge's ruling in all respects. *Lightfoot*, 1999 WL 110424, at *3.

The same analysis applies with equal force here. Contrary to Plaintiffs' allegations, the undersigned does not have a "stake" in the second jury's verdict and has not "predetermined" the outcome of the retrial. Pl.'s Brief at 3. There remains a possibility that, during the retrial, Plaintiffs will present evidence of damages that would support a jury verdict in excess of $75,000—or even in excess of $750,000. The court has not formed any opinion as to the ultimate worth of Plaintiffs' case.[8]

---

[8] *Lightfoot* is instructive for another reason. In the Motion, Plaintiffs stress: "The
(continued…)

Accordingly, the undersigned shall deny the Motion. *See, e.g.*, *Walker v. Bishop*, 408 F.2d 1378, 1382 (8th Cir. 1969) ("There is as much obligation on the part of the judge not to recuse [herself] when there is no occasion for doing so as there is to recuse [herself] when such an occasion exists." (Citations omitted.)); *In re Nat'l Union Fire Ins. Co.*, 839 F.2d 1226, 1229 (7th Cir. 1988) (similar)) (cited with approval in *Sw. Bell Tel. Co. v. FCC*, 153 F.3d 520, 523 (8th Cir. 1998) (Hansen, J., in chambers)).

## V. DISPOSITION

The Motion (docket no. 342) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 23rd day of October, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[8](…continued)
Court not only remitted the first jury's award, but did so by the unheard of amount of NINETY PERCENT." Pl.'s Brief at 5 (emphasis in original). *Lightfoot* proves that a reduction of 90% is not "unheard of." In any event, Plaintiffs cite no authority for their implicit premise that the percentage of the remittitur is the best measure of its reasonableness. Indeed, the Eighth Circuit Court of Appeals has recognized in other contexts that "[p]ercentages are not the only way to evaluate the reasonableness of a reduction, and they can sometimes be unhelpful or even misleading." *See United States v. Jensen*, 493 F.3d 997, 1000 (8th Cir. 2007) (discussing percentages as a measure of the reasonableness of a reduction in the criminal sentencing context), *vacated on other grounds*, 128 S. Ct. 1069 (2008).