# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

ALICE MCCABE and CHRISTINE NELSON,

        Plaintiffs,

vs.

MICHELLE MAIS,

        Defendant.

No. 05-CV-73-LRR

**ORDER**

_____

## *TABLE OF CONTENTS*

I.     *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

II.    *RELEVANT PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . *1*

III.   *LEGAL STANDARD* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*

IV.   *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
      A.    *Consistency of Plaintiff Nelson's Verdict* . . . . . . . . . . . . . . . . . . *5*
      B.    *Jury Deliberations* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *12*
      C.    *Scheduling of Partial Retrial* . . . . . . . . . . . . . . . . . . . . . . . *14*
      D.    *Adequacy of Verdict* . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

V.     *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

## *I. INTRODUCTION*

The matter before the court is "Plaintiffs' Motion for a New Trial" ("Motion") (docket no. 390).

## *II. RELEVANT PRIOR PROCEEDINGS*

In the Fifth Amended & Substituted Complaint (docket no. 165), Plaintiffs Alice McCabe and Christine Nelson asserted claims against Defendant Michelle Mais under 42 U.S.C. § 1983. Specifically, Plaintiffs alleged Defendant conducted illegal strip searches and visual body cavity ("VBC") searches of Plaintiffs while they were detained at the Linn

County Jail, in violation of the Fourth Amendment to the United States Constitution. *Id.*[1]

From May 27, 2008, through June 4, 2008, the court held a jury trial on Plaintiffs' § 1983 claims. Attorneys David A. O'Brien and Matthew J. Reilly represented Plaintiffs Alice McCabe and Christine Nelson. Assistant Linn County Attorney Todd D. Tripp represented Defendant Michelle Mais.

Defendant repeatedly conceded liability to Plaintiffs during this first trial. Accordingly, the court instructed the jury "that Defendant . . . unreasonably searched Plaintiffs . . . by subjecting each of them to a strip search and a [VBC search]." Final Jury Instr. No. 10 (docket no. 273), at 11. The court asked the jury to "decide the amount of damages, if any, that each Plaintiff suffered as a result of these unreasonable searches." *Id.*

On June 4, 2008, the jury returned a verdict in favor of Plaintiffs in the combined amount of $750,000.00. The jury found that, "as a direct result of [Defendant Mais's] decision to conduct a strip search and [VBC search]" of each Plaintiff, Plaintiff McCabe suffered $250,000.00 in damages and Plaintiff Nelson suffered $500,000.00 in damages. Verdict Form 2 (docket no. 275), at 1-2.

On June 10, 2008, Defendant filed a Motion for New Trial ("Defendant's Motion") (docket no. 284), pursuant to Federal Rule of Civil Procedure 59(a). Defendant claimed the jury's verdict was excessive, shocked the conscience and would amount to a miscarriage of justice if allowed to stand. Defendant asked the court to remit the judgment to some lower amount or order a partial new trial on damages.

On October 2, 2008, the court granted Defendant's Motion. The court found the

---

[1] Plaintiffs also sued Defendant Bruce Macaulay in accordance with *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), on the theory that he had illegally arrested Plaintiffs at Noelridge Park in Cedar Rapids, Iowa, because they were protesting President George W. Bush and his policies. The court need not discuss Plaintiffs' claims against Defendant Macaulay.

jury's verdict against Defendant shocked the conscience in light of the evidence presented at the first trial. The court held that to allow the jury's verdict to stand against Defendant would amount to a miscarriage of justice.

The court ordered a conditional remittitur. Specifically, the court afforded Plaintiffs five court days to notify the court in writing whether they wished to accept a remittitur in the amount of $25,000.00 with respect to Plaintiff McCabe and $50,000.00 with respect to Plaintiff Nelson. The court ordered that, if Plaintiffs rejected the remittitur, a partial new trial on the issue of damages would commence on October 27, 2008.

On October 8, 2008, Plaintiffs rejected the remittitur. From October 27, 2008, through October 29, 2008, the court held a partial retrial on the issue of damages. The same attorneys represented the respective parties.

On October 29, 2008, the second jury returned verdicts in favor of Plaintiffs in the combined amount of $55,804.00. The jury found Defendant caused Plaintiff McCabe $10,002.00 in damages and Plaintiff Nelson $45,802.00 in damages.

On November 7, 2008, Plaintiffs filed the Motion, pursuant to Federal Rule of Civil Procedure 59(a)(1)(A).[2] On November 13, 2008, Defendant filed a Resistance (docket no. 393). Plaintiffs did not reply.

Neither party requests oral argument on the Motion, and the court finds oral argument is not appropriate. The Motion is fully submitted and ready for decision.

### III.  LEGAL STANDARD

Rule 59(a) provides: "The court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A). In evaluating a motion for a new trial pursuant to Rule 59(a), "[t]he key

---

[2] Plaintiffs' brief in support of the Motion also cites Federal Rule of Civil Procedure 59(e). The court assumes the reference to Rule 59(e) is a typographical error.

question is whether a new trial should [be] granted to avoid a miscarriage of justice." *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1400 (8th Cir. 1994). A new trial is appropriate when the trial, through a verdict against the weight of the evidence or legal errors at trial, resulted in a miscarriage of justice. *White v. Pence*, 961 F.2d 776, 780 (8th Cir. 1992). However, legal errors must adversely and substantially impact the moving party's substantial rights to warrant relief. Fed. R. Civ. P. 61.

Consistent with the plain language of Rule 59(a), the court may grant a partial new trial solely on the issue of damages. Fed. R. Civ. P. 59(a)(1)(A); *see, e.g., Powell v. TPI Petro., Inc.*, 510 F.3d 818, 824-25 (8th Cir. 2007) (remanding for partial new trial on damages). For example, a partial new trial on the issue of damages is appropriate when the jury's verdict is so grossly inadequate as to shock the conscience or to constitute a plain injustice. *Taylor v. Howe*, 280 F.3d 1210, 1211 (8th Cir. 2002); *First State Bank of Floodwood v. Jubie*, 86 F.3d 755, 759 (8th Cir. 1996). "Each case must be reviewed within the framework of its distinctive facts." *Wilmington v. J.I. Case Co.*, 793 F.2d 909, 922 (8th Cir. 1986) (citing *Hollins v. Powell*, 773 F.2d 191, 197 (8th Cir. 1985)).

"In determining whether or not to grant a new trial, a district judge is not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *King v. Davis*, 980 F.2d 1236, 1237 (8th Cir. 1992) (citing *White*, 961 F.2d at 780). "[T]he 'trial judge may not usurp the function of a jury . . . [which] weighs the evidence and credibility of witnesses.'" *White*, 961 F.2d at 780 (quoting *McGee v. S. Pemiscot Sch. Dist.*, 712 F.2d 339, 344 (8th Cir. 1983)). "Instead, a district judge must carefully weigh and balance the evidence and articulate reasons supporting the judge's view that a miscarriage of justice has occurred." *King*, 980 F.2d at 1237.

"The authority to grant a new trial . . . is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon, Inc.*, 449 U.S.

4

33, 36 (1980). On the issue of damages, the propriety of the amount of a verdict "is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of witnesses and which knows the community and its standards . . . .'" *Wilmington*, 793 F.2d at 922 (quoting *Solomon Dehydrating Co. v. Guyton*, 294 F.2d 439, 447-48 (8th Cir. 1961)). "[T]he assessment of damages is especially within the jury's sound discretion when the jury must determine how to compensate an individual for an injury not easily calculable in economic terms." *Stafford*, 811 F.2d at 475; *see also EEOC v. Convergys Customer Mgmt. Group, Inc.*, 491 F.3d 790, 798 (8th Cir. 2007) (same).

## IV.  ANALYSIS

Plaintiffs present four arguments in support of their request for a third trial. Plaintiffs contend (1) the jury's verdict in favor of Plaintiff Nelson is inconsistent; (2) the jury impermissibly considered liability when determining the amount of Plaintiffs' damages; (3) the court erred in denying Plaintiffs' Motion to Continue (docket no. 334); and (4) the verdict was "so inadequate as to shock the conscious [sic]," Motion at 2. The court considers these four arguments, in turn.

### A.  Consistency of Plaintiff Nelson's Verdict

The jury awarded Plaintiff Nelson $20,000.00 for "[p]ast mental pain and suffering"; $1.00 for "[f]uture mental pain and suffering"; $20,000.00 for "[p]ast loss of full mind"; $1.00 for "[f]uture loss of full mind"; $800.00 for "[p]ast medical expenses"; and $5,000.00 for "[f]uture medical expenses." Verdict Form 2 (docket no. 382), at 1. The jury's awards of $1.00 for future mental pain and suffering and future loss of full mind are nominal damage awards. The court had instructed the jury that, if it found "Plaintiff Nelson suffered damages but that her damages have no monetary value, then [it] must enter the nominal amount of [$1.00]." *Id.*

Plaintiffs contend the jury's verdict in favor of Plaintiff Nelson is internally

5

inconsistent.   Plaintiffs argue:

> The jury in this case found [Plaintiff] Nelson will suffer
> through $5,000.00 of future medical expenses causally related
> to . . . Defendant's unconstitutional conduct, but refused to
> award [Plaintiff] Nelson for the lost future pain and suffering
> and/or loss of future mind that necessarily coexists with the
> need for future medical expenses. The jury's verdict is,
> therefore, inconsistent and a new trial should be ordered.
> Even though the medical expenses will treat the depression,
> that does not mean [Plaintiff] Nelson is cured or that she will
> not suffer pain or loss of the mind in the future.  If [Plaintiff]
> Nelson did not suffer those losses, there would be no reason
> for her to take medication and be treated for depression in the
> future.

Brief in Support of Motion (docket no. 390-2), at 3.  Plaintiffs conclude this alleged

inconsistency entitles both of them to a new trial.[3]

Defendant insists the jury's verdict is consistent.  Defendant responds:

> The jury . . . appropriately . . . awarded to [Plaintiff] Nelson
> an amount that reasonably covered her future related medical
> expenses (drugs and doctor visits) but determined that her
> future pain and suffering and loss of mind was virtually
> non-existent and had no value.  This decision was both
> reasonable and consistent with the testimony the jury
> apparently chose to believe.  Contrary to Plaintiffs' assertion,
> [Plaintiff] Nelson's future medical expenses do not
> "necessarily co-exist" with her claim of future pain and
> suffering of loss of mind.  The fact that her depression is
> completely controlled as long as she stays on her medications,
> gave the jury a reasonable basis for awarding the damages that
> they did.

Brief in Support of Resistance (docket no. 393-2), at 4.

---

[3] Plaintiffs do not argue that the second jury's awards in favor of Plaintiff McCabe
are inconsistent.  Because the court does not find an inconsistency in the second jury's
awards in favor of Plaintiff Nelson, the court need not address whether an inconsistency
would entitle both Plaintiffs to a third trial.

The court may only grant a motion for new trial on grounds of an alleged inconsistency in a verdict "if there [is] no 'principled basis upon which to reconcile the jury's . . . findings." *Top of Iowa Coop. v. Schewe*, 324 F.3d 627, 633 (8th Cir. 2003) (quoting *Bird v. John Chezik Homerun, Inc.*, 152 F.3d 1014, 1017 (8th Cir. 1998)).

> "'[I]t is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them: 'Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way.' *Atl. & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 364 (1962). [A court] must attempt to reconcile the findings, by exegesis if necessary, . . . before [a court is] free to disregard [a] jury's special verdict . . . ."

*Lockard v. Mo. Pac. R.R. Co.*, 984 F.2d 299, 355 (8th Cir. 1990) (quoting *Gallick v. Baltimore & Ohio R.R.*, 372 U.S. 108, 119 (1963)).

The court holds that the jury's verdict is not inconsistent. The jury's various findings as to Plaintiff Nelson's damages are reconcilable in light of the evidence presented at the partial retrial. Indeed, the jury's findings closely track the undisputed expert testimony of Dr. John Banks, M.D. Dr. Banks was Plaintiff Nelson's key witness on the issue of future damages.

Dr. Banks testified that, since April of 2005, he has prescribed a combination of Paxil and Imipramine to treat Plaintiff Nelson's depression. This combination of medication has been highly successful. Plaintiff Nelson's symptoms of depression are "pretty well gone," and she does not experience any side effects from the medication. Tr. at 219. Dr. Banks opined that, so long as Plaintiff Nelson continues to take her medication, her depression will be "asymptomatic" in the future. *Id.* at 227-28. In other words, "[s]o long as [Plaintiff Nelson] maintains the regimen of medication [Dr. Banks] prescribed, she [will] remain[] free of symptoms of depression." *Id.* at 228.

In light of the foregoing testimony, the jury appropriately compensated Plaintiff

Nelson for her future medical expenses yet awarded her only nominal damages for her future mental pain and suffering and future loss of full mind. The jury could have found that medication will eliminate the symptoms of her depression. Put differently, on this facts of this case future medical expenses do not necessarily entail future pain and suffering or future loss of full mind.

Plaintiffs' cited cases are all distinguishable. In each of the four cases, a court found an irreconcilable inconsistency in a jury's verdict, because the jury awarded a plaintiff damages for medical expenses yet failed to award any damages for such plaintiff's *necessarily* corresponding pain and suffering. *Cf. Vansickle v. Compass Marine Inv.*, No. 93-3042, 1993 WL 261070, *1-*2 (5th Cir. July 1, 1993) (per curiam) (holding that "a jury cannot award damages for medical expenses and lost wages without also awarding damages for pain and suffering," where the plaintiff was injured due to the defendant's negligence); *Brooks v. Battleboro Mem'l Hosp.*, 958 F.2d 525, 530 (2d Cir. 1992) ("[T]he jury having found that appellees' negligence resulted in Mrs. Rosploch's not receiving treatment for a deadly infection for approximately two weeks, and that this negligence proximately caused all of her medical expenses, we simply find it irreconcilably inconsistent for the jury to have awarded zero damages for her contemporaneous, undisputed pain and suffering."); *Shewry v. Heuer*, 121 N.W.2d 529, 532 (Iowa 1963) ("We can find no logical ground on which the jury could award plaintiff the cost of medical services made necessary by his pain and suffering and yet allow him nothing for the pain and suffering."); *Neumann v. Serv. Parts Headquarters*, 572 N.W.2d 175, 176-78 (Iowa Ct. App. 1997) (reversing district court's denial of motion for new trial, in which the plaintiff "assert[ed] the jury's verdict was not consistent because she was awarded past medical expenses and past medical expenses but nothing for past pain and suffering and past loss of body function" as a consequence of an automobile accident). All four cases involved more or less uncontested mental pain and suffering that necessarily underpinned

other awards for lost wages or medical expenses. None of these four cases involved undisputed expert testimony, like Dr. Banks's testimony, that a course of treatment would eliminate any future pain and suffering or future loss of full mind. Further, none of the juries in Plaintiffs' cited cases awarded nominal damages; all awarded the plaintiff zero damages. The jury's award of nominal damages in the case at bar shows the second jury's keen recognition of Plaintiff Nelson's latent yet asymptomatic depression.

The case at bar is remarkably similar to *Hoyte v. National R.R. Passenger Corp.*, No. 04 Civ. 5297(GEL), 2006 WL 2053383 (S.D.N.Y. July 24, 2006). In *Hoyte*, an Amtrak™ train rear-ended another passenger train near Penn Station in New York City. 2006 WL 2053383, at *1. A jury awarded the plaintiff, a passenger in the passenger train, $24,000 for past pain and suffering, past lost earnings and future medical expenses. *Id.* The jury did not, however, award him anything for future lost earnings or future pain and suffering. *Id.* The plaintiff moved for a new trial pursuant to Rule 59. *Id.* The plaintiff alleged the jury's failure to award him future medical expenses but nothing for future pain and suffering damages or future lost earnings was irreconcilably inconsistent. *Id.*

The district court denied the plaintiff's motion for new trial. *Id.* at *2-3. The district court reasoned:

> [C]ourts have noted that while it is "unusual" for a jury to award damages for future medical expenses without awarding damages for future pain and suffering, such a verdict does not necessarily require a new trial. *Manes v. Metro-N*[.] *Commuter R.R.*, 801 F. Supp. 954, 961 (D. Conn. 1992); *see also Feathers v. Wal-Mart Stores, Inc.*, 189 F.3d 460, 1999 WL 627613, at *1 (2d Cir. Aug. 5, 1999) (unpublished opinion) (affirming a verdict that awarded damages for future medical expenses and lost wages but not for future pain and suffering, and noting that "the evidence could have led the jury reasonably to conclude that future medical treatment would ultimately control the pain"); *Hinkle v. Waddell*, 945 F.2d 404, 1991 WL 191546, at *2 (6th Cir. Sept. 27, 1991) (unpublished opinion) ("There can be no blanket rule that if a

jury grants future medical expenses they must automatically make an award for pain and suffering related thereto," quoting *Am*[.] *States Ins. v. Audubon Country Club*, 650 S.W.2d 252, 254 (Ky. 1983)); *Litras v. Long Island R.R.*, 02 Civ. 5168(SLT), 2006 WL 1455466, at *10 (E.D.N.Y. May 23, 2006) (holding that "the alleged inconsistency between the awarding of future medical expenses and the failure to award damages for future pain and suffering" could be "readily resolve[d]" and did not require a new trial); *Trinidad v. Am*[.] *Airlines, Inc.*, 93 Civ. 4430(SAS), 1997 WL 79819, at *3 (S.D.N.Y. Feb. 25, 1997) (refusing to "fashion a rule of law which states that damages for future medical expenses absolutely mandate damages for future pain and suffering").

Applying these standards here, it is beyond question that the verdict must stand. Even assuming that the jury's limited award of future medical expenses may properly be described as "inconsistent" with its refusal to award damages for future pain and suffering, the inconsistency is easily reconcilable. The jury could have reasonably concluded, for example, that the injuries actually sustained by plaintiff were likely to require limited treatment . . . , while also concluding that plaintiff would not continue to experience any conscious pain or suffering. A reasonable jury could also have concluded that plaintiff would require continued medical monitoring of his condition for approximately one year, at a cost of $3,000, while also finding that plaintiff had failed to prove, by a preponderance of the evidence, that he would experience any future pain or suffering. Or, the jury might have concluded that any emotional or physical pain suffered by plaintiff could be alleviated completely with $3,000 worth of medical treatment. *See Feathers*, 189 F.3d 460, 1999 WL 627613, at *1; *Litras*, 2006 WL 1455466, at *10; *cf. Ball v. Melsur Corp.*, 161 Vt. 35, 44-45 (1993) ("[T]he jury could have . . . concluded that the amount expended for medicines and treatment would eliminate the pain.").

The instant case is not comparable to *Brooks*, because both the extent of Hoyte's injuries and the degree of his pain and

suffering were vigorously disputed at trial. *Compare Brooks*, 958 F.2d at 530. Nor is this case similar to *Crockett*, where the jury awarded "no money for the future pain that was the necessary precedent to the surgery that the jury found [the plaintiff] required." *Crockett*, 65 F.3d at 278. It is quite evident to this Court that the jury, which was attentive and responsible throughout the trial, simply rejected plaintiff's claim of extensive injury and found that plaintiff was not badly hurt, but that he did suffer a minor injury that caused him discomfort for some period of time. Nothing in that conclusion is inconsistent with a finding that a prudent patient would continue, for a limited time in the future, to obtain follow-up treatment and/or monitoring.

In sum, the alleged inconsistency in the verdict is easily reconcilable and entirely distinguishable from inconsistencies which have warranted new trials in other cases. Plaintiff . . . has thus failed to carry his burden of demonstrating entitlement to a new trial.

2006 WL 2053383, at *2-*3 (footnotes and citation omitted).

The court agrees with *Hoyte* and adopts its analysis in full. To extend Plaintiffs' cited cases to the case at bar would be tantamount to adopting an unwarranted, per se rule that all awards of medical expenses must be accompanied by a non-nominal award of emotional distress. As *Hoyte*, the cases cited therein and the case at bar prove, there can be no such rule. *See Hoyte*, 2006 WL 2053383, at *2-*3 (citations omitted); Am. Jur. Damages § 204 (Online ed. 2008) ("[T]here can be no blanket rule that a grant of future medical expenses must automatically be accompanied by an award of pain and suffering related to the future treatment . . . ."). Far from constituting a miscarriage of justice, the second jury's findings accord with the evidence and demonstrate a keen appreciation of the subtleties of Dr. Banks's testimony.

Accordingly, the court shall deny this first part of the Motion. In so ruling, the court does not foreclose the possibility that there are other rational explanations for the

jury's factual findings.  Matters of causation were especially complex and vigorously disputed at trial.  Plaintiff Nelson's depression pre-existed her strip and VBC searches, and she had multiple other events in her life that might have exacerbated such depression, including a contemporaneous arrest for trespassing, a divorce, problems at work and substantial knee pain.

### B.  Jury Deliberations

Plaintiffs argue that the jury impermissibly considered liability in assessing damages.  Plaintiffs surmise that the jury's two questions to the court during jury deliberations indicate that "[t]he obvious goal of at least one member of the jury was to provide zero damages to Plaintiffs on liability grounds."  Brief in Support of Motion at 3-4.  Plaintiffs opine that the jury's damages awards reflect a compromise between at least one member of the jury who did not believe Defendant was liable to Plaintiffs and other jurors who wished to award Plaintiffs higher amounts.

Defendant maintains there is no evidence of a compromise verdict and Plaintiffs' argument is purely speculative.  Defendant states: "The leap of logic necessary for such a conclusion is breathtaking in its scope, and utterly without foundation beyond Plaintiffs' desperate attempt to impugn the jury's conduct."  Brief in Support of Resistance (docket no. 393-2), at 4.

The jury sent the court two notes during its deliberations.  First, the jury asked the court for one of Plaintiff's demonstrative exhibits.  The demonstrative exhibit was a photocopy of Iowa Code § 716.8 (2003) and had not been admitted into evidence.  The parties asked court to reopen the record and submit the demonstrative exhibit to the jury as evidence.  The court reluctantly adopted the parties' stipulation and took the unusual step of publishing the demonstrative exhibit to the jury in the middle of deliberations as Joint Exhibit 300.

The jury later sent the court a second note.  In the second note, a juror purported

to interpret Plaintiffs' Exhibits 105, 106, 108 and 110 in light of Joint Exhibit 300. The juror concluded: "If Michelle was given arrest sheets first—according to code—the search was not illegal." Notice (docket no. 308-2), at 2.

The court responded to the jury's second and final question as follows:

> You are focusing on an issue that is not for you to decide.
> Please reread all the instructions, including but not limited to
> [Final Jury I]nstruction No. 10, and continue to deliberate.

Response (docket no. 380-2), at 2. In Final Jury Instruction No. 10, the court had stated:

> You are instructed that Defendant unreasonably searched
> Plaintiffs at the Linn County Jail by subjecting each of them to
> a strip search and a visual body cavity inspection. You must
> decide the amount of damages, if any, that each Plaintiff
> suffered as a result of these unreasonable searches.

Final Jury Instr. No. 10 (docket no. 384), at 11. The court had also told the jury that it could not reach a compromise verdict. Final Jury Instr. No. 17 (docket no. 384), at 18.

For purposes of the Motion, the court shall assume without deciding that the two aforementioned notes from the jury betray an initial misunderstanding on the part of the jury about its proper role in the partial retrial. Even so, Plaintiffs have not proven that any initial misunderstanding on the part of the jury infected the jury's verdicts. The court directly and forcefully instructed the jury that it must consider only damages and not liability. Juries are presumed to follow their instructions. *In re Prempro Prods Liability Litig.*, 514 F.3d 825, 832 (8th Cir. 2008) (citing *Weeks v. Angelone*, 528 U.S. 225, 234 (2000)). The court's supplemental charge to the jury presumably cleared up any initial confusion one or more of the members of the jury might have had about the proper focus of their deliberations. The verdict accords with the evidence and does not bear out any desire to relieve Defendant of liability: Plaintiffs received some award for each and every one of their specifications of damage. Plaintiffs' claim of a compromise verdict is purely speculative. There was no miscarriage of justice.

Accordingly, the court shall deny this second part of the Motion. In any event, it would be especially difficult to find a miscarriage of justice on the facts of the present case. Plaintiffs did not object to the court's responses to the jury notes.

### C. Scheduling of Partial Retrial

Plaintiffs renew their previously asserted objection to the scheduling of the partial retrial on the issue of damages. The court set the partial retrial on damages for trial twenty-five days after the filing of the court's order granting Defendant's Motion.

To the limited extent Plaintiffs reassert the grounds for a continuance set forth in Motion to Continue (docket no. 334), the court stands by its reasoning in the Order (docket no. 336). To the much larger extent that Plaintiffs offer new reasons for granting a continuance, the court finds Plaintiffs waived their arguments. The court notes for the record that the reasons asserted for a continuance in the Motion are not entirely consistent with the reasons asserted in the Motion to Continue (docket no. 334). In any event, Plaintiffs' new assertion that the timing of the retrial caused them to accidently introduce Exhibits 1, 105 and 106 into evidence is frivolous. Plaintiffs introduced or stipulated to the introduction of these exhibits into evidence at the first trial. Plaintiffs have not shown a miscarriage of justice.

In any event, the court finds that Plaintiffs waived any alleged error when, on the eve of trial, they *resisted* Defendant's own later-filed request for a continuance. Plaintiffs stated:

> At this point, Plaintiffs do not want a continuance. The legal matters Plaintiffs' counsel had pending that conflicted with the re-trial date have been continued, and Plaintiffs' counsel has informed his colleagues in the Legislative and Executive branches of government that he will be unable to fulfill the prior commitments he made with regard to the upcoming election.

Resistance (docket no. 361-2), at 6. Further, Plaintiffs never moved for a continuance at

trial.[4]

Accordingly, the court shall deny this third part of the Motion.

### D. Adequacy of Verdict

In the Motion, Plaintiffs argue that the jury's verdicts are "so inadequate as to shock the conscious [sic]." Motion at 2. In their brief, Plaintiffs set forth the appropriate legal standard by quoting from four Eighth Circuit Court of Appeals cases. However, Plaintiffs do not discuss the trial evidence or provide the court with any analysis. The court finds that Plaintiffs' total and complete failure to discuss the evidence in light of the appropriate standard amounts to a waiver of their argument for a new trial on this ground.

In any event, the court disagrees with Plaintiffs' supposition that the second jury's verdicts shock the conscience. Plaintiffs did not present any evidence that they were subjected to repeated violations of their Fourth Amendment rights. There was no evidence Defendant conducted the strip searches and VBC searches in a violent, mocking or otherwise unprofessional manner. Plaintiffs own descriptions of their mental distress was not compelling.[5] As counsel for Defendant repeatedly pointed out to the jury, Plaintiffs' descriptions of their emotional distress often conflicted with or greatly exceeded their prior sworn testimony. A careful read of the transcripts of both trials and Plaintiffs' depositions call into question Plaintiffs' testimony.

Accordingly, the court shall deny this fourth part of the Motion. The amounts of the jury's verdicts in favor of Plaintiffs are adequate and not so low as to shock the

---

[4] Counsel for Defendant writes: "If the Plaintiffs truly felt that they had been given inadequate time for preparation for the trial, they could have joined in or assented to Defendant's request. By failing to do so, they have been hoist on their own petard." Brief in Support of Resistance (docket no. 393-2), at 6.

[5] At one point in the trial, Plaintiff McCabe nearly shouted "Were there? Were there?" after counsel for Defendant asked her if there were "any pictures taken of this procedure." Tr. at 106. Plaintiff McCabe knew no such pictures were taken.

conscience or amount to a miscarriage of justice.

## *V. CONCLUSION*

**IT IS THEREFORE ORDERED THAT** the Motion (docket no. 390) is **DENIED**;

**IT IS SO ORDERED.**

**DATED** this 23rd day of December, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA