**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION**

ALICE MCCABE and CHRISTINE NELSON,

    Plaintiffs,

vs.

MICHELLE MAIS,

    Defendant.

No. 05-CV-73-LRR

**ORDER**

_____

## TABLE OF CONTENTS

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

II.   RELEVANT PRIOR PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . *2*

III.  SUBJECT MATTER JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . *2*

IV.  ATTORNEYS' FEES & COSTS . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    A.    *Attorneys' Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
        *1.*    *Plaintiffs are "prevailing parties"* . . . . . . . . . . . . . . . . . *2*
        *2.*    *Principles for determining reasonable attorneys' fees* . . . . . . . *4*
            *a.*    *Lodestar* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
            *b.*    *The* **Johnson** *factors* . . . . . . . . . . . . . . . . . . . . . . . *5*
            *c.*    *Discretion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
        *3.*    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
            *a.*    *First phase* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
            *b.*    *Second phase* . . . . . . . . . . . . . . . . . . . . . . . . . . . *9*
                *i.*    *Arguments* . . . . . . . . . . . . . . . . . . . . . . . *9*
                *ii.*   *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . *10*
                *iii.*  *Award* . . . . . . . . . . . . . . . . . . . . . . . . . *13*
        *4.*    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*
    B.    *Costs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

V.   DISPOSITION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

## *I. INTRODUCTION*

The matter before the court is "Plaintiffs' Motion for Award of Attorneys' Fees &

Expenses Against Defendant [Michelle Mais]" ("Motion") (docket no. 391).

## II. RELEVANT PRIOR PROCEEDINGS

On November 12, 2008, Plaintiffs Alice McCabe and Christine Nelson filed the Motion. On December 1, 2008, Defendant Michelle Mais filed a Resistance (docket no. 397). Plaintiffs did not reply.

Neither side requests oral argument on the Motion, and the court finds oral argument is not appropriate. The Motion is fully submitted and ready for decision.

## III. SUBJECT MATTER JURISDICTION

On January 13, 2009, Plaintiffs filed a Notice of Appeal ("Notice") (docket no. 406). The Notice "divests [this court] of jurisdiction over aspects of the case that are the subject of the appeal." *United States v. Queen*, 433 F.3d 1076, 1077 (8th Cir. 2007) (per curiam). The amount of attorneys' fees and costs to award Plaintiffs under 42 U.S.C. § 1988 is not a subject of the Notice. Accordingly, the court finds it has subject matter jurisdiction over the Motion. *See, e.g., Lorenz v. Valley Forge Ins. Co.*, 23 F.3d 1259, 1260-61 (7th Cir. 1994) (Easterbrook, J.) ("[C]osts are appealable separately from the merits; a district court may award costs even while the substantive appeal is pending."); *Rothenberg v. Sec. Mgmt. Co.*, 677 F.2d 64, 64 (11th Cir. 1982) (same); *see also Queen*, 433 F.3d at 1077 (stating that the notice of appeal "*only* divests the [district] court of jurisdiction over aspects of the case that are the subject of the appeal" (emphasis added)).

## IV. ATTORNEYS' FEES & COSTS

Plaintiffs request a grand total of $117,249.37 in attorneys' fees and costs. Defendant contends a combined award of $25,620.02 is more appropriate. The court considers the parties' arguments with respect to attorneys' fees and costs separately.

### A. Attorneys' Fees

#### 1. *Plaintiffs are "prevailing parties"*

"Under the American Rule, 'the prevailing litigant is ordinarily not entitled to

collect a reasonable attorneys' fee from the loser.'" *Travelers Cas. & Sur. Co. v. Pac. Gas & Elec. Co.*, 127 S. Ct. 1199, 1203 (2007) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975)). "This default rule can, of course, be overcome by statute." *Id.* (citation omitted).

Title 42, United States Code, Section 1988 authorizes the court to award reasonable attorneys' fees to prevailing parties in 42 U.S.C. § 1983 lawsuits. *See* 42 U.S.C. § 1988 ("In any action or proceeding to enforce a provision of . . . [§ 1983] . . . the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs . . . ."). Section 1988 "was designed to allow private individuals a meaningful opportunity to vindicate civil rights violations." *Ortiz v. Regan*, 980 F.2d 138, 140 (2d Cir. 1992). "'[I]f those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court.'" *Id.* (quoting Pub. L. No. 94-559, 1976 WL 14051, *reprinted in* 1976 U.S.C.C.A.N. 5908, 5910 (Jun. 29, 1976)).

"'To be a prevailing party, [a plaintiff] must succeed on any significant issue in litigation which achieves some of the benefit [she] sought in bringing suit.'" *Allen v. Tobacco Superstore, Inc.*, 475 F.3d 931, 944 (8th Cir. 2007) (quoting *Forest Park II v. Hadley*, 408 F.3d 1052, 1059 (8th Cir. 2005)). Defendant concedes Plaintiffs are prevailing parties in this § 1983 lawsuit even though all of Plaintiffs' claims against Defendant Bruce Macaulay and the other federal defendants in this case failed. At the first trial, Defendant did not dispute that she violated Plaintiffs' Fourth Amendment rights, while acting under color of state law, by strip searching and visual body cavity searching them at the Linn County Jail. At the second trial, the jury awarded Plaintiff McCabe $10,002.00 and Plaintiff Nelson $45,802.00.

Accordingly, the court finds Plaintiffs are prevailing parties under 42 U.S.C. § 1988 and shall require Defendant Mais to pay their reasonable attorneys' fees.

## 2. *Principles for determining reasonable attorneys' fees*

"'The starting point in determining [reasonable attorneys' fees] is the lodestar, which is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates.'" *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) (quoting *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002)). The lodestar figure is presumed to be the reasonable fee to which counsel is entitled. *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992); *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993). "If the prevailing party did not achieve success on all claims, [the lodestar] may be reduced, taking into account the most critical factor, 'the degree of success obtained,' with discretion residing in the district court.'" *Simpson v. Merchants & Planters Bank*, 441 F.3d 572, 580 (8th Cir. 2006) ((quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983)).

### a. *Lodestar*

A reasonable hourly rate is generally the prevailing market rate in the locale, that is, the "ordinary rate for similar work in the community where the case has been litigated." *Moysis v. DTG Datanet*, 278 F.3d 819, 828-29 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001)).

> To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.

*Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "A rate determined in this way is normally deemed to be reasonable, and is referred to—for convenience—as the prevailing market rate." *Id*.

The prevailing party must also proffer evidence of the number of hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 433.

> Inadequate documentation may warrant a reduced fee . . . . Incomplete or imprecise billing records preclude any meaningful review by the district court of the fee application for "excessive, redundant, or otherwise unnecessary" hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim.

*H.J. Inc.*, 925 F.2d at 260 (quoting *Hensley*, 461 U.S. at 437).

### b. *The* Johnson *factors*

"'[M]ost factors relevant to determining the amount of a fee are subsumed within the lodestar.'" *Casey*, 12 F.3d at 805 (quoting *Hendrickson v. Branstad*, 934 F.2d 158, 162 (8th Cir. 1991)); *see Hensley*, 461 U.S. at 434 n.9 (citing *Copeland v. Marshall*, 641 F.2d 880, 890 (D.C. Cir. 1980) (en banc) ("[I]t should be noted that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.")). However, the court should consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988).

> *Johnson* called for consideration of twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717-19.

*McDonald*, 860 F.2d at 1459 n.4. The Supreme Court has stated that "the most critical factor" in determining the reasonableness of an attorneys' fee award in civil rights litigation is "the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436

(1983).

When making the determination of a reasonable fee, a court should consider the "plaintiff's overall success; the necessity and usefulness of plaintiff's activity in the particular matter for which fees are requested; and the efficiency with which plaintiff's attorneys conducted that activity." *Jenkins v. Missouri*, 127 F.3d 709, 718 (8th Cir. 1997) (en banc). A district court need not address exhaustively every *Johnson* factor. *Emery*, 272 F.3d at 1048. The court should consider what factors, "in the context of the present case, deserve explicit consideration." *Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997-98 (8th Cir. 1999). The district court should use its own knowledge, experience and expertise in determining the amount of the fee to be awarded. *Gilbert v. City of Little Rock*, 867 F.2d 1063, 1066-67 (8th Cir. 1989).

### c. *Discretion*

The district court retains wide discretion in making a fee award. *See Hensley*, 461 U.S. at 437 ("We reemphasize that the district court has discretion in determining the amount of a fee award."). "This is appropriate in view of the district court's superior understanding of the litigation and the desireability of avoiding frequent appellate review of what essentially are factual matters." *Id.* The district court must, however, "provide a concise but clear explanation of its reasons for the fee award." *Id.* "When an adjustment is requested on the basis of . . . [the] limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Id.*

### 3. *Analysis*

For purposes of analysis, it is helpful to divide Plaintiffs' requested attorneys' fees into two time periods: (1) attorneys' fees incurred before October 2, 2008 ("first phase"), the date the court filed the Order Denying Defendant Mais's Motion for Judgment as a Matter of Law and Granting Defendant Mais's Motion for New Trial ("Order of October

6

2, 2008") (docket no. 318) and (2) attorneys' fees incurred on or after October 2, 2008 ("second phase"). The court considers these two time periods separately.

### a. First phase

Plaintiffs claim the lodestar for the first phase of this lawsuit is $127,204.20.[1] Plaintiffs concede that a substantial reduction downward from the lodestar is appropriate in light of their limited successes at the first trial and the fact that the court dismissed a number of other claims and defendants prior to trial. Plaintiffs propose the court reduce the lodestar by 60% to $50,881.68.

Defendant generally does not dispute Plaintiffs' calculation of the lodestar. Defendant does not challenge any of Plaintiffs' hourly rates.[2] Absent some relatively minor exceptions that the court need not address with particularity,[3] Defendant does not

---

[1] Counsel for Plaintiffs represents to the court that the total amount of time entries for the first phase is $234,679.70. He states that "Plaintiffs have not submitted any entries for any time completely unrelated to the claims made against Defendant Mais," that is, $107,475.50. Motion (docket no. 391), at 2. Further, he testifies that "[t]his case is currently the only case on my docket where I charge an hourly fee" and concedes "a considerable amount of time was spent on this matter, and out of habit, not documented." Affidavit (docket no. 391-10), at 2. However, counsel asks the court to "keep this fact in mind in evaluating the time that has been documented." *Id*. It is unclear whether counsel actually billed Plaintiffs for counsel's services.

[2] The court finds Defendant Mais waived any objection to Plaintiffs' proposed rates notwithstanding gaping holes in Plaintiffs' billing records and supporting affidavits. For example, Plaintiffs claim "TST" billed at a rate of $80 or $90 per hour and "MK" billed at $125 per hour. Neither Plaintiffs' billing records nor their affidavits indicate who "TST" and "MK" are, and Plaintiffs do not attempt to justify the propriety of such rates. It would appear TST bills at the prevailing market rate for a paralegal, and MK bills the market rate for an associate attorney.

[3] Defendant's primary objection to the lodestar is that Plaintiffs should not recover any fees incurred prior to September 8, 2006, the date she was named as a party to this lawsuit. Insofar as Defendant Mais suggests a per se ban on awarding any fees for
(continued…)

challenge Plaintiffs' claim of hours expended. Defendant Mais's primary objection is that Plaintiffs have vastly overstated their success in the first phase of this lawsuit. Defendant Mais asks the court to reduce the lodestar by 85% in light of Plaintiffs' limited success in the first phase.

The court finds that Plaintiffs are entitled to $20,000 for their work in the first phase of this lawsuit. This represents approximately 15% of the lodestar for this period. This substantial reduction in the lodestar is appropriate for a number of reasons:

● Plaintiffs' lodestar includes time spent in part prosecuting a myriad of federal and state claims against the large number of other defendants in this case. These claims all proved unsuccessful and are almost wholly unrelated to Plaintiffs' claims against Defendant.

● During the first phase, Plaintiffs focused their energies upon their allegation that federal, state and local law enforcement agents conspired to arrest, strip search and conduct visual body cavity inspections of Plaintiffs and others who disagreed with former President George W. Bush and his policies. This allegation remains unproven. The jury rejected Plaintiffs' claims against Defendant Bruce Macaulay, Plaintiffs settled with the state defendants without any admissions of wrongdoing, and the court dismissed the remaining defendants from this case as a matter of law.

● Under the unique circumstances of this § 1983 case, little effort was required to prosecute Plaintiffs' § 1983 action against Defendant. Whereas Plaintiffs fought a pitched battle with Defendant Macaulay and the other federal defendants for several years, counsel for Defendant fell on her proverbial sword at the outset. Counsel for Defendant informed

---

[3](…continued)
services rendered prior to September 8, 2006, her argument lacks merit. *Cf. Webb v. Bd. of Educ. of Dyer County, Tenn.*, 471 U.S. 234, 342 (1985) (recognizing that "some of the services performed before a lawsuit is formally commenced" are compensable under § 1988).

counsel for Plaintiffs that Defendant would concede liability at the time of trial. Although he contested the amount of damages his client owed Plaintiffs, he eschewed all discovery and did not file any substantive motions. Simply put, counsel for Defendant expended little time or effort defending his client until the first jury hammered her for $750,000. A careful examination of the hundreds of docket entries in the first phase of this case bears out Defendant's minimal role in this action. Put simply, the federal defendants were the focus of this lawsuit until they no longer could be.

- The factual and legal issues involved in Plaintiffs' case against Defendant were not difficult, novel or complex. The gravamen of Plaintiffs' factual allegations, apart from the amount of damages, were undisputed. From a legal perspective, this was a garden-variety strip search case.

- To the extent Plaintiffs were successful in the first phase, the results obtained were limited. Only liability—which Defendant had consistently maintained she would concede—was established. Counsel for Plaintiffs invited the jury to return verdicts based upon passion and prejudice; the court found the damages shocked the conscience and ordered a conditional remittitur, which Plaintiffs did not accept.[4]

Accordingly, the court shall award Plaintiffs $20,000 as a reasonable attorneys' fee for the first phase of this lawsuit.

### b. *Second phase*
#### i. *Arguments*

Plaintiffs contend the lodestar for the attorneys' fees incurred in the prosecution of the second trial is $65,798.40. Plaintiffs point out they were successful at the second trial and request 100% of the lodestar.

Defendant concedes Plaintiffs are entitled to $7,532.95, that is, 100% of the

---

[4] The court notes Plaintiffs did not pursue equitable relief against Linn County, Iowa, so it is unclear whether the Jail has ceased its unconstitutional practices.

attorneys' fees Plaintiffs allege they incurred on or before October 10, 2008. Pursuant to Federal Rule of Civil Procedure 68(c), Defendant resists *any* award of attorneys' fees Plaintiffs allege they incurred after October 10, 2008.

On October 10, 2008, Defendant served an Offer of Judgment upon Plaintiffs.[5] In exchange for the settlement of Plaintiffs' claims against Defendant, Defendant offered to pay (1) $50,000 to Plaintiff Nelson; (2) $25,000 to Plaintiff McCabe; and (3) all of Plaintiffs' attorneys' fees and costs. Because the second jury awarded Plaintiffs a lesser amount of damages than Defendant offered, Defendant concludes Rule 68(c) shields her from any award for attorneys' fees Plaintiffs allege they incurred after October 10, 2008.

Plaintiffs respond that Rule 68(a)—not Rule 68(c)—governs here. Plaintiffs argue that, under Rule 68(a), the Offer of Judgment is untimely. Plaintiffs opine the Offer of Judgment was not filed "[m]ore than ten days before" the second trial commenced on October 27, 2008, as Rule 68(a) requires. In the alternative, Plaintiffs argue the Offer of Judgment was not served within "a reasonable time," as Rule 68(c) requires.

### ii. *Analysis*

"The purpose of Rule 68 is to encourage the settlement of litigation." *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 352 (1981). To this end, Rule 68 provides:

> **(a) Making an Offer; Judgment on an Accepted Offer.** More than 10 days before the trial begins, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then

---

[5] Counsel for Defendant personally delivered the Offer of Judgment to counsel for Plaintiffs. Consistent with settled practice, counsel for Defendant waited to file the Offer of Judgment until the time came to resist the Motion. *See, e.g., Kason v. Amphenol Corp.*, 132 F.R.D. 197, 197 (N.D. Ill. 1997); 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, *Federal Prac. & Proc. Civ. 2d*, § 3002 ("The defendant should not file the offer with the court . . . . If the offer is accepted, the offer and acceptance will be filed. If it is not accepted, the offering party can prove it at the proper time to defeat costs.").

> accrued. If, within 10 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.
>
> **(b) Unaccepted Offer.** An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.
>
> **(c) Offer After Liability Is Determined.** When one party's liability to another has been determined but the extent of liability remains to be determined by further proceedings, the party held liable may make an offer of judgment. It must be served within a reasonable time—but at least 10 days—before a hearing to determine the extent of liability.
>
> **(d) Paying Costs After an Unaccepted Offer.** If the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

Fed. R. Civ. P. 68 (emphasis in original). So long as a defendant in a civil rights case complies with the time limits set forth within Rule 68, it is settled that she "is not liable for attorney's fees incurred after a pretrial settlement offer, where the judgment recovered by the plaintiff is less than the offer." *City of Riverside v. Rivera*, 477 U.S. 561, 580 (1986) (citing *Marek v. Chesny*, 473 U.S. 1 (1985)).[6]

Plaintiffs' threshold argument that Rule 68(a) instead of Rule 68(c) applies lacks merit. At the moment Plaintiffs rejected the court's conditional remittitur, Defendant's "liability to [Plaintiffs had] been determined but the extent of liability remain[ed] to be determined by further proceedings[.]" Fed. R. Civ. P. 68(c). The court's Order of

---

[6] By its terms, Rule 68 permits the defendant to file a bill of costs against the plaintiff. Defendant did not file a bill of costs. Accordingly, the issue in this case is simply whether Defendant owes Plaintiffs.

October 2, 2008 makes clear that Defendant's liability to Plaintiffs was conclusively established during the first trial.[7] The second trial was nothing more than a partial retrial on the sole issue of damages. To this end, the court instructed the jury at the second trial as follows:

> You are instructed that Defendant unreasonably searched Plaintiffs at the Linn County Jail by subjecting each of them to a strip search and a visual body cavity inspection. You must decide the amount of damages, if any, that each Plaintiff suffered as a result of these unreasonable searches.

Final Jury Instruction No. 10 (docket no. 384), at 11. The court had given the first jury a nearly identical instruction during the first trial. Final Jury Instruction No. 10 (docket no. 273), at 11. Rule 68(c) clearly governs here.

Under Rule 68(c), the Offer of Judgment was timely. Plaintiffs do not dispute that the Offer of Judgment was served on October 10, 2008, which is "at least 10 days" before the partial retrial on damages commenced on October 27, 2008. Further, the court finds that the Offer of Judgment was "served within a reasonable time" as Rule 68(c) contemplates. Seventeen calendar days was a reasonable amount of time for Plaintiffs to decide whether to accept Defendant's offer. It is worth pointing out that the terms of Defendant's Offer of Judgment were identical to the terms of the conditional remittitur, upon which Plaintiffs previously had time to reflect. Plaintiffs had just rejected the conditional remittitur on October 8, 2008.

Even if the court is wrong and Rule 68(a) were to apply, the court nonetheless finds that the Offer of Judgment was timely filed. Rule 68(a) requires offers of judgment to be served "[m]ore than 10 days" before commencement of trial. The partial retrial on

---

[7] Counsel for Defendant took the unprecedented step of moving for a directed verdict against his client as to Plaintiff McCabe's claim against Defendant. The court later granted Plaintiffs' motion for a partial directed verdict on liability on Plaintiffs' claims against Defendant.

damages began on October 27, 2008. Plaintiffs conclude Defendant was required to serve the Offer of Judgment on or before October 9, 2008. This is wrong for two reasons. First, Plaintiffs impermissibly exclude both the date the Offer of Judgment was served and the date the partial retrial on damages commenced. Whereas Rule 6(a)(1) directs the court to exclude "the day of the act, event, or default that begins the period," Rule 6(a)(3) directs the court to *include* "the last day of the period[.]" Fed. R. Civ. P. 6(a). Second, Plaintiffs mistakenly assume Rule 68(a) is subject to the Rule 6(a)(2). Here, the period involved in Rule 68(a), "[m]ore than 10 days," logically cannot be a "period less than 11 days." *U.S. ex rel. Silva's Excavation, Inc. v. Jim Cooley Constr., Inc.*, 572 F. Supp. 2d 1276, 1280-81 n.2 (D.N.M. 2008). *But see Polk v. Montgomery County, Md.*, 130 F.R.D. 40, 41-42 (D. Md. 1990) (excluding intervening weekends and holidays without discussion). Accordingly, the court must "count straight through the weekends [and holidays] in computing the time period" for Rule 68(a). *Silva's Excavation*, 572 F. Supp. 2d at 1280-81 n.2. The Offer of Judgment was due on or before October 17, 2008, and thus Defendant served it a full week in advance of the deadline contemplated in Rule 68(a).

### iii. Award

Accordingly, the court shall award Plaintiffs $7,532.95 as a reasonable attorneys' fee for the second phase of this lawsuit.

### 4. Conclusion

The court shall direct the Clerk of Court to enter judgment in favor of Plaintiffs and against Defendant in the amount of $27,532.95 for reasonable attorneys' fees expended in the instant lawsuit, pursuant to 42 U.S.C. § 1988.

## B. Costs

On November 12, 2008, Plaintiffs filed a Bill of Costs (docket no. 392), in which they asked the Clerk of Court to award them $7,727.58 for certain costs expended in this lawsuit, pursuant to 28 U.S.C. § 1920. On December 1, 2008, Defendant filed a

Resistance (docket no. 398) to the Bill of Costs, in which she asked the Clerk of Court to only tax $2,744.41. On December 5, 2008, the Clerk of Court taxed $6,214.11 against Defendant but did not enter formal judgment. *See* Decision on the Bill of Costs ("Decision") (docket no. 399), at 1. The Decision is inconsistent with the instant Order, because the Clerk of Court apparently apportioned a higher percentage of costs to Defendant and erroneously applied Federal Rule of Civil Procedure 68(c). Because neither party asked the court to review the Decision, the court shall not review it now. *Cf. Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 638-39 (8th Cir. 2007) ("[T]he plaintiffs have waived their right to challenge the clerk's . . . order because they did not first seek review of that order in the District Court."). The court shall direct the Clerk of Court to enter formal judgment in favor of Plaintiffs and against Defendant in the amount of $6,214.11.

In the Motion, Plaintiffs ask the court to tax costs not itemized in their Bill of Costs. These additional costs consist of postage, facsimile and conference call charges and total $569.29. Plaintiffs seek imposition of these additional costs pursuant to 42 U.S.C. § 1988, because such costs apparently were not collectable under 28 U.S.C. § 1920. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 20 (9th Cir. 1994) (Bright, S.J., sitting by designation) ("Under § 1988, Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.' Thus reasonable expenses, though greater than taxable costs, may be proper.") (quoting *Chalmers v. City of L.A.*, 796 F.2d 1205, 1216 n.7 (9th Cir.), *reh'g denied and opinion amended*, 808 F.2d 1373 (1987)).

The parties' arguments mirror those made in connection with attorneys' fees in Part IV.A *supra*. Plaintiffs allege they incurred $612.21 in costs during the first phase of these proceedings. Plaintiffs again propose a 60% reduction, to $244.85, in such costs in light of their limited success during the first phase. With respect to the second phase, Plaintiffs ask the court to tax 100% of the postage, facsimile and conference call charges, which

total $324.45, against Defendant. For her part, Defendant reasserts that an 85% reduction is appropriate for costs incurred during the first phase and argues that any costs incurred during the second phase and after October 10, 2008 are not recoverable, pursuant to Rule 68(c).

Plaintiffs' failure to attach invoices to the Motion severely hampers the court's analysis of the reasonableness of Plaintiff's request for costs. Most of the entries are simply "block billed" in monthly increments without any explanation. In many cases, it is impossible for the court to discern why Plaintiffs incurred their expenses.

For the reasons stated in Part IV.A.3.a *supra* and due to Plaintiffs' lack of evidence, the court shall tax only 10%, or $61.22, of the costs Plaintiffs incurred in the first phase. *See, e.g., H.J. Inc.*, 925 F.2d at 260 (quoting *Hensley*, 461 U.S. at 437) (discussing propriety of reducing award for inadequate documentation and billing practices); *Blagrave v. Nutrition Mgmt. Servs. Co.*, No. 05-6790, 2009 WL 440299, *7-*8 (E.D. Pa. Feb. 20, 2009) (awarding 10% of requested costs where there was inadequate documentation and it was impossible to tell what costs were spent on which claims). The court shall tax 100% of the costs Plaintiffs incurred during the second phase and on or before October 10, 2008. Specifically, the court shall tax $216.75 against Defendant for a three-way conference call held on July 31, 2008. Although Plaintiffs' submitted materials are vague, it appears this conference call was held in conjunction with court-ordered mediation. The court shall deny all other requested costs incurred during the second phase. For example, Plaintiffs list a $7.78 postage charge "for October 2008," Pl.'s Ex. G (docket no. 391-9), at 7. Because it is unclear whether Plaintiffs paid for the postage before or after October 10, 2008, the court declines to tax this cost.

## V. DISPOSITION

The Motion (docket no. 391) is **GRANTED IN PART AND DENIED IN PART**. Defendant Mais is **ORDERED** to pay Plaintiffs a total of $27,810.92 in attorneys' fees and

costs, pursuant to 42 U.S.C. § 1988. The Clerk of Court is **DIRECTED** to **ENTER JUDGMENT** in favor of Plaintiffs in the amount of $34,025.03. This latter figure includes the amount the Clerk of Court taxed in favor of Plaintiffs and Defendant on December 5, 2008, pursuant to 28 U.S.C. § 1920.

**IT IS SO ORDERED.**

**DATED** this 16th day of March, 2008.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA