# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

ALICE MCCABE and CHRISTINE NELSON,

    Plaintiffs,

vs.

MICHELLE MAIS,

    Defendant.

No. 05-CV-73-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

*I.*   *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*  *RELEVANT PRIOR PROCEEDINGS* . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *A.*   *Pretrial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *B.*   *First Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
    *C.*   *Post-Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *D.*   *Second Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    *E.*   *Attorneys' Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *F.*   *Appeal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
    *G.*   *Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*

*III.* *RELEVANT FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

*IV.* *DAMAGES ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *A.*   *Parties' Position* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *B.*   *Mandate on Remand* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *8*
    *C.*   *Plaintiff McCabe* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
    *D.*   *Plaintiff Nelson* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
    *E.*   *Applicable Rate of Inflation* . . . . . . . . . . . . . . . . . . . . . . . . *14*
    *F.*   *Amount of Remittitur* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

*V.*  *ATTORNEYS' FEES* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

*VI.* *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *16*

## I.  INTRODUCTION

This matter comes before the court on remand from the Eighth Circuit Court of Appeals (docket nos. 427-28, 430).

## II.  RELEVANT PRIOR PROCEEDINGS

### A.  Pretrial

On April 20, 2005, Plaintiffs Alice McCabe and Christine Nelson brought suit against a host of individuals, agencies and officials. Complaint (docket no. 2). Plaintiffs amended their Complaint five times and, among other claims, generally alleged that Defendants violated their First and Fourth Amendment rights.

The court dismissed many of Plaintiffs' claims on various grounds, and the Iowa State Troopers who executed the allegedly unlawful arrest reached a settlement with Plaintiffs. As a result, only two categories of claims remained for trial: (1) Plaintiffs' First and Fourth Amendment claims against Bruce Macaulay, a United States Secret Service Agent who allegedly arrested Plaintiffs because they were protesting President Bush's policies; and (2) Plaintiffs' Fourth Amendment claims against Defendant Michelle Mais, a Linn County Deputy Sheriff who conducted illegal strip searches and visual body cavity searches of Plaintiffs after they were arrested. Because Defendant Mais conceded liability for the illegal strip and visual body cavity searches, only the damages portion of the second category of claims was disputed at trial.

### B.  First Trial

From May 27, 2008 through June 4, 2008, the court held a jury trial on Plaintiffs' remaining claims. With respect to Agent Macaulay, the court asked the jury a series of factual questions in lieu of general verdicts on Plaintiffs' First and Fourth Amendment claims. *See Peterson v. City of Plymouth*, 60 F.3d 469, 475-76 (8th Cir. 1995) (authorizing use of special interrogatories to resolve discrete factual questions to determine what officers knew at the time of an arrest). Among other factual findings, the jury found

that Agent Macaulay reasonably believed Plaintiffs disobeyed a law enforcement officer's order to move and that law enforcement did not arrest Plaintiffs as a result of the exercise of their First Amendment rights. Based upon the jury's findings, the court concluded that the arrests were supported by probable cause and dismissed Plaintiffs' claims against Agent Macaulay. The single remaining issue for the jury to decide was the amount of damages Plaintiffs were entitled to for the emotional distress that arose from their unlawful searches by Defendant Mais. The jury awarded Plaintiff McCabe $250,000 and Plaintiff Nelson $500,000.

### C. Post-Trial

On June 10, 2008, Defendant Mais filed a "Motion For New Trial" (docket no. 284), arguing that the jury's damages awards to each Plaintiff were excessive. The court found the damages awards were excessive and ordered a remittitur in the amount of $25,000 with respect to Plaintiff McCabe and $50,000 with respect to Plaintiff Nelson. The court came to this figure after comparing Plaintiffs' case with several other similar cases. The court also referenced, in passing, and distinguished *Joan W. v. City of Chi.*, 771 F.2d 1020, 1023-25 & nn.1-9 (7th Cir. 1985), a strip search case in which the Seventh Circuit Court of Appeals remitted a jury verdict of $112,000 to $75,000.

The court provided that, if either Plaintiff rejected the remitted amount, the court would schedule a new trial on damages. Plaintiffs rejected the remitted amount. On October 10, 2008, Defendant Mais made an Offer of Judgment under Federal Rule of Civil Procedure 68 in the same amount as the remittitur, which Plaintiffs also rejected.

### D. Second Trial

From October 27, 2008 through October 29, 2008, the court held a second jury trial on the issue of damages arising from Defendant Mais's unlawful searches of Plaintiffs. The second jury awarded Plaintiff McCabe $10,002 and Plaintiff Nelson $45,802. Plaintiffs filed a post-trial "Motion for a New Trial" (docket no. 390), which the court

3

denied.

### E. Attorneys' Fees

Subsequently, Plaintiffs filed a "Motion for Award of Attorneys' Fees & Expenses Against Defendant" (docket no. 391) as prevailing parties under 42 U.S.C. § 1988. The court need not discuss the attorneys' fees awarded for the first trial because only the award for the second trial is relevant here.

As to the attorneys' fees incurred in the second trial, the court awarded all attorneys' fees incurred after October 2, 2008 (the date the court filed the Order granting Defendant Mais's Motion for a New Trial) and before October 10, 2008 (the date Defendant Mais made an Offer of Judgment). However, the court found Defendant Mais was not liable for attorneys' fees incurred after the Offer of Judgment because the amount of the settlement offer exceeded Plaintiffs' recovery in the second trial. *See Riverside v. Rivera*, 477 U.S. 561, 580 (1986) (holding a defendant is not liable for § 1988 attorneys' fees incurred after a Rule 68 offer of judgment where the judgment ultimately recovered is less than the offer). Thus, the court awarded Plaintiffs $7,532.95 for attorneys' fees incurred from October 2, 2008 through October 10, 2008.

### F. Appeal

Plaintiffs timely filed appeals with the Eighth Circuit Court of Appeals. Plaintiffs claimed, among other things, that the court abused its discretion by granting Defendant Mais's request for a new trial or, alternatively, by requiring Plaintiffs to accept a total remittitur of $75,000. Plaintiffs also challenged the amount of the attorneys' fees award. The Eighth Circuit Court of Appeals reversed and remanded on these two issues.

With respect to the remittitur, the Eighth Circuit Court of Appeals found:

> [T]he [court's] error in selecting $75,000 as the amount of the total remittitur in this case was two-fold. First, the [court] selected a total amount for two plaintiffs that it identified as a reasonable amount for a single plaintiff. Second, the [court] failed to calculate how much a $75,000 award for an incident

> that occurred in 1978 would equal for an incident that occurred in 2004 after adjusting for inflation."

*McCabe v. Parker*, 608 F.3d 1068, 1083 (8th Cir. 2010). The Eighth Circuit Court of Appeals reasoned that, under the maximum recovery rule, the court was obligated to award Plaintiffs the highest amount a jury could have reasonably awarded under the circumstances. Thus, because the court utilized a comparison approach in determining the appropriate remittitur amount, the court was required to apply the comparator case with the highest damages award in calculating the appropriate remittitur. The Eighth Circuit Court of Appeals found *Joan W.*, 771 F.2d at 1021, 1025, was an appropriate comparator case because it demonstrates the highest award a jury could have reasonably found under similar circumstances. *McCabe*, 608 F.3d at 1082. As a result, it was an abuse of discretion for this court to fail to take the $75,000 damages award in *Joan W.*, adjust the award for inflation and apply it to each Plaintiff individually. *McCabe*, 608 F.3d at 1083.

With respect to the appeal of attorneys' fees, the Eighth Circuit Court of Appeals concluded that its determination that the remittitur was inadequate required a finding that Plaintiffs were "prevailing parties and entitled to recover all reasonable fees incurred in the second trial." *McCabe*, 608 F.3d at 1084.

### *G. Remand*

Upon remand, the court entered an Order (docket no. 431) declaring:

> In the event the parties are unable to resolve this case through mediation, Plaintiffs shall file a brief **no later than 10 days** after the close of the mediation proceeding. The brief should address the calculation of damages for the offer of remittitur. Specifically, the brief should address and discuss: (1) any cases with which to compare each Plaintiff[s'] respective injuries to determine the baseline amount of damages (*see* Opinion at 19-25 (discussing comparison of damages)); (2) the appropriate method and calculation of inflation with respect to comparable damage awards, if applicable; and (3) any difference in Plaintiffs' respective

> damages awards and an explanation for the same. Defendant may file a response to Plaintiff[s'] brief **no later than 10 days** after Plaintiffs file their brief. Plaintiffs may file a reply **no later than 5 days** after the response. In their briefs, the parties shall indicate whether they are requesting an evidentiary hearing.

Order at 1.

On August 10, 2010, Plaintiffs filed "Plaintiffs' Brief on Remand" ("Plaintiffs' Brief") (docket no. 438). On August 19, 2010, Defendant Mais filed "Defendant's Brief on Remand" ("Defendant's Brief") (docket no. 440). On August 24, 2010, Defendant Mais filed a Reply (docket no. 441). Neither party requested an evidentiary hearing.

On August 30, 2010, the Eighth Circuit Court of Appeals issued an Opinion (docket no. 442), which granted Plaintiffs' motion for attorneys' fees and expenses incurred on appeal. The Eighth Circuit Court of Appeals awarded one-third of Plaintiffs' requested attorneys' fees because a majority of Plaintiffs' efforts on appeal pertained to Plaintiffs' claims against defendants other than Defendant Mais.

Subsequently, Plaintiffs filed a "Motion for Leave to File a Supplemental Brief on Remand" (docket no. 444), which the court granted. On September 2, 2010, Plaintiffs filed their "Supplemental Brief on Remand" ("Supplemental Brief") (docket no. 446). On September 8, 2010, Defendant Mais filed a Reply (docket no. 447).

### III. RELEVANT FACTS

On September 3, 2004, the Republican National Committee held a campaign rally at Noelridge Park in Cedar Rapids, Iowa, to support the candidacies of President Bush and other Republicans running for political office in the November 2004 elections. The chairman of the Linn County Democratic Party sent an email to Plaintiff Nelson, inviting her to protest President Bush's visit at a designated location in the park. Plaintiff Nelson decided to attend the protest and invited her friend, Plaintiff McCabe, to join her.

When Plaintiffs arrived at the rally, they were unable to find the other protesters,

6

so they stood next to a shuttle bus entrance hoping to meet fellow protesters there. However, the United States Secret Service, in conjunction with local law enforcement, had security regulations in place forbidding people from standing or congregating on the roads or sidewalks. Secret Service Agent Michael Parker observed Plaintiff McCabe standing next to the bus entrance and told her to move off the sidewalk. Both Plaintiffs moved off the sidewalk and stood near the shuttle bus entrance on a strip of grass between the sidewalk and the street. Several minutes later, Agent Parker told Plaintiff McCabe to move down the street or across the street. Plaintiff McCabe felt like she was being singled out because there were other people standing in the area, so she asked Agent Parker whether he was going to tell everyone else to move as well. Agent Parker radioed for assistance, after which Agent Macaulay approached Plaintiffs and asked them to move. Plaintiffs continued to ask why they could not stay where they were. Agent Macaulay decided to arrest the women for trespass if they did not move within 30 seconds. After thirty seconds passed, two Iowa State Troopers arrested Plaintiffs.

Upon their arrest, Plaintiffs were charged with simple misdemeanor trespass and taken to the Linn County Jail. At the jail, Defendant Mais conducted separate strip searches and visual body cavity searches of Plaintiffs. The searches violated jail policy and governing law because Plaintiffs were not suspected of hiding contraband and were only charged with simple misdemeanors. During the visual body cavity searches, Plaintiffs were ordered to bend over and spread their buttocks to allow an officer to inspect their rectal and vaginal areas. While Defendant Mais searched Plaintiff Nelson, the top half of a Dutch door to the room in which the search took place was open, and male jailers passed by the open door during the search. Plaintiffs were placed in a holding cell until one of their friends bailed them out of jail. In December of 2004, the Linn County Attorney dismissed all charges against Plaintiffs.

## IV. DAMAGES ANALYSIS

### A. *Parties' Positions*

Plaintiffs take the position that the Eighth Circuit Court of Appeals used *Joan W.* to establish a baseline of damages at $75,000 for each Plaintiff, adjusted for inflation to the equivalent of 2004 dollars. Plaintiff McCabe asks the court to award her the baseline amount of damages. Plaintiff Nelson, however, argues that she is entitled to double, or near double the baseline amount, because the court and two juries previously awarded her at least double the amount of Plaintiff McCabe's damages.

Defendant Mais argues that the Eighth Circuit Court of Appeals based its analysis on an invalid premise; namely, that the court engaged in a damages comparison approach when it calculated the original remittitur. Defendant Mais claims that, if the court did not engage in a damages comparison approach, the maximum recovery rule set forth by the Eighth Circuit Court of Appeals does not apply. If the court instead made an independent determination of the value of Plaintiffs' damages when calculating the remittitur, Defendant Mais contends that the court should merely reinstate the original remittitur. Defendant Mais further argues that the court cannot use *Joan W.* to establish a baseline damages award in this case because the award in *Joan W.* was a remittitur and not a jury award. Alternatively, Defendant Mais maintains that if the court elects to use a damages comparison approach, the court should use the lesser jury awards issued in *Mary Beth G. v. City of Chi.*, 723 F.2d 1263 (7th Cir. 1983) as a comparator and then apply a downward location adjustment to further decrease the awards.

### B. *Mandate on Remand*

When the Eighth Circuit Court of Appeals remands the case to a district court, every question the Eighth Circuit Court of Appeals decided is deemed finally decided. *Houghton v. McDonnell Douglas Corp.*, 627 F.2d 858, 864 (8th Cir. 1980). On remand, the district court is duty bound to follow the Eighth Circuit Court of Appeals's mandate,

which is completely controlling as to all matters within its compass. *Id*. at 864-65. Upon reviewing the Eighth Circuit Court of Appeals's Opinion and mandate, the court agrees with Plaintiffs insofar as Plaintiffs maintain that the Eighth Circuit Court of Appeals established a baseline for damages in this case.

The Eighth Circuit Court of Appeals determined that the court used a damages comparison approach and held that, as a result, "it was incumbent upon the [court] to follow the rules that apply to such an approach." *McCabe*, 608 F.3d at 1081. Specifically, the Eighth Circuit Court of Appeals held that the court was required to follow the maximum recovery rule and award Plaintiffs the maximum amount that a jury could reasonably award. The Eighth Circuit Court of Appeals explained,

> [O]nce a district court decides to employ a damage comparison approach and thereafter identifies a range of reasonable jury awards in similar cases, it is not at liberty to remit an award to the low end of the range, or even somewhere in the middle of the range. A district court's only choice is to remit the award to the *maximum* amount identified as within the reasonable range.

*Id*. (emphasis in original).

The Eighth Circuit Court of Appeals concluded that, based upon the court's Order of remittitur, the court had identified the low end of the range as nominal damages and the high end of the range as the $75,000 awarded to one plaintiff in *Joan W.* for an incident occurring in 1978. *McCabe*, 608 F.3d at 1081-82. The Eighth Circuit Court of Appeals criticized some of the cases that the court used as comparators and emphasized that those cases the court properly considered included four characteristics: "1) the cases involved female plaintiffs, 2) arrested for minor or invalid infractions, 3) who were subjected to both strip and body cavity searches, and 4) the damages were solely for the emotional distress generally associated with an unlawful strip and body cavity search." *Id*. at 1082. Because the damages award in *Joan W.* was the highest award the court properly

9

considered, the Eighth Circuit Court of Appeals declared that the award "should have been used as the benchmark for determining the proper amount of a remittitur." *Id*.

The court is obligated to follow the Eighth Circuit Court of Appeals's mandate and, therefore, rejects Defendant Mais's arguments that the court should (1) decline to use a damages comparison approach, (2) apply a different case as the comparator, or (3) apply a location adjustment to the award before calculating inflation. The Eighth Circuit Court of Appeals made clear that the court should use *Joan W.* as the benchmark for determining the remittitur. Thus, the court finds that the Eighth Circuit Court of Appeals's Opinion established a damages baseline of $75,000 in 1978 dollars, adjusted for inflation to the equivalent of 2004 dollars, for each Plaintiff.

### C. Plaintiff McCabe

Plaintiff McCabe concedes that she is only entitled to the baseline amount. Thus, because the court is bound by the maximum recovery rule and the Eighth Circuit Court of Appeals's mandate that the court apply the award in *Joan W.*, the court holds that the appropriate remittitur for Plaintiff McCabe is $75,000 in 1978 dollars, adjusted for inflation to the equivalent of 2004 dollars.

### D. Plaintiff Nelson

Plaintiff Nelson argues that she is entitled to double or near double Plaintiff McCabe's remittitur because the court and two juries found her damages to be at least double those of Plaintiff McCabe. However, Plaintiff Nelson fails to identify any case in which a jury awarded more than $75,000 in 1978 dollars, adjusted for inflation, under circumstances similar to those presented here.

The Eighth Circuit Court of Appeals found that the court used a damages comparison approach and directed that, under the maximum recovery rule, the court must determine the highest recovery obtained in a similar case in order to determine the maximum amount a jury could have reasonably awarded under the facts of this case. As

noted above, the Eighth Circuit Court of Appeals identified four characteristics that a comparator case should have. The parties have not pointed the court to any case with the four characteristics that the Eighth Circuit Court of Appeals set forth, or any case with facts similar to those that Plaintiff Nelson confronted, in which a plaintiff recovered more than Plaintiff McCabe's remittitur. Likewise, the Eighth Circuit Court of Appeals did not note the existence of such a case in its Opinion and the court has been unable to find such a case.

As the Eighth Circuit Court of Appeals explained, "[Plaintiff] Nelson is not entitled to more than the maximum amount the jury could have reasonably awarded, and the court may not remit [Plaintiff] McCabe's award to an amount less than the maximum amount a jury could have reasonably awarded." *McCabe*, 608 F.3d at 1083 n.15. While Plaintiff McCabe is not entitled to less than the $75,000 in 1978 dollars, adjusted for inflation, Plaintiff Nelson has not demonstrated that she is entitled to more than that amount for the emotional distress she sustained from the strip search.

The court concludes, however, that a reasonable jury could find Plaintiff Nelson demonstrated by a preponderance of the evidence that her emotional distress led to the need for continued medical treatment in the form of doctor visits and medication for her increased depression.[1] At the first trial, Plaintiff Nelson introduced two exhibits which detailed the expenses she incurred as a result of her increased depression stemming from the strip search. First, Exhibit 15 was a billing statement that set forth the charges Plaintiff Nelson incurred from her doctor visits. Plaintiff Nelson's physician, Doctor John Banks, testified that Exhibit 15 was a billing statement from his office, which reflected the charges that Plaintiff Nelson incurred for the treatment of her increased depression, and he testified that the dates of the charges corresponded to the dates of her treatment.

---

[1] Neither Plaintiff McCabe nor the plaintiff in *Joan W.* produced evidence of medical expenses.

Although the court admitted Exhibit 15 into evidence, it was not placed in the court's record. As a result, the court only has access to the contents of Exhibit 15 that were testified to at trial. During the first trial, Plaintiff Nelson testified that Exhibit 15 reflected the charges she sustained for three office visits; two visits which were $116 each and one visit which was $73. Trial Transcript ("TT") Vol. III (docket no. 325) at 626-629.

Second, the court admitted Exhibit 17 into evidence during the first trial. Plaintiff Nelson testified that Exhibit 17 was a record from her pharmacy noting all of the medications she has taken over a period of several years, as well as the price of the medications and the dates she received them. *Id.* at 627-628. Plaintiff Nelson testified, and Dr. Banks confirmed, that after the strip search, Plaintiff Nelson became more depressed and began taking the drug Imipramine. Plaintiff Nelson began taking Imipramine on March 25, 2005 and continued taking it throughout the course of the first and second trial. At the time of the first trial, Dr. Banks testified that he would like to try a "drug holiday" with Plaintiff Nelson in an attempt to wean her off the medication. However, Dr. Banks stated that he had only seen a success rate of "maybe 25 percent" when he has tried to wean patients off psychiatric medications in the past. *Id.* at 513-515. Plaintiff Nelson testified that she did not want to attempt a "drug holiday" because she felt like her depression had improved and she did not want to jeopardize her recovery. *Id.* at 623. According to Exhibit 17, Plaintiff Nelson paid a total of $243.83 for Impramine from March 25, 2005, until March 28, 2008. Exhibit 17 (docket no. 278-1).

Taking into consideration the $305 in charges Plaintiff Nelson accumulated from doctor visits and the $243.83 Plaintiff Nelson paid for her prescription medications, a reasonable jury could find that Plaintiff Nelson expended a total of $548.83 over a period of three years. This averages to $182.94 each year from 2005 through 2008. Based upon this evidence, a reasonable jury could have found that Plaintiff Nelson proved, by a preponderance of the evidence, that she would spend an average of $182.94 each year on

doctor visits and medications for the remainder of her life. During the first trial, the court instructed the jury that, according to a Standard Mortality Table, the normal life expectancy of people the same age as Plaintiff Nelson was 28.7 years. Because Plaintiff Nelson demonstrated that she began receiving treatment three years prior to the trial, Plaintiff Nelson's average medical expenditures ($182.94) should be multiplied by a total of 31.7 years, which includes the three years prior to trial and Plaintiff Nelson's projected lifespan.

Generally, damages awards for future medical expenses should be reduced to their present value because, "[i]f damages are awarded for losses that will be incurred in the future, it would be over-compensation to give at the present time in cash their full amount." Restatement (Second) of Torts § 913A (2010). Damages awards for future expenses should also be increased in order to account for inflation. *See generally Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 532-53 (1983) (discussing damages reductions for present value and increases for inflation). While there is no single method for determining present value under federal law, a proper method of calculation will account for both inflation and the rate of interest. *See Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 350 (1988) (O'Connor, J., concurring in part and dissenting in part). One method courts apply is the "total offset" approach in which no discount to present value is applied on the theory that the discount rate would be totally offset by the rate of inflation. *See Pfeifer*, 642 U.S. at 544-46 (discussing the total offset approach); *Monessen*, 486 U.S. at 528, 544-45 (same).

Under the circumstances presented here, where neither party produced evidence of the appropriate discount rate, and any selected rate would have little, if any, impact on the overall award in light of the low dollar amount at issue and the countervailing impact of the rate of inflation, the court adopts the total offset approach for purposes of this case. The court finds that any reduction in Plaintiff Nelson's medical expenses to present value

would be offset by the rate of inflation over the next 28.7 years. *Cf. Ogden v. Wax Works, Inc.*, 29 F. Supp. 2d 1003, 1021-22 (N.D. Iowa 1998) (utilizing the total offset approach). Thus, Plaintiff Nelson's award for medical expenses will be determined by multiplying $182.94 by 31.7 years, for a total award of $5,799.20.

### E. Applicable Rate of Inflation

In Plaintiffs' Brief, Plaintiffs set forth several different methods that the court could use to calculate the appropriate rate of inflation over the period between the date of the incident in *Joan W.* and the date of Defendant Mais's search. Defendant Mais does not discuss these methods or suggest any other methods in Defendant's Brief. The court elects to adopt the Consumer Price Index ("CPI"), one of several methods that Plaintiffs advocate, as the appropriate method for calculating inflation in this case.

The CPI is a widely accepted tool compiled by the United States Bureau of Labor Statistics and "is a measure of the average change in prices over time of goods and services purchased by households." United States Department of Labor, Bureau of Labor Statistics, Consumer Price Index Detailed Report (July 2010), http://www.bls.gov/cpi/cpid1007.pdf. Many courts use the CPI to calculate inflation in various types of cases. For example, the Eighth Circuit Court of Appeals has declared that the CPI "constitutes 'proper proof'" of the inflation rate and the corresponding increase in the cost of living as applied to attorneys seeking fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). *Johnson v. Sullivan*, 919 F.2d 503, 504 (8th Cir. 1990). Congress has also utilized the CPI. In the Inflation Adjustment Act of 1990, Pub. L. No. 101-410, § 5, 104 Stat. 891, Congress provided that civil monetary penalties should be adjusted for inflation and adopted the CPI as the method for calculating inflation.

Because the CPI is the inflation calculation tool most widely accepted by other courts, including the Eighth Circuit Court of Appeals, the court will utilize the CPI Inflation Calculator to determine the inflation rate. The Eighth Circuit Court of Appeals

directed the court to adjust the $75,000 *Joan W.* award for inflation to 2004 dollars. Using the CPI Inflation Calculator, the court finds that the $75,000 award issued in *Joan W.* for an incident occurring in 1978, is valued at approximately $217,292.94 in 2004 dollars. *See* United States Department of Labor, Bureau of Labor Statistics, CPI Inflation Calculator, http://www.bls.gov/data/inflation_calculator.htm.

### *F. Amount of Remittitur*

In light of the foregoing, the court shall order remittitur in the amount of $217,292.94 to compensate Plaintiff McCabe for her emotional damages arising from the illegal strip search. The court shall order remittitur in the amount of $223,092.14 to compensate Plaintiff Nelson for her emotional damages and corresponding medical expenses arising from the illegal strip search. The Eighth Circuit Court of Appeals has instructed that Plaintiffs "are entitled to the choice of accepting the new remittitur or facing a third trial on the issue of the damages[.]" *McCabe*, 608 F.3d at 1083.

### *V. ATTORNEYS' FEES*

As discussed above, the Eighth Circuit Court of Appeals found that Plaintiffs are now prevailing parties and are entitled to recover all reasonable attorneys' fees incurred in the second trial. The court already awarded Plaintiffs all of the attorneys' fees Plaintiffs incurred through October 10, 2008. As a result, the court will only consider attorneys' fees incurred after that date.

Because the parties have not had an opportunity to brief the attorneys' fees issue since the Eighth Circuit Court of Appeals's remand, the court shall order Plaintiffs to file a motion for attorneys' fees and costs incurred after October 10, 2008. Specifically, Plaintiffs shall file a motion for attorneys' fees and costs, and a brief in support of the motion, **no later than ten (10) days** after entry of the instant Order. The motion shall set forth the attorneys' fees Plaintiffs' incurred on or after October 11, 2008, including (1) all attorneys' fees and expenses incurred in preparation for and through the second trial; and

(2) all attorneys' fees and expenses incurred after the Eighth Circuit Court of Appeals remanded the instant action. Defendant Mais must file a resistance **no later than ten (10) days** after Plaintiffs file their motion. Plaintiffs may file a reply **no later than five (5) days** after the resistance is filed.

## IV. CONCLUSION

In light of the foregoing, **IT IS HEREBY ORDERED THAT**:

(1) Plaintiffs shall notify the court in writing by **October 12, 2010**, whether they accept a remittitur in the amount of $217,292.94 with respect to Plaintiff McCabe and $223,092.14 with respect to Plaintiff Nelson;

(2) If one or both Plaintiffs reject the remittitur, trial will commence on **November 15, 2010, at a time to be announced**.

(3) **Within ten (10) days** of the instant Order, Plaintiffs shall file a motion for attorneys' fees.

**IT IS SO ORDERED.**

**DATED** this 5th day of October, 2010.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA